**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF PROVIDENCE, RHODE ISLAND, Individually and on Behalf of Others Similarly Situated,<br><br>Plaintiff,<br>-against-<br><br>BATS GLOBAL MARKETS, INC., *et al.*,<br><br>Defendants. | Civil Action No. 14-cv-2811 (JMF) |
| AMERICAN EUROPEAN INSURANCE COMPANY, Individually and on Behalf of Others Similarly Situated,<br><br>Plaintiff,<br>-against-<br><br>BATS GLOBAL MARKETS, INC., *et al.*,<br><br>Defendants. | Civil Action No. 14-cv-3133 (JMF) |
| HAREL INSURANCE CO., LTD. Individually and on Behalf of Others Similarly Situated,<br><br>Plaintiff,<br>-against-<br><br>BATS GLOBAL MARKETS, INC., *et al.*,<br><br>Defendants. | Civil Action No. 14-cv-3608 (JMF) |
| JAMES J. FLYNN and DOMINIC A. MORELLI, Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>BANK OF AMERICA CORPORATION, *et al.*,<br><br>Defendants. | Civil Action No. 14-cv-4321 (JMF) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF APPLIED FINANCIAL SCIENCE, INC. FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND FOR APPROVAL OF SELECTION OF LEAD COUNSEL**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

I. PRELIMINARY STATEMENT ........ 1

II. STATEMENT OF FACTS ........ 2

III. ARGUMENT ........ 4

A. THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ........ 4

B. AFSI SHOULD BE APPOINTED LEAD PLAINTIFF ........ 5

1. AFSI Satisfies The Procedural Requirements Of The PSLRA ........ 5

2. AFSI Constitutes the "Most Adequate Plaintiff" ........ 6

a) AFSI Has Made A Timely Motion For Appointment as Lead Plaintiff ........ 6

b) AFSI Believes That It Has The Largest Financial Interest ........ 7

c) AFSI Otherwise Satisfies Rule 23 ........ 7

(1) AFSI Fulfills the Typicality Requirement ........ 8

(2) AFSI Fulfills The Adequacy Requirement ........ 9

C. THE COURT SHOULD APPROVE AFSI'S CHOICE OF COUNSEL ........ 10

IV. CONCLUSION ........ 10

# TABLE OF AUTHORITIES

## CASES

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
252 F.R.D. 188 (S.D.N.Y. 2008) .......... 5

*Constance Sczesny Trust v. KPMG LLP*,
223 F.R.D. 319 (S.D.N.Y. 2004) .......... 8

*Corwin v. Seizinger.*,
No. 07 Civ. 6728 DC, 2008 WL 123846 (S.D.N.Y. Jan. 8, 2008) .......... 8

*In re Drexel Burnham Lambert Group, Inc.*,
960 F.2d 285 (2d Cir.1992) .......... 8

*In re eSpeed, Inc. Sec. Litig.*,
232 F.R.D. 95 (S.D.N.Y. 2005) .......... 9

*In re Fuwei Films Sec. Litig.*,
247 F.R.D. 432 (S.D.N.Y. 2008) .......... 7

*In re Oxford Health Plans, Inc., Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) .......... 8

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*,
229 F.R.D. 395 (S.D.N.Y. 2004) .......... 8

*Walsh v. Northrop Grumman Corp.*,
162 F.R.D. 440 (E.D.N.Y. 1995) .......... 9

## STATUTES AND RULES

15 U.S.C. §78u-4(a)(3)(b)(iii)(II) .......... 9

15 U.S.C. §78u-4(a)(3)(B) .......... passim

Fed. R. Civ. P. 42 .......... 1, 5, 7, 8

Fed. R. Civ. P.23 .......... 8

Securities Exchange Act of 1934 .......... 1, 3, 5

## I. PRELIMINARY STATEMENT

This memorandum of law is filed by Applied Financial Science, Inc. ("AFSI") in support of its motion, pursuant to Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §78u-4(a)(3)(B), and Rule 42(a) of the Federal Rules of Civil Procedure, for an order: (a) consolidating the captioned securities class actions and any subsequently filed related actions; (b) appointing AFSI as the Lead Plaintiff in this action and in any consolidated related action; (c) approving its selection of Wolf Popper LLP as lead counsel; and (d) such other and further relief that the Court deems just and proper.

In class actions filed under the federal securities laws, the PSLRA requires that courts appoint as lead plaintiff the member or members of the class that have satisfied certain procedural prerequisites and also constitutes the "most adequate representative" of the prospective class. As set forth below, AFSI engaged in over $275,000,000 worth of trading in United States exchange-traded securities on United States securities exchanges during the Class Period, and amply satisfies all of the criteria for selection as lead plaintiff. AFSI has a substantial financial interest in the relief sought in this action and, further, its President, Michele Marotta ("Marotta") has extensive education and experience in financial markets and in trading and thus possesses an in-depth understanding of the issues underlying this case. Accordingly, AFSI is the most adequate plaintiff. AFSI believes it has the large financial interest, and is willing to serve as the lead plaintiff in the securities action.

AFSI also respectfully requests that the Court approve its selection of Lead Counsel, in accordance with the PSLRA. Wolf Popper LLP has extensive experience in securities class action litigation and is well-qualified to represent the interests of all Class Members.

## II. STATEMENT OF FACTS

This case, as alleged in the Actions, arises out of the massive, fraudulent scheme perpetrated by numerous United States stock exchanges (the "Exchange Defendants"), brokerage firms ("Brokerage Firm Defendants"), investment banks, and so-called "High Frequency Trading" firms ("HFT Defendants"), among others. These Defendants are alleged to have employed devices, contrivances, manipulations and artifices to defraud in a manner that was designed to and did manipulate the U.S. securities markets and the trading of securities on those markets, diverting billions of dollars annually from buyers and sellers of securities to themselves. Collectively, Defendants schemed to create a "rigged" stock market in which trading order data was improperly provided to the HFT Defendants fractions of a second before it reached others, so that the HFT Defendants could then "front-run" or trade against the orders of the rest of the investing public.

The Exchange Defendants allegedly sold improper and unequal access to certain trading order information to the HFT Defendants, but not to the rest of the investing public, and further concealed the "rigged" nature of the trading that resulted from this information asymmetry. The Brokerage Firm Defendants allegedly directed their customers' trade orders to the Exchange Defendants' exchanges, or to certain alternate trading venues controlled by certain Defendants, in exchange for "kickback" payments, knowing that those trade orders would be traded against by the HFT Defendants in ways that disadvantaged the Brokerage Firm Defendants' own clients.

The Actions allege that this scheme was more specifically used by the HFT Defendants to engage in the following kinds of deceptive conduct:

- ***"electronic front-running"*** – where, in exchange for "kickback" or "rebate" payments, the HFT Defendants are provided early notice of investors' intentions to transact by being shown initial bids and offers placed on exchanges and other trading venues by their brokers, and then race those bona fide securities investors to the other

securities exchanges, transact in the desired securities at better prices, and then go back and transact with the unwitting initial investors to the their financial detriment;

- ***"rebate arbitrage"*** – where the HFT and Brokerage Firm Defendants obtain "kickback" or "rebate" payments from the securities exchanges without providing the liquidity that the rebate payments were purportedly designed to attract;

- ***"slow-market (or latency) arbitrage"*** – where the HFT Defendants are shown changes in the price of a stock on one exchange, and pick off orders sitting on other exchanges, before those exchanges are able to react and replace their own bid/offer quotes accordingly, which practices are repeated to generate billions of dollars more a year in illicit profits than front-running and rebate arbitrage combined;

- ***"spoofing"*** – where the HFT Defendants send out orders with corresponding cancellations, often at the opening or closing of the stock market, in order to manipulate the market price of a security and/or induce a particular market reaction;

- ***"layering"*** – where the HFT Defendants send out waves of false orders intended to give the impression that the market for shares of a particular security at that moment is deep in order to take advantage of the market's reaction to the layering of orders; and

- ***"contemporaneous trading"* –** whereby obtaining material, non-public information concerning the trading of Plaintiff and the Plaintiff Class and then transacting against them, Defendants violate the federal securities laws, including §20A of the Exchange Act.

The Exchange Defendants allegedly contributed to the fraudulent scheme to engage in this manipulative conduct by, *inter alia*, selling preferential access to order data as well as "co-location" of computers inside the Exchange Defendants' facilities (in order to allow the HFT Defendants to communicate with the exchanges' servers fractions of a second faster than the investing public), and offering "kickback" payments or "rebates" to the Brokerage Firm Defendants in exchange for routing their customers' orders to the exchanges.

The Brokerage Firm Defendants allegedly participated in the scheme by knowingly routing their customers' orders based on the exchanges or alternative trading venues that would pay the highest rebate for that particular order, rather than based on the best order execution

available, in breach of their fiduciary duties. In some cases, the Brokerage Firm Defendants routed orders to alternate trading venues (private trading pools sometimes referred to as "dark pools") that they or their affiliates or corporate parents controlled.

The HFT Defendants allegedly participated in the scheme by knowingly manipulating the prices of United States exchange-traded securities through electronic front-running, rebate arbitrage, slow-market arbitrage, spoofing, and layering, paying large sums of money to the Exchange Defendants to gain unfair and unlawful advantages over other investors, and preventing those investors from getting the best execution of their orders.

On April 18, 2014, plaintiff City of Providence, Rhode Island ("Providence") filed the complaint initiating this action with this Court, (captioned *City of Providence, Rhode Island v. Bats Global Mkts., Inc.*, *et al.*, No. 14-cv-2811 (JMF)), alleging violations of Section 10(b) of the Exchange Act and Rule 10b-5, Section 6(b) of the Exchange Act, and Section 20A of the Exchange Act. Providence also published its initial notice to the Class on April 18, 2014 and disseminated it via BusinessWire. On May 2, 2014, plaintiff American European Insurance Company filed a nearly identical complaint with this Court against the same defendants (No. 14-cv-3133), and on May 20, 2014, plaintiff Harel Insurance Co., Ltd. filed a nearly identical complaint with this Court (No. 14-cv-3608). On June 13, 2014, plaintiffs James J. Flynn and Dominic A. Morelli filed a complaint with substantially similar allegations to the other three complaints, and the same list of defendants except omitting the Exchange Defendants (No. 14-cv-4321). These four actions are collectively referred to herein as the "Actions."

## III. <u>ARGUMENT</u>

### A. THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

The PSLRA provides that the Court shall not make the determination of the most

adequate plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. §78u-4(a)(3)(B)(ii). Courts have recognized that consolidation of securities class actions is appropriate where actions before the Court involve common questions of law or fact, and seek relief "on behalf of similar classes based on the same series of events." *See e.g., Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008).

There are four class actions currently before the Court presenting substantially similar (and in three of the four cases, virtually identical) claims for relief based upon a single course of conduct, as described above. Since the complaints present similar issues of law and fact, consolidation of these actions promote judicial economy by streamlining and simplifying pre-trial and discovery motions and class certification issues, and by reducing the waste, confusion, and delay that could result from multiple trials.

Under Section 21D(a)(3)(B)(ii) of the Exchange Act, the Court is required to decide this motion to consolidate before determining the lead plaintiff. Accordingly, consolidation is appropriate under Rule 42(a).

**B. AFSI SHOULD BE APPOINTED LEAD PLAINTIFF**

**1. AFSI Satisfies The Procedural Requirements Of The PSLRA**

Under the PSLRA, a person seeking to serve as lead plaintiff must fulfill certain procedural prerequisites prior to being appointed to serve in such a capacity. Plaintiffs who commence securities class actions must publish a notice to the class, within twenty days of filing the action, informing class members of the pendency of the action and their right to file a motion for appointment as lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(A)(i). Within sixty days after that publication of notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as Lead Plaintiffs. *Id.*

On April 18, 2014, the first action against defendants alleging violations of federal securities laws was filed. On April 18, 2014, the initial notice was published and disseminated over Business Wire, a widely circulated, international, business-oriented wire service. A copy of this notice is attached as Exhibit A to the accompanying Declaration of Fei-Lu Qian ("Qian Decl.") AFSI's motion, which is being submitted to this Court on June 17, 2014, is timely because it is being made within sixty days after publication of the initial notice.

**2. AFSI Constitutes the "Most Adequate Plaintiff"**

The PSLRA mandates that, not more than ninety days after publication of the initial notice of pendency, a court shall consider any motion made by any class member, and appoint as Lead Plaintiff the member(s) of the class that the court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. §78u-4(a)(3)(B). Under the PSLRA, such persons are referred to as the "most adequate plaintiff." *Id.* The statute requires that courts presume that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

AFSI is entitled to this presumption and is demonstrably the most adequate plaintiff.

**a) AFSI Has Made A Timely Motion For Appointment as Lead Plaintiff**

AFSI has fulfilled the first prong of the test for most adequate plaintiff. AFSI has attested to its willingness to serve as representative on behalf of the Class, and has made this motion. *See* Qian Decl., Ex. B.

**b) AFSI Believes That It Has The Largest Financial Interest**

The second prong of the test for the "most adequate plaintiff" requires the Court to appoint as lead plaintiff the class member who "has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

AFSI believes that it has the largest financial interest in the relief sought by the Class. AFSI engaged in trading of over 6.8 million shares of United States exchange-traded securities on United States securities exchanges, with a dollar value of over $275 million, during the Class Period,[1] and has incurred significant losses due to the adverse effects of the alleged conduct on this trading. As of this filing, AFSI is unaware of any movant who has a larger financial interest.

**c) AFSI Otherwise Satisfies Rule 23**

In addition to the aforementioned requirements, 15 U.S.C. §78u-4(a)(3)(B) dictates that the proposed lead plaintiff must also "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." To satisfy Rule 23, persons seeking class certification must demonstrate that: the number of class members is so large that joinder of all class members is impracticable; common issues of law and fact exist and predominate over individual questions; the class representatives are typical of class members; the class representatives will fairly and adequately protect the interests of the class; and a class action is superior to individual actions. *See* Fed. R. Civ. P. 23(a) and (b)(3). For purposes of a motion for appointment of lead plaintiff, a movant need only make a preliminary showing that it satisfies Rule 23. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008) ("in deciding a motion to serve as lead plaintiff, the moving plaintiff must make only a preliminary showing that the adequacy and typicality

---

[1] See Qian Decl. Exs. B and C.

requirements under Rule 23 have been met"), citing to *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 412 (S.D.N.Y. 2004).

Of the prerequisites to class certification set forth in Rule 23, only the typicality and adequacy prongs are implicated in any consideration of the "most adequate plaintiff." This is made clear by the PSLRA, which provides that the presumption in favor of the most adequate plaintiff may be rebutted only upon proof that this individual or group:

(aa) will not fairly and adequately protect the interest of the class; or
(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. §78u-4(a)(3)(b)(iii)(II). Consequently, in deciding a motion for appointment of lead plaintiff, inquiry should be limited to the typicality and adequacy prongs of Rule 23(a). *See Corwin v. Seizinger.*, No. 07 Civ. 6728 DC, 2008 WL 123846, *2 (S.D.N.Y. Jan. 8, 2008) ("As for the requirements of Rule 23, at this stage a proposed lead plaintiff need only make a "preliminary showing" that it will satisfy the typicality and adequacy requirements of Rule 23.").

**(1) AFSI Fulfills the Typicality Requirement**

The typicality requirement of Rule 23(a)(3) is satisfied when each class member's claims arise from the same course of events and each class member makes similar arguments to prove the defendants' liability. *See Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004); *see also In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("[Typicality is satisfied where the claims] arise from the same conduct from which the other class members' claims and injuries arise.") citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992).

AFSI seeks to represent a Class of persons whose trading in United States exchange-traded securities during the Class Period was adversely impacted by the practices described in

the Actions and who were damaged thereby. AFSI satisfies the typicality requirement because it: (i) engaged in trading of United States exchange-traded securities during the Class Period; and (ii) suffered damages thereby. Thus, typicality is satisfied since the claims asserted by AFSI arise "from the same event or course of conduct that give rise to claims of other class members and the claims are based on the same legal theory." *Walsh v. Northrop Grumman Corp.*, 162 F.R.D. 440, 445 (E.D.N.Y. 1995).

**(2) AFSI Fulfills The Adequacy Requirement**

Under Rule 23(a)(4), the representative party must also "fairly and adequately protect the interests of the class." Adequacy depends upon the existence of common interests between the class members and the representative party and a showing of a willingness of the representative party to vigorously prosecute the action on behalf of the class members. *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 103 (S.D.N.Y. 2005).

Here, the interests of AFSI are clearly aligned with the members of the Class, and there is no evidence of any antagonism between its interests and those of the Class. As detailed above, AFSI shares identical questions of law and fact with the members of the Class, and its claims are typical of the claims of other Class members. Further, AFSI has already demonstrated its interest in pursuing this action on behalf of the Class by signing the Certification attesting to its willingness to assume the responsibilities of Class representative, and by informing the Court of its intention to file the motion.

AFSI is a victim of the same fraud as all other Class members, and its claims raise similar questions of law and fact as those of all Class members. To further its own interests, AFSI will necessarily have to advance the interests of all Class members. AFSI has already demonstrated that it is committed to vigorously prosecuting claims on behalf of the Class, by retaining counsel

experienced in complex class litigation and by executing the Certification attesting to its willingness to serve as Class representatives.

Further, AFSI and its founder and President, Mr. Marotta, are financially sophisticated and possess in-depth knowledge of and experience with computerized stock trading, making it especially well-situated to prosecute the claims of the Class. Mr. Marotta has a PhD in Finance, an Excutive MBA in Finance from Stern School of Business at New York University, and a BS in Economics from the University of Rome. He has over 18 years of experience in developing, testing, and trading arbitrage and automated trading strategies for AFSI as well as for various broker/dealers and hedge funds.

Thus, AFSI will adequately represent the interests of Class members.

### C. THE COURT SHOULD APPROVE AFSI'S CHOICE OF COUNSEL

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class. The proposed Lead Plaintiff has selected Wolf Popper LLP as lead counsel to prosecute the action. Wolf Popper LLP has been highly successful in prosecuting securities fraud class action litigation, as outlined in its firm resume annexed as Exhibit D to the Qian Decl. Thus, the Court may be assured that by granting this motion, the members of the Class will receive the highest caliber legal representation available.

## IV. CONCLUSION

For of the foregoing reasons, AFSI respectfully requests that the Court consolidate the related Actions, and grant its motion for appointment as Lead Plaintiff and appointment of the counsel it has selected as Lead Counsel for all plaintiffs and Class members in connection with these proceedings.

Dated: June 17, 2014

Respectfully submitted,

By: /s Patricia I. Avery

Chet B. Waldman
Patricia I. Avery
Joshua W. Ruthizer
Fei-Lu Qian
Joshua H. Saltzman
WOLF POPPER LLP
845 Third Avenue
New York, NY 10022
Telephone: 212.759.4600
Facsimile: 212.486.2093