## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

IN RE:

BARCLAYS LIQUIDITY CROSS AND HIGH
FREQUENCY TRADING LITIGATION

*This Document Relates To City of Providence, Rhode
Island, et al. v. BATS Global Markets, Inc., et al.,*
1:14-cv-02811-JMF (S.D.N.Y.) (consolidated)

14-MD-2589 (JMF)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE EXCHANGES'
MOTION TO DISMISS THE SECOND CONSOLIDATED AMENDED COMPLAINT
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**

# TABLE OF CONTENTS

**Page**

ARGUMENT ................................................................................................................1

I.      The Court Lacks Subject Matter Jurisdiction Because The Exchange Act Provides
        The Exclusive Procedure For Reviewing Plaintiffs' Claims. ...............................................1

II.     Plaintiffs' Damages Claims Are Barred By Absolute Immunity.......................................5

        A.      Plaintiffs Cannot Disregard Immunity By Invoking Exchanges'
                For-Profit Status.........................................................................................5

        B.      The Exchanges' Development, Operation, And Maintenance Of Their
                Markets Are Regulatory Functions Protected By Absolute Immunity...................6

        C.      None Of The Cases Cited By Plaintiffs Holds That The Exchanges'
                Operation Of Their Markets Is Non-Regulatory.......................................................7

III.    The Second Consolidated Amended Complaint Fails To State A Claim. .........................10

        A.      The SEC Has Approved The Allegedly Wrongful Conduct..................................10

        B.      Plaintiffs Lack A Private Right Of Action Under Section 6(b).............................11

        C.      The Complaint Fails To State A Claim Under Rule 10b-5....................................12

CONCLUSION...........................................................................................................15

## **TABLE OF AUTHORITIES**

**Page(s)**

### **FEDERAL CASES**

*Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328 (2d Cir. 2006)................................10

*Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972).......................................13

*Altman v. SEC*, 687 F.3d 44 (2d Cir. 2012) (per curiam) ...........................................2, 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..............................................................10

*Baird v. Franklin*, 141 F.2d 238 (2d Cir. 1944)......................................................11

*Barbara v. NYSE*, 99 F.3d 49 (2d Cir. 1996).........................................................4

*Behrens v. Pelletier*, 516 U.S. 299 (1996) .........................................................9

*Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975)........................................15

*Brawer v. Options Clearing Corp.*, 807 F.2d 297 (2d Cir. 1986)....................................11

*Cleantech Innovations, Inc. v. NASDAQ Stock Mkt., LLC*, No. 11-cv-9358,
    2012 WL 345902 (S.D.N.Y. Jan. 31, 2012) ........................................................2

*D'Alessio v. NYSE, Inc.*, 258 F.3d 93 (2d Cir. 2001)..............................................9

*Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931 (9th Cir. 2009) (per curiam) .....................13

*Desiderio v. NASD*, 191 F.3d 198 (2d Cir. 1999).................................................12

*DL Capital Grp., LLC v. NASDAQ Stock Mkt., Inc.*, 409 F.3d 93 (2d Cir. 2005)................ *passim*

*Drayer v. Krasner*, 572 F.2d 348 (2d Cir. 1978) .................................................6

*Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005)...............................................14

*Feins v. Am. Stock Exch., Inc.*, 81 F.3d 1215 (2d Cir. 1996).....................................12

*Fezzani v. Bear, Stearns & Co.*, 384 F. Supp. 2d 618 (S.D.N.Y. 2004)............................14

*Fezzani v. Bear, Stearns & Co.*, 716 F.3d 18 (2d Cir. 2013)......................................14

*First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690 (3d Cir. 1979)..................................3

*Gonzalez v. Thaler*, 132 S. Ct. 641 (2012)......................................................4

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Guitard v. U.S. Sec'y of Navy*, 967 F.2d 737 (2d Cir. 1992) ...........................................................4

*Hayden v. NYSE, Inc.*, 4 F. Supp. 2d 335 (S.D.N.Y. 1998) ..............................................................3

*In re Facebook Inc., IPO Sec. & Deriv. Litig.*,
986 F. Supp. 2d 428 (S.D.N.Y. 2013) .......................................................................................8

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
273 F. Supp. 2d 351 (S.D.N.Y. 2003) .....................................................................................12

*In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378 (S.D.N.Y. 2010) ...................14

*In re NYSE Specialists Sec. Litig.*, 405 F. Supp. 2d 281 (S.D.N.Y. 2005) ....................................14

*In re NYSE Specialists Sec. Litig.*, 503 F.3d 89 (2d Cir. 2007) ...................................................5, 9

*In re Refco, Inc. Sec. Litig.*, 609 F. Supp. 2d 304 (S.D.N.Y. 2009) ..............................................12

*In re Series 7 Broker Qualification Exam Scoring Litig.*,
548 F.3d 110 (D.C. Cir. 2008) ............................................................................................3, 4

*Joseph v. Wiles*, 223 F.3d 1155 (10th Cir. 2000) ..........................................................................13

*Lanier v. BATS Exchange Inc.*, Nos. 14-cv-3745, -3865 & -3866,
2015 WL 1914446 (S.D.N.Y. Apr. 28, 2015) ................................................................. *passim*

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006) ...................................15

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ......................................................................................10

*MM&S Fin., Inc. v. NASD*, 364 F.3d 908 (8th Cir. 2004) ...............................................................4

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010 (2d Cir. 2014) ..................................6

*NetCoalition v. SEC*, 615 F.3d 525 (D.C. Cir. 2010) .......................................................................3

*NetCoalition v. SEC*, 715 F.3d 342 (D.C. Cir. 2013) .......................................................................6

*Opulent Fund L.P. v. NASDAQ Stock Mkt., Inc.*, No. C-07-03683,
2007 WL 3010573 (N.D. Cal. Oct. 12, 2007) ........................................................................8, 9

*S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98 (2d Cir. 2009) .......................................13

*Sparta Surgical Corp. v. NASD*, 159 F.3d 1209 (9th Cir. 1998) .....................................................5

*Standard Inv. Chartered, Inc. v. NASD*, No. 07-cv-2014(SWK),
2007 WL 1296712 (S.D.N.Y. May 2, 2007) ..............................................................................4

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Weissman v. NASD,* 500 F.3d 1293, 1297 (11th Cir. 2007) (en banc) ...........................................8

### STATE CASES

*Platinum Partners Value Arbitrage Fund, LP v. CBOE,*
  976 N.E.2d 415 (Ill. App. Ct. 2012) ...............................................................7

### OTHER AUTHORITIES

15 U.S.C. § 78aa ...........................................................................................................2

17 C.F.R. § 242.600 (2015) ........................................................................................11

17 C.F.R. § 242.603 (2015) ..........................................................................................7

Exchange Act Release No. 34-51808, 70 Fed. Reg. 37,496 (June 29, 2005)...............11

Exchange Act Release No. 34-56611, 72 Fed. Reg. 57,980 (Oct. 11, 2007) ................3

Exchange Act Release No. 34-73333, 79 Fed. Reg. 62,223 (Oct. 16, 2014) ...............11

*In re Athena Capital Research, LLC*, Exchange Act Release No. 34-73369
  (Oct. 14, 2014), *available at* 2014 WL 5282074 ...................................................12

Andrew J. Cavo, Note, Weissman v. National Association of Securities Dealers*:
  A Dangerously Narrow Interpretation of Absolute Immunity for Self-
  Regulatory Organizations*, 94 Cornell L. Rev. 415 (2009) ......................................8

Press Release, FINRA, *FINRA Joins Exchanges and the SEC in Fining Hold
  Brothers More Than $5.9 Million for Manipulative Trading, Anti-Money
  Laundering, and Other Violations* (Sept. 25, 2012),
  http://www.finra.org/newsroom/ 2012/finra-joins-exchanges-and-sec-fining-
  hold-brothers-more-59-million-manipulative ........................................................13

Am. Compl., *Fezzani v. Bear, Stearns & Co.*, No. 99-cv-0793 (S.D.N.Y. filed
  Apr. 7, 2005), *available at* 2005 WL 6251885 ......................................................15

The Exchanges respectfully submit this reply memorandum of law in support of their motion to dismiss the Second Consolidated Amended Complaint ("SCAC").

## ARGUMENT

Plaintiffs' argument, at bottom, is that the structure of the securities markets is unfair. But the SEC has reviewed and approved the market structure challenged here. Plaintiffs ask this Court to redesign that market structure by, among other things, directing the Exchanges to ensure the simultaneous receipt of market data by all investors and trading entities and prohibiting SEC-approved proprietary data feeds, co-location services, and complex order types. Such an all-encompassing judicial incursion into the SEC's regulation of the securities markets was recently rejected by Judge Forrest in *Lanier v. BATS Exchange Inc.*, Nos. 14-cv-3745, -3865 & -3866, 2015 WL 1914446 (S.D.N.Y. Apr. 28, 2015). Judge Forrest concluded that the court did not have subject matter jurisdiction because Congress created an exclusive "federal regulatory scheme" that "encompasses rules and regulations developed by both the SEC and [self-regulatory organizations ("SROs")], SEC oversight, and an SEC adjudication process subject to appeal . . . in federal court." *Id.* at *10. Thus, despite Plaintiffs' apparent disagreement with the SEC's regulatory decisions, their claims must be heard by the SEC, not a district court, and their damages claims are barred by the Exchanges' well-recognized immunity. And even if the Court could hear this matter, it would still have to dismiss the SCAC because it does not come close to alleging the required elements of securities fraud, and Plaintiffs' Opposition merely underscores that their claims amount, at most, to no more than non-actionable aiding and abetting.

## I.     The Court Lacks Subject Matter Jurisdiction Because The Exchange Act Provides The Exclusive Procedure For Reviewing Plaintiffs' Claims.

The SCAC does not advance claims based on particular trades in securities, but instead mounts a broad-based attack on the market structure that the SEC has approved. *See, e.g.*, D.E.

26 ("Opp."), at 7.  In an effort to avoid dismissal, Plaintiffs protest that they do not "ask that this Court review the propriety of individual [SEC] rules or the processes used to establish such rules," *id.* at 17, but that is precisely what the SCAC seeks:  the relief sought would require this Court to hold that a series of regulatory decisions by the SEC and the Exchanges constitutes market manipulation in violation of the Exchange Act.  Yet it is the Exchange Act's review procedures that "supply the jurisdictional route that [plaintiffs] must follow" to bring that challenge.  *Altman v. SEC*, 687 F.3d 44, 46 (2d Cir. 2012) (per curiam); *accord, e.g.*, *Cleantech Innovations, Inc. v. NASDAQ Stock Mkt., LLC*, No. 11-cv-9358, 2012 WL 345902, at *1 (S.D.N.Y. Jan. 31, 2012) ("*Cleantech II*") (Exchange Act is the 'exclusive route' for obtaining review").  For this reason, Judge Forrest dismissed three lawsuits raising substantially similar challenges to market structure because "the SEC and not this Court must determine whether the defendant SROs have provided [market] information in a manner that violates their [regulatory] obligations."  *Lanier*, 2015 WL 1914446, at *11.

The SCAC challenges the Exchanges' decision to operate the securities markets by allowing proprietary data feeds, co-location services, complex order types, and market rebates. But its entire premise is flawed because the SEC has the authority and necessary expertise to address Plaintiffs' claims under both the Exchange Act itself and Regulation NMS, and has done so by approving each of the market practices challenged here.  Disputes about those decisions must be heard by the SEC; the courts of appeals, in turn, have jurisdiction to hear any subsequent appeals.  *See* D.E. 8 ("Mem."), at 17–24.  This Court, however, does not have jurisdiction.

Plaintiffs do not meaningfully dispute that the SEC could review their claims.  Instead, they argue that they can bypass the SEC because 15 U.S.C. § 78aa grants district courts "exclusive jurisdiction of violations of [the Exchange Act] or the rules and regulations

thereunder." Opp. 16–17.  This is incorrect.  Section 78aa ensures that all claims involving

rights and duties under the Exchange Act are brought in a *federal* forum, but it "does not mean

that jurisdiction [in the district court] is not precluded by another statute or doctrine of judicial

administration."  *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 694 (3d Cir. 1979).

Congress has created a "self-contained process to review and remedy . . . complaints"

about Exchange actions like those challenged here.  *In re Series 7 Broker Qualification Exam

Scoring Litig.*, 548 F.3d 110, 114 (D.C. Cir. 2008); *see also Hayden v. NYSE, Inc.*, 4 F. Supp. 2d

335, 340 (S.D.N.Y. 1998) (noting "comprehensive enforcement structure created by the

Exchange Act").  As the Second Circuit, this Court, and others have recognized, the Exchange

Act's comprehensive review procedures entirely displace review by a district court.  Mem. 21–

24 (collecting citations).  The "breadth and depth" of Congress's "comprehensive federal

regulatory scheme," including "an SEC adjudication process," deprive this Court of jurisdiction

over Plaintiffs' claims.  *Lanier*, 2015 WL 1914446, at *10.[1]

Plaintiffs' only response is that the relevant cases implicated different provisions of the

Exchange Act.  Opp. 21.  But the issue is not which particular provision of the Exchange Act or

governing regulation is attacked; the issue is whether the alleged violations can be reviewed

under the Exchange Act's review procedures.  The Exchange Act and Rule 608(d) of Regulation

NMS make clear that Plaintiffs' alleged violations are subject to SEC review, Mem. 21–23, and

---

[1]   Plaintiffs allege market manipulation based on supposedly "supra-competitive" fees that the Exchanges charge for their SEC-approved services.  Opp. 49.  But such fees are *also* submitted for the SEC's review and are required to be fair and not unreasonably discriminatory; the SEC has reviewed these fees and has never found them to offend those standards.  *See* Mem. 9–11.  Nor are Plaintiffs' generalizations accurate:  for example, CHX does not charge a fee for the use of its SEC-approved proprietary feed.  *See* Exchange Act Release No. 34-56611, 72 Fed. Reg. 57,980, 57,981 (Oct. 11, 2007); *see also* Mem. 10 n.6.  In any event, the appropriate forum for reviewing any fee issue is the SEC, as illustrated by *NetCoalition v. SEC*, where—unlike here—a party challenged SEC-approved fees before the agency and then on appeal to the D.C. Circuit.  *See* 615 F.3d 525, 539, 544 (D.C. Cir. 2010).

3

thus Plaintiffs cannot pursue "review in . . . district court[]," *Altman*, 687 F.3d at 45.

Plaintiffs' argument that this Court should waive the exhaustion requirement (Opp. 25) is meritless.  The Second Circuit and this Court have recognized that the Exchange Act's review provisions as to SROs implicate subject matter jurisdiction.  Mem. 21–22.  Subject matter jurisdiction "can never be waived" by the Court.  *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012).

Plaintiffs are also incorrect (Opp. 25–26) that their manufactured damages exception could permit their claims to proceed.  In *Barbara v. NYSE*, the Second Circuit held that exhaustion is required so long as the agency affords the complainant a "'genuine opportunity for adequate relief.'"  99 F.3d 49, 57 (2d Cir. 1996) (quoting *Guitard v. U.S. Sec'y of Navy*, 967 F.2d 737, 741 (2d Cir. 1992)).  *Barbara* predates the Second Circuit's decision in *Altman*, which holds that the Exchange Act's review process is the exclusive "jurisdictional route" for actions reviewable through that process.  *Altman* thus necessarily forecloses any damages exception.  "By specifically adopting an appeals process which does not provide monetary relief, Congress has displaced" damages lawsuits like this one.  *Series 7*, 548 F.3d at 114.  Plaintiffs' lawsuit is "merely an 'attempt . . . to bypass the Exchange Act' and the process Congress envisioned therein."  *Id.* (quoting *MM&S Fin., Inc. v. NASD*, 364 F.3d 908, 912 (8th Cir. 2004)).

Moreover, Plaintiffs have not established that the remedies available to them through the Exchange Act's review process are inadequate.  They certainly cite no authority for that proposition.  Indeed, as this Court has held, the way to "demonstrate that a remedy is inadequate is to exhaust it or point to prior demonstrated inadequacies."  *Standard Inv. Chartered, Inc. v. NASD*, No. 07-cv-2014(SWK), 2007 WL 1296712, at *5 (S.D.N.Y. May 2, 2007) (quotation marks omitted).  Plaintiffs have failed to do so—as they have never even *attempted* to present their claims to the SEC.

## II.     Plaintiffs' Damages Claims Are Barred By Absolute Immunity.

The Second Circuit held in *DL Capital* that the "regulatory powers and responsibilities" that Congress delegated to the Exchanges include the duty "to *develop*, *operate*, and *maintain*" their markets, "to formulate regulatory policies and listing criteria" for the markets, "and to enforce those policies and rules, subject to the approval of . . . the SEC."  *DL Capital Grp., LLC v. NASDAQ Stock Mkt., Inc.*, 409 F.3d 93, 95, 98 (2d Cir. 2005) (emphases added).  When performing these functions, the Exchanges are protected by absolute immunity.  *Id.* at 100; *see also, e.g.*, *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 99–100 (2d Cir. 2007).  Plaintiffs directly challenge the Exchanges' development, operation, and maintenance of the markets, and thus their damages claims are barred.

### A.     Plaintiffs Cannot Disregard Immunity By Invoking Exchanges' For-Profit Status.

Plaintiffs argue that "dramatic[]" changes to the securities markets since 1934, including the "for-profit" status of the Exchanges, should prompt this Court to reject the "fallacy of SRO immunity."  Opp. 27, 29.  Plaintiffs' argument has no basis in law:  recent cases have recognized that the Exchanges' "for-profit" status is categorically irrelevant to the immunity analysis.  *See, e.g.*, *DL Capital*, 409 F.3d at 95.  The immunity doctrine "'accords protection from . . . any judicial scrutiny of the motive for and reasonableness of official action.'"  *NYSE Specialists*, 503 F.3d at 98 n.3 (alteration in original) (citation omitted).  For immunity to apply, it is sufficient that the challenged actions were "within the ambit of the [Exchanges'] delegated power," *id.* at 99, regardless of any alleged profit motive for acting, *see, e.g.*, *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1215 (9th Cir. 1998) (applying absolute immunity despite plaintiff's allegation that the SRO was acting as a for-profit "market facilitator").

**B.      The Exchanges' Development, Operation, And Maintenance Of Their Markets Are Regulatory Functions Protected By Absolute Immunity.**

Plaintiffs argue that absolute immunity does not apply in this case because the challenged activities were purportedly "pure business functions."  Opp. 32; *see also id.* at 33–38.  Yet, as noted above, the Second Circuit has squarely held that the Exchanges' duties to "develop, operate, and maintain" their markets are part of their "regulatory powers and responsibilities" under the Exchange Act.  *DL Capital*, 409 F.3d at 95.  The Exchanges have a "federally prescribed duty to operate a fair and orderly exchange."  *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1021 (2d Cir. 2014).  Plaintiffs' central theory revolves around that duty; they allege that "[t]he Exchanges are obligated to operate their securities exchanges in the public interest and for the protection of investors, assuring that the exchange is operated in a fair and equitable manner," but that "the Exchanges, both before and during the Class Period, failed to discharge these obligations."  SCAC ¶ 305.  Thus, Plaintiffs directly attack the Exchanges' performance of their duties under the Exchange Act and Regulation NMS.[2]

Plaintiffs seek to carve out certain aspects of the Exchanges' activities as "non-core," because the "SEC does not require exchanges to provide specific non-core data but instead allows market forces to determine which non-core data are provided."  Opp. 3 (quoting *NetCoalition v. SEC*, 715 F.3d 342, 345 (D.C. Cir. 2013)).  But data dissemination is not only subject to market forces, as Plaintiffs concede, but also must comply with SEC-imposed standards requiring that the dissemination be "fair and reasonable" and "not unreasonably

---

[2]     That the Exchanges' conduct is highly *regulated* by the SEC does not mean that it is not also *regulatory*.  Indeed, the SEC's close oversight of the Exchanges' conduct underscores that these topics are within the areas delegated to the Exchanges under the Exchange Act.  In particular, the 1975 amendments to the Exchange Act "expanded the area of supervised *self-regulation*, broadening the objectives of self-regulation and prescribing a more active role for the SEC in the oversight of exchange rulemaking."  *Drayer v. Krasner*, 572 F.2d 348, 357 (2d Cir. 1978) (emphasis added).

discriminatory."  17 C.F.R. § 242.603(a) (2015).  In any event, *NetCoalition* did not address

immunity, and no case applying the immunity doctrine has ever distinguished between "core"

and "non-core" aspects of the Exchanges' market regulation.

### C.   None Of The Cases Cited By Plaintiffs Holds That The Exchanges' Operation Of Their Markets Is Non-Regulatory.

Plaintiffs cite four cases to argue that "courts now recognize a 'business function'

exception to SRO immunity."  Opp. 31.  This is a straw man:  courts have always recognized that

absolute immunity applies to SRO activities that are incident to their regulatory functions, but

not to *exclusively* non-regulatory functions.  The relevant question is not whether there is a line,

but rather on which side of the line the challenged conduct falls.  *See* Mem. 25–32.  Plaintiffs'

cases are unhelpful in answering that question because they involve conduct far afield from the

SCAC's allegations; to the extent they are relevant at all, they support granting immunity here.

In *Platinum Partners Value Arbitrage Fund, LP v. CBOE*, 976 N.E.2d 415 (Ill. App. Ct.

2012), the plaintiff alleged that CBOE reduced the "strike price" on its option contracts and then

improperly disclosed that decision to only certain market participants.  *See id.* at 419, 422.  The

court concluded that the "private[] and premature[]" disclosure of the strike-price reduction was

not protected by absolute immunity.  *Id.* at 422.  As an initial matter, the state-court decision in

*Platinum Partners* contradicts the Second Circuit's decision in *DL Capital*, which holds that

"reporting [an SRO's] regulatory actions to the public" is protected by absolute immunity—even

where the plaintiff charges that the SRO intentionally misled investors, 409 F.3d at 98–99.  In

any event, *Platinum Partners* involved whether to "*publicly* announce [a] regulatory decision."

976 N.E.2d at 422.  Here, Plaintiffs are challenging the "regulatory decision[s]" themselves—

namely, SEC-approved proprietary data feeds, co-location services, and order types—and thus

mount a direct attack on the structure of the securities markets, and the Exchanges' exercise of

their authority within that structure.  These are unequivocally regulatory functions of the Exchanges, and therefore covered by absolute immunity.

The decision in *In re Facebook Inc., IPO Securities & Derivatives Litigation*, 986 F. Supp. 2d 428 (S.D.N.Y. 2013), is similarly off-point.  Although *Facebook* concluded that the "promotion and design of business systems," is non-regulatory, *id.* at 453, the court also concluded that decisions and statements concerning the operation of those systems *during trading* are regulatory, and thus immune, *id.* at 454, 458.  Whatever the merits of the line drawn in *Facebook* between immune and non-immune conduct, the conduct at issue in this case is "quintessentially regulatory," *id.* at 454, and thus immune.

Similarly, *Weissman v. NASD* involved media "advertisements that promote the sale of a particular stock and serve no regulatory function whatsoever," and that were "in no sense coterminous with the regulatory activity contemplated by the Exchange Act."  500 F.3d 1293, 1297, 1299 (11th Cir. 2007) (en banc).  There is a compelling difference between paid media advertisements addressed to the general public to promote one particular stock (as alleged in *Weissman*) and the conduct at issue here:  the day-to-day operation of the securities markets, which the Second Circuit has already held is part of the Exchanges' "regulatory powers and responsibilities."  *DL Capital*, 409 F.3d at 95.[3]

Finally, the conduct challenged in *Opulent Fund L.P. v. NASDAQ Stock Market, Inc.* is markedly different from this case:  NASDAQ had created an "index of the 100 largest non-

---

[3]     In any event, the majority opinion in *Weissman*, which a dissenting judge called "short and puzzling," 500 F.3d at 1303 (Tjoflat, J., dissenting), relied on the SRO's alleged profit motive to negate immunity, *id.* at 1299.  But this approach is "vastly dissimilar" to that of the Second Circuit.  Andrew J. Cavo, Note, Weissman v. National Association of Securities Dealers*: A Dangerously Narrow Interpretation of Absolute Immunity for Self-Regulatory Organizations*, 94 Cornell L. Rev. 415, 442 (2009).  Indeed, the court's holding was out of step even with the majority's own recognition that "the test is not an SRO's subjective intent or motivation." *Weissman*, 500 F.3d at 1314 (Tjoflat, J., dissenting) (brackets and quotation marks omitted).

financial securities traded on the Nasdaq Exchange," but did not calculate the price of the index correctly.  No. C-07-03683, 2007 WL 3010573, at *1 (N.D. Cal. Oct. 12, 2007).  The court emphasized that NASDAQ had created an entirely new derivatives market rather than engaging in acts of "oversight of the [securities] market to protect investors."  *Id.* at *5.  Here, by contrast, the alleged conduct in the SCAC falls within the Exchanges' "oversight of the [securities] market to protect investors," as Plaintiffs themselves concede.  *See, e.g.*, SCAC ¶¶ 4, 78–80, 305.

Plaintiffs' cases, therefore, provide no basis for this Court to depart from the unbroken series of Second Circuit decisions holding SROs immune where, as here, the conduct challenged falls "within the scope of the [Exchanges'] regulatory and general oversight functions."  *D'Alessio v. NYSE, Inc.*, 258 F.3d 93, 105 (2d Cir. 2001).[4]  That the Exchanges allegedly have failed to fulfill these regulatory functions, or have allegedly acted with bad intent, does not change the availability of absolute immunity.  *See, e.g.*, Mem. 33–35 & n.18.

In a last-ditch effort to salvage their case, Plaintiffs urge this Court to order discovery on the question of immunity.  *See* Opp. 44–45.  This fundamentally misunderstands absolute immunity, which the Supreme Court has emphasized provides "a right, not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery."  *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (quotation marks and emphasis omitted).  When absolute immunity applies, a defendant is "entitled to dismissal *before the commencement of discovery*."

---

[4]     Judge Forrest suggested that the immunity issue presented in *Lanier* might raise a "rather difficult question whether the conduct at issue . . . [was] truly *regulatory* . . . , as opposed to merely being *regulated* conduct."  2015 WL 1914446, at *11 n.4.  Because she dismissed the complaints on other grounds, Judge Forrest found it unnecessary to resolve the immunity issue.  *See id.*  In any event, the Exchanges' provision of proprietary data feeds, co-location services, and complex order types is plainly part of their "regulatory powers and responsibilities" to "develop, operate, and maintain" their markets.  *DL Capital*, 409 F.3d at 95.  That Plaintiffs believe the Exchanges have "abandoned [their] regulatory role" by providing these services does not make the challenged conduct any less regulatory.  *See NYSE Specialists*, 503 F.3d at 91.

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis added).

**III.    The Second Consolidated Amended Complaint Fails To State A Claim.**

    **A.    The SEC Has Approved The Allegedly Wrongful Conduct.**

Contrary to Plaintiffs' allegations, the SEC has determined that the market structure

attacked in the SCAC does not violate Section 6(b) or Section 10(b).  The SEC has regularly

recognized that proprietary data feeds, co-location services, and order types are "consistent with

the requirements of the [Exchange] Act" and "protect investors and the public interest."  Mem.

49; *see also id.* at 9–11.  Plaintiffs address this argument only in a footnote, contending that it

"belies [their] allegations, which must be accepted as true for purposes of this motion."  Opp. 42

n.36.  That is error:  Plaintiffs' "allegation" that "co-location services are not a core regulatory

function of an exchange" (*id.*) is a *legal conclusion* that the Second Circuit has squarely held

"will not suffice to defeat a motion to dismiss."  *Achtman v. Kirby, McInerney & Squire, LLP*,

464 F.3d 328, 337 (2d Cir. 2006) (quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S.

662, 679 (2009) (conclusions "are not entitled to the assumption of truth").  Plaintiffs also rely

on their conclusory allegation that the SEC has not approved proprietary data feeds, *see* Opp. 42

n.36, but that allegation is untrue and contradicted by the SEC's *own* public releases and thus

cannot be credited.  As Judge Forrest noted in *Lanier*, "[t]he SEC has . . . approved the SROs'

use of proprietary feeds," and has done so even while "acknowledg[ing] that these feeds offer

speed advantages over consolidated data feeds."  2015 WL 1914446, at *9.

This Court is not bound to accept Plaintiffs' conclusory characterization of the securities

markets, or the Exchanges' role in operating them, but instead should recognize the SEC's own

regulations and actions governing those markets.[5]  The SEC has approved the market structure

---

    [5]    Plaintiffs mischaracterize Direct Edge's recent settlement with the SEC to suggest that
the SEC endorses their view that complex order types constitute market fraud.  Opp. 11.  But the

that Plaintiffs challenge here, and thus Plaintiffs' claims "would require this Court to in essence determine that the [Exchanges] are violating" their regulatory obligations, "even though the SEC's Exchange Act Releases indicate that the SEC is not of the [same] view," *Lanier*, 2015 WL 1914446, at *10. Plaintiffs' claims should be dismissed. *See* Mem. 36–37.

### B.   Plaintiffs Lack A Private Right Of Action Under Section 6(b).

Plaintiffs quote *Brawer v. Options Clearing Corp.*, 807 F.2d 297 (2d Cir. 1986), contending that, in that case, the Second Circuit "found" that a private lawsuit under Section 6(b) "'may be brought . . . if it is premised upon allegations of *fraud or bad faith*.'" Opp. 62. Plaintiffs' use of an ellipsis obscures the critical phrase: the Second Circuit *actually* wrote that "a private cause of action against an exchange . . . , *if one exists at all*, may be brought only if it is premised upon allegations of fraud or bad faith." *Brawer*, 807 F.2d at 299 (emphasis added). The Second Circuit affirmed the dismissal in *Brawer* because the plaintiffs in that case had failed to plead fraud or bad faith, and thus it was unnecessary to decide whether they could properly invoke a private right of action. *Id.* at 304. But the court did not, as Plaintiffs suggest, hold that such a right of action exists under Section 6(b).

Plaintiffs also rely upon *Baird v. Franklin*, 141 F.2d 238 (2d Cir. 1944), which implied a private right of action under an earlier version of Section 6(b) more than 70 years ago. But that decision has been abrogated by Congress's 1975 amendments to the Exchange Act, which first created the "national market system," authorized the Exchanges to operate it, and directed the

---

SEC stated only that Direct Edge failed to "completely and accurately" describe the functionality of certain order types to the public, not that it did so with an improper purpose or that these order types manipulated the market. To the contrary, the SEC has approved many order types, including the Post-Only ISO type order about which Plaintiffs complain, finding they were "designed to prevent . . . manipulati[on]" and were "consistent with . . . Regulation NMS." *See, e.g.*, Exchange Act Release No. 34-73333, 79 Fed. Reg. 62,223, 62,226 (Oct. 16, 2014). Indeed, the intermarket sweep order, or ISO, functionality that forms the core of the Post-Only ISO order type was *created* by the SEC. *See* 17 C.F.R. § 242.600(b)(30) (2015); s*ee also* Exchange Act Release No. 34-51808, 70 Fed. Reg. 37,496, 37,523 (June 29, 2005).

SEC—not private parties—to oversee the system.  For that reason, the Second Circuit has

consistently rejected post-1975 attempts to imply private rights of action to challenge SRO

actions.  *See Feins v. Am. Stock Exch., Inc.*, 81 F.3d 1215, 1217, 1224 (2d Cir. 1996); *Desiderio*

*v. NASD*, 191 F.3d 198, 208 (2d Cir. 1999); *see also* Mem. 37 n.20.

### C.     The Complaint Fails To State A Claim Under Rule 10b-5.

Plaintiffs' Opposition confirms that their securities-fraud claim is, at most, one for aiding

and abetting market manipulation, which is not actionable in a private suit.  They do not argue

that the Exchanges made actionable misstatements under Rule 10b-5(b), and they cannot

overcome their failure to plead any actions *by the Exchanges* that meet the definition of

manipulation under Rule 10b-5(a) and (c)—which, despite Plaintiffs' protests, is "narrow," *see*

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 273 F. Supp. 2d 351, 376 (S.D.N.Y.

2003) (quotation marks omitted), *aff'd sub nom. Lentell v. Merrill Lynch & Co.*, 396 F.3d 161

(2d Cir. 2005).  The Opposition affirms that the SCAC alleges only that the Exchanges' services

may be "used" by others—high-frequency trading ("HFT") firms—in ways that "result[] in

market manipulation."  Opp. 49, 50; *see also id.* 33, 57 (alleging that Exchanges "provide HFT

firms with the ability to receive enhanced trading information").  That, however, does not

establish a primary violation by the Exchanges.  *See, e.g.*, *In re Refco, Inc. Sec. Litig.*, 609 F.

Supp. 2d 304, 314 (S.D.N.Y. 2009) (allegation that law firm designed sham transactions "used

by Refco" to commit securities fraud did not allege primary liability), *aff'd sub nom. Pac. Inv.*

*Mgmt. Co. v. Mayer Brown LLP*, 603 F.3d 144 (2d Cir. 2010).

When traders have manipulated markets using SEC-approved services offered by the

Exchanges, the SEC has taken action against the offenders,[6] but it has never ruled that the

---

[6]     *See, e.g.*, *In re Athena Capital Research, LLC*, Exchange Act Release No. 34-73369 (Oct. 14, 2014) (sanctioning HFT firm for using rapid-fire trades in last two minutes of trading to

Exchanges themselves can be liable for manipulation simply for offering services that the SEC has approved.[7]  The fundamental flaw in Plaintiffs' claim is the absence of any alleged conduct by the Exchanges that manipulates the market for any security.

Similarly, Plaintiffs cannot satisfy any of the other elements of a securities-fraud claim. For example, Plaintiffs argue that they have satisfied the rigorous standards for pleading scienter based merely on the allegations that the Exchanges "created the[] products and services" that allowed the HFT firms to engage in manipulative conduct, and that the Exchanges did so "for the purpose of profiting."  Opp. 58.  But leaping from those allegations to the inference that the Exchanges intended to defraud nearly every single public investor in the past six years is not even plausible, let alone consistent with the PSLRA's "strong inference" scienter requirement. The Second Circuit has made abundantly clear that general allegations of motives possessed by all corporations, such as increasing corporate profitability, are insufficient to plead scienter.  *See, e.g.*, *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009).

Nor does the SCAC adequately plead reliance.  Plaintiffs do not attempt to plead reliance directly or through a fraud-on-the-market theory; they rely entirely on the presumption of reliance recognized in *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972).  Opp. 55–56. But a majority of courts of appeals have ruled that the *Affiliated Ute* presumption does not apply to market-manipulation claims like those asserted here.  *See Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 940–41 (9th Cir. 2009) (per curiam); *Joseph v. Wiles*, 223 F.3d 1155, 1163 (10th

---

manipulate the closing prices of thousands of securities), *available at* 2014 WL 5282074.

[7]    Indeed, in keeping with their role as SROs, the Exchanges themselves take action against market manipulators.  *See, e.g.*,  Press Release, FINRA, *FINRA Joins Exchanges and the SEC in Fining Hold Brothers More Than $5.9 Million for Manipulative Trading, Anti-Money Laundering, and Other Violations* (Sept. 25, 2012), *available at* http://www.finra.org/newsroom/ 2012/finra-joins-exchanges-and-sec-fining-hold-brothers-more-59-million-manipulative.

Cir. 2000); *see also In re Merrill Lynch Auction Rate Sec. Litig.*, 704 F. Supp. 2d 378, 398

(S.D.N.Y. 2010).  In any event, the vagueness of the SCAC is fatal for reliance.  In *Fezzani v.*

*Bear, Stearns & Co.*, 716 F.3d 18 (2d Cir. 2013)—a market-manipulation case that Plaintiffs

ignore—the Second Circuit rejected allegations of reliance similar to those at issue here and

concluded that a complaint fails if it "do[es] not contain discrete claims related to the prices paid

for the particular securities" and does not allege that the plaintiff purchased securities "in specific

reliance on [the defendant's] trading," *id*. at 22–23.

 Further, Plaintiffs concede they have not pleaded loss causation, by arguing that they are

excused from doing so because of the supposed uniqueness of their claim.  *See* Opp. 59.  Loss

causation, however, is an essential element of any Rule 10b-5 claim and cannot be so easily

avoided.  "[A]llowing a plaintiff to forgo giving any indication of the economic loss [they

suffered] . . . would bring about harm of the very sort [the PSLRA] seek[s] to avoid."  *Dura*

*Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005).  Plaintiffs do not identify any specific stocks

that were manipulated, when they supposedly were manipulated, or whether or when Plaintiffs

bought or sold such stocks.  *See* SCAC ¶¶ 109, 153, 156, 251, 299.  These failures warrant

dismissal.  *See, e.g.*, *Fezzani v. Bear, Stearns & Co.*, 384 F. Supp. 2d 618, 642–43 (S.D.N.Y.

2004) (dismissing manipulation claim because plaintiffs' "general" allegations failed to specify

"which securities were manipulated in what way, how such manipulation affected the market for

the *specific* security, and in what way [the] Plaintiffs were harmed"), *aff'd*, 716 F.3d 18 (2d Cir.

2013).[8]

 Finally, because the SCAC lacks any details regarding specific trades, it also fails to

---

[8] Plaintiffs' singular reliance on *In re NYSE Specialists Sec. Litig.*, 405 F. Supp. 2d 281
(S.D.N.Y. 2005), is distinguishable because the plaintiffs annexed to their complaint "records of
stock trades" in 41 specific stocks.  *Id*. at 315.

satisfy the purchaser-seller standing requirement adopted in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975), and the requirements of the PSLRA.  Plaintiffs effectively concede this failing in the Opposition by ignoring entirely the binding authorities cited by the Exchanges and instead asserting only that the Exchanges urge a narrow reading of the "in connection with" clause in Rule 10b-5.  Opp. 60–61.  But that non sequitur fails because as the Supreme Court made clear in *Dabit*—a case on which Plaintiffs do rely—the "in connection with" requirement is completely separate from the *Blue Chip Stamps* standing rule.  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 84 (2006) ("The *Blue Chip Stamps* Court . . . define[d] the scope of a private right of action under Rule 10b-5—not . . . the words 'in connection with' . . . ." (citation omitted)).  Plaintiffs' cases address only the "in connection with" requirement and are therefore irrelevant.  Moreover, although Plaintiffs point to the district court's decision in *Fezzani*, the plaintiffs in that case specifically listed the purchases and sales at issue on a "security-by-security, trade-by-trade basis."  Am. Compl. ¶¶ 4, 37 & Ex. A, *Fezzani*, No. 99-cv-0793 (S.D.N.Y. filed Apr. 7, 2005), *available at* 2005 WL 6251885.  *Fezzani*, therefore, simply highlights the SCAC's deficiencies.

## CONCLUSION

For the reasons stated above and in the memorandum supporting the Exchanges' motion to dismiss, the Court should dismiss the SCAC under Rule 12(b)(1) for lack of subject matter jurisdiction.  In the event that the Court reaches the additional arguments raised by the Exchanges, the Court should dismiss the SCAC with prejudice under Rule 12(b)(6).

May 8, 2015                                     Respectfully submitted,

                                                By: /s/ Jessica L. Pahl
                                                George A. Borden
                                                Steve M. Farina (admitted *pro hac vice*)
                                                Jessica L. Pahl (admitted *pro hac vice*)
                                                WILLIAMS & CONNOLLY LLP

725 Twelfth Street NW
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
GBorden@wc.com
SFarina@wc.com
JLPahl@wc.com

*Counsel for Defendants New York Stock Exchange
LLC and NYSE Arca, Inc.*


By: /s/ Douglas R. Cox (with permission)

Douglas R. Cox
Michael R. Huston
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue NW
Washington, DC 20036
Telephone: (202) 955-8500
Facsimile: (202) 530-9539
DCox@gibsondunn.com
MHuston@gibsondunn.com

*Counsel for The NASDAQ Stock Market LLC and
NASDAQ OMX BX, Inc.*

By: /s/ James A. Murphy (with permission)
James A. Murphy
Joseph C. Lombard (admitted *pro hac vice*)
Theodore R. Snyder
MURPHY & McGONIGLE, PC
1185 Avenue of the Americas, 21st Floor
New York, NY 10036
Telephone: (212) 880-3968
Facsimile: (212) 880-3998
James.Murphy@mmlawus.com
Joseph.Lombard@mmlawus.com
Theodore.Snyder@mmlawus.com

*Counsel for BATS Global Markets, Inc. and Direct
Edge ECN, LLC*

By: /s/ Seth L. Levine (with permission)
Seth L. Levine
Christos Papapetrou
LEVINE LEE LLP
666 Fifth Avenue
New York, NY 10103
Telephone: (212) 223-4400
Facsimile: (212) 223-4425
SLevine@levinelee.com
CPapapetrou@levinelee.com

*Counsel for Chicago Stock Exchange, Inc.*