UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
:
IN RE:                                                             :
                                                                   :
BARCLAYS LIQUIDITY CROSS AND HIGH                                  :
FREQUENCY TRADING LITIGATION                                       :     14-MD-2589 (JMF)
                                                                   :
*This Document Relates to City of Providence, Rhode                :
Island, et al. v. BATS Global Markets, Inc., Civil Action*         :
*No. 1:14-cv-02811-JMF (Consolidated)*                             :
                                                                   :
                                                                   :
                                                                   :
-------------------------------------------------------------------x


**BARCLAYS' REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS
MOTION TO DISMISS THE SECOND CONSOLIDATED AMENDED COMPLAINT**

May 8, 2015

## TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I. THE OPPOSITION'S "SCHEME" THEORY OF LIABILITY CANNOT REVIVE PLAINTIFFS' FAILED MISREPRESENTATION CLAIM ................................................................................. 2

    A. Plaintiffs Have Failed to Allege a Viable Theory of Scheme Liability Based on Deceptive Acts ................................................................. 2

    B. The Opposition Confirms that Plaintiffs Fail to Allege the Other Required Elements of Securities Fraud ................................................................. 4

        1. Plaintiffs Still Fail to Demonstrate Any Reliance ....................................... 4

        2. The Opposition Confirms Plaintiffs Cannot Establish Loss Causation ..................................................................................................... 6

        3. The Opposition Identifies No Well-Pleaded Allegations that Could Give Rise to a Strong Inference of Scienter ................................................ 7

II. PLAINTIFFS OFFER NO JUSTIFICATION FOR PARROTING UNADJUDICATED ALLEGATIONS WITHOUT INVESTIGATION ...................... 9

CONCLUSION ............................................................................................................................ 10

## TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*380544 Canada, Inc.* v. *Aspen Tech., Inc.*,
    544 F. Supp. 2d 199 (S.D.N.Y. 2008) ............................................................................... 9

*Abuhamdan* v. *Blyth, Inc.*,
    9 F. Supp. 3d 175 (D. Conn. 2014) ................................................................................... 7

*Armstrong* v. *Exceptional Child Ctr., Inc.*,
    135 S. Ct. 1378 (2015) ...................................................................................................... 3

*ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) ................................................................................................ 7

*Cohen* v. *Stevanovich*,
    722 F. Supp. 2d 416 (S.D.N.Y. 2010) ........................................................................... 6, 9

*de la Fuente* v. *DCI Telecomms., Inc.*,
    259 F. Supp. 2d 250 (S.D.N.Y. 2003) ............................................................................... 9

*Fezzani* v. *Bear, Stearns & Co.*,
    716 F.3d 18 (2d Cir. 2013) ............................................................................................ 5, 6

*Fezzani* v. *Bear, Stearns & Co.*,
    777 F.3d 566 (2d Cir. 2015) .......................................................................................... 5, 6

*Glaser* v. *The9, Ltd.*,
    772 F. Supp. 2d 573 (S.D.N.Y. 2011) ............................................................................... 9

*Halliburton Co.* v. *Erica P. John Fund, Inc.*,
    134 S. Ct. 2398 (2014) ...................................................................................................... 5

*In re Citigroup Auction Rate Sec. Litig.*,
    700 F. Supp. 2d 294 (S.D.N.Y. 2009) ........................................................................... 2, 6

*In re Moody's Corp. Sec. Litig.*,
    274 F.R.D. 480 (S.D.N.Y. 2011) ...................................................................................... 6

*In re Parmalat Sec. Litig.*,
    570 F. Supp. 2d 521 (S.D.N.Y. 2008) ............................................................................... 7

*In re UBS AG Sec. Litig.*,
    2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) ................................................................ 10

*In re Wachovia Equity Sec. Litig.*,
   753 F. Supp. 2d 326 (S.D.N.Y. 2011)..................................................................................8

*Janbay* v. *Canadian Solar, Inc.*,
   2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) .....................................................................10

*Joffee* v. *Lehman Bros.*,
   410 F. Supp. 2d 187 (S.D.N.Y. 2006)..................................................................................6

*Jones* v. *Perez*,
   550 F. App'x 24 (2d Cir. 2013) ............................................................................................8

*Kalnit* v. *Eichler*,
   264 F.3d 131 (2d Cir. 2001).................................................................................................7

*Lattanzio* v. *Deloitte & Touche LLP*,
   476 F.3d 147 (2d Cir. 2007).................................................................................................6

*Lentell* v. *Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005)............................................................................................2, 7

*Levitt* v. *J.P. Morgan Sec., Inc.*,
   710 F.3d 454 (2d Cir. 2013)............................................................................................3, 6

*Lipsky* v. *Commonwealth United Corp.*,
   551 F.2d 887 (2d Cir. 1976)...............................................................................................10

*Santa Fe Indus., Inc.* v. *Green*,
   430 U.S. 462 (1977).............................................................................................................4

*People ex rel. Schneiderman* v. *Barclays Capital Inc.*,
   1 N.Y.S.3d 910 (Sup. Ct., N.Y. Cnty. 2015) .....................................................................10

*SEC* v. *Kelly*,
   817 F. Supp. 2d 340 (S.D.N.Y. 2011)..................................................................................2

*Stoneridge Inv. Partners, LLC* v. *Scientific-Atlanta, Inc.*,
   552 U.S. 148 (2008)..................................................................................................3, 4, 6, 7

*Strougo* v. *Barclays PLC*,
   2015 WL 1883201 (S.D.N.Y. Apr. 24, 2015).................................................................8, 10

*Taylor* v. *Westor Capital Grp.*,
   943 F. Supp. 2d 397 (S.D.N.Y. 2013)..................................................................................7

*TCS Capital Mgmt., LLC* v. *Apax Partners, L.P.*,
   2008 WL 650385 (S.D.N.Y. Mar. 7, 2008) .........................................................................2

*Teamsters Local 445 Freight Div. Pension Fund* v. *Dynex Capital Inc.*,
    531 F.3d 190 (2d Cir. 2008)..................................................................................................8

*Union Cent. Life Ins. Co.* v. *Credit Suisse Sec. (USA), LLC*,
    2014 WL 7179989 (S.D.N.Y. Dec. 10, 2014) ....................................................................2, 8

**Statutes**

15 U.S.C.,
    § 78j ....................................................................................................................................3, 4
    § 78u-4 ....................................................................................................................................7

**Rules**

FED. R. CIV. P.,
    Rule 9 ..................................................................................................................................1, 2
    Rule 11 ....................................................................................................................................9
    Rule 12 ..................................................................................................................................10

**Regulations**

17 C.F.R. § 240.10b-5.....................................................................................................................4

**Other Authorities**

Concept Release on Equity Market Structure,
    Release No. 34-61358, 75 Fed. Reg. 3594 (Jan. 21, 2010) ....................................................3

**PRELIMINARY STATEMENT**

Plaintiffs focus the vast majority of their Opposition ("Opposition" or "Opp.") on the Exchange Defendants, relegating their arguments about Barclays to page 64 of the brief. In so doing, plaintiffs seek to bury their contortion of their misrepresentation claims against Barclays into a "scheme" claim based on market manipulation. (Opp. at 68-69.) But the same deficiencies that were fatal to plaintiffs' misrepresentation claims doom their "scheme" claim as well.

*First*, plaintiffs cannot avoid their pleading burdens under Rule 9(b) by attempting to recharacterize their rote allegations of misrepresentations into an amorphous "scheme" to defraud. And even if plaintiffs could do so, Barclays has demonstrated that the Second Amended Complaint ("SAC") does not allege any actual deceptive conduct by Barclays. Moreover, plaintiffs have not met their burden of alleging the basic elements of a fraud, whether based on a misstatement or a scheme theory:

*Reliance.* Plaintiffs do not contest that they never actually relied on any deceptive acts or misrepresentations by Barclays, and are not entitled to a presumption of reliance, as they do not allege that Barclays communicated any artificial prices to the market.

*Loss Causation.* Plaintiffs still do not explain *how* Barclays *caused* their supposed losses. The SAC does not contain any allegations of trades in which plaintiffs were harmed, let alone harmed by Barclays' purported misconduct.

*Scienter.* The Opposition confirms that plaintiffs have not alleged scienter with particularity, as required by Rule 9(b) and the Reform Act. Plaintiffs point to allegations that Barclays made false or misleading statements, but fail to identify any facts suggesting that any Barclays employee knew or was reckless in not knowing that those statements were misleading.

*Second*, plaintiffs offer no excuse for relying solely on allegations from the

NYAG complaint. This Court should disregard these cut-and-paste allegations.

## ARGUMENT

**I.  THE OPPOSITION'S "SCHEME" THEORY OF LIABILITY CANNOT REVIVE PLAINTIFFS' FAILED MISREPRESENTATION CLAIM.**

**A.  Plaintiffs Have Failed to Allege a Viable Theory of Scheme Liability Based on Deceptive Acts.**

Plaintiffs no longer seriously posit a theory of fraud based on misrepresentations and omissions. (*See* Opp. at 68-69.) Rather, they attempt to recast their claims as a "scheme to manipulate the market" in LX, of which the alleged misrepresentations "are [a] part." (*Id.*) But a "scheme" theory of liability must be based on an "inherently deceptive act that is distinct from an alleged misstatement." *SEC* v. *Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011); *Union Cent. Life Ins. Co.* v. *Credit Suisse Sec. (USA), LLC*, 2014 WL 7179989, at *5 (S.D.N.Y. Dec. 10, 2014). The SAC alleges no such inherently deceptive act. (SAC ¶¶ 269-78.)

Plaintiffs' theory of fraud is based on their assertions that (i) LX did not comply with government regulations, (ii) Barclays "failed to dispel" investors' belief that LX complied with regulations related to market fairness and integrity, and (iii) Barclays "made public statements that encouraged such belief." (SAC ¶¶ 268-69, 275.) This alleges no deceptive *conduct*, but is plainly an attempt to allege omissions and misrepresentations, which cannot form the basis of a "scheme" claim. *See Lentell* v. *Merrill Lynch & Co.*, 396 F.3d 161, 177 (2d Cir. 2005) (where, as here, the "sole basis for [scheme] claims is alleged misrepresentations or omissions," plaintiffs cannot "cast their claims in terms of" scheme liability); *TCS Capital Mgmt., LLC* v. *Apax Partners, L.P.*, 2008 WL 650385, at *22 (S.D.N.Y. Mar. 7, 2008).

A "scheme" theory also does not excuse plaintiffs from Rule 9(b), which requires particularized allegations of the "manipulative acts . . . performed, which defendants performed them, when . . . , and what effect the scheme had on the market." *In re Citigroup Auction Rate*

*Sec. Litig.*, 700 F. Supp. 2d 294, 304 (S.D.N.Y. 2009).  Plaintiffs make no such allegations.

Plaintiffs cannot plead a scheme by alleging that Barclays promised LX clients it would protect them from HFTs (SAC ¶¶ 275, 277), while secretly "court[ing]" HFTs to join LX, "provid[ing] HFT firms with certain benefits and information," and allowing HFTs to "cross-connect" to its servers.  (Opp. at 71; SAC ¶ 278.)  Even if this were not a classic misstatement (as opposed to scheme) theory, Barclays explicitly disclosed to LX clients that ELPs (which allegedly means "HFTs" (SAC ¶ 272)) were a major component of LX.  (*See* Barclays' Br. at 9, 20-21; Ex. 2 to Decl. of Jeffrey T. Scott, dated January 23, 2015, at 10.)  Furthermore, there is no allegation that Barclays provided HFTs with benefits or information not also available to other LX clients.  (*See infra* p. 4.)  In fact, it was public knowledge that HFTs operate by cross-connecting to trading venues.  *See* Concept Release on Equity Market Structure, Release No. 34-61358, 75 Fed. Reg. 3594, 3606 (Jan. 21, 2010); *see also* SAC ¶¶ 108-12.

Plaintiffs likewise cannot state a claim for scheme liability by alleging that Barclays *omitted* to tell LX investors that Barclays was violating a purported "fundamental requirement[] to treat investors fairly and not expose them to unfair predation," a requirement plaintiffs attribute to "the applicable regulatory framework."  (Opp. at 70.)  Conduct is not "deceptive" under Section 10(b) simply because it supposedly was not in compliance with some other law.[1]  In any event, no regulation requires ATS operators to prohibit or restrict HFTs, and plaintiffs do not cite any regulation that Barclays allegedly violated.  (*See* SAC ¶¶ 264-268

---

[1] As the Second Circuit has recognized, treating an undisclosed regulatory violation as a "material omission under § 10(b)[] would be tantamount to the creation of a [private] right of action" under the regulation, *Levitt* v. *J.P. Morgan Sec., Inc.*, 710 F.3d 454, 469 (2d Cir. 2013), which would violate the Supreme Court's clear admonition that any extension of private rights of action under the securities laws "is for Congress, not for" the courts.  *Stoneridge Inv. Partners*, *LLC* v. *Scientific-Atlanta, Inc.*, 552 U.S. 148, 164-65 (2008); *Armstrong* v. *Exceptional Child Ctr.*, *Inc.*, 135 S. Ct. 1378, 1387-88 (2015) ("[A] private right of action under federal law . . . must be 'unambiguously conferred.'" (internal quotation marks omitted)).

(citing 17 C.F.R. § 242.301(b) and FINRA Rule 5270, but without alleging that Barclays violated them).)  Plaintiffs allege that Regulation ATS requires ATS operators to implement safeguards to protect clients' "confidential trading information."  (SAC ¶ 264.)  But the only information Barclays allegedly provided to HFTs are general facts and statistics about LX that are available to any client and that are not "confidential trading information" protected by the regulation.  (SAC ¶ 278(a).)

In the end, plaintiffs are forced to concede that their theory does not rest upon any alleged deceptive act, but upon a supposed, but entirely inactionable, failure to act.  Unlike Rule 10b-5(b) statement claims, Rule 10b-5(a) and (c), by their terms, do not apply to conduct that is supposedly deceptive only by omission.  And, any supposed mismanagement in the operation of LX is not actionable under the federal securities laws.  *Santa Fe Indus., Inc*. v. *Green*, 430 U.S. 462, 479 (1977) ("We thus adhere to the position that Congress by § 10(b) did not seek to regulate transactions which constitute no more than internal corporate mismanagement.").

> **B.    The Opposition Confirms that Plaintiffs Fail to Allege the Other Required Elements of Securities Fraud.**
>
>> **1.    Plaintiffs Still Fail to Demonstrate Any Reliance.**

"Reliance by the plaintiff upon the defendant's deceptive acts is an essential element" of a scheme claim.  *Stoneridge*, 552 U.S. at 159.  Plaintiffs do not argue that they relied on any deceptive act by Barclays.  (Opp. at 72.)  Instead, they try to invoke (i) "the fraud-on-the-market doctrine," and (ii) the *Affiliated Ute* presumption for "an omission of a material fact by one with a duty to disclose."  *Stoneridge*, 552 U.S. at 159; Opp. at 72 & n.58.

Plaintiffs argue that they are entitled to a "fraud-on-the-market" presumption of reliance, because they relied "on the integrity and efficiency of Barclays's LX market, free of manipulative conduct."  (Opp. at 72.)  Not so.  Plaintiffs conflate two separate requirements of

the fraud-on-the-market theory: "First, if a plaintiff shows that the defendant's misrepresentation was public and material and that the stock traded in a generally efficient market, he is entitled to a presumption that the misrepresentation affected the stock price.  Second, if the plaintiff also shows that he purchased the stock at the market price during the relevant period, he is entitled to a further presumption that he purchased the stock in reliance on the defendant's misrepresentation." *Halliburton Co.* v. *Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2414 (2014).  Supposed reliance on the "integrity" of the market is not a viable theory without a misstatement or deceptive act that is (i) public, (ii) material, and (iii) capable of affecting market prices.

For this reason, the Second Circuit has held that a fraud-on-the-market theory is available in a "scheme" manipulation case only where, *unlike here*, the defendants sent "false pricing signal[s] to the market." *Fezzani* v. *Bear, Stearns & Co.*, 777 F.3d 566, 571-72 (2d Cir. 2015); *see Fezzani* v. *Bear, Stearns & Co.*, 716 F.3d 18, 25 (2d Cir. 2013).  Plaintiffs do not allege Barclays sent artificial prices to the LX market or engaged in public, deceptive acts.  Dark pools do not reveal price information until after trades execute (SAC ¶ 253), so it is not possible to send artificial signals to the market by trading on an ATS alone.  The order "confirmations [that] c[o]me after trades [a]re made" are "the result, not the cause, of the fraud," and thus are not false price signals that could support a manipulation claim.  *Fezzani*, 716 F.3d at 23 n.4.

Moreover, the fraud-on-the-market theory requires a plaintiff to identify "(i) particular securities (ii) manipulated by particular defendants (iii) causing the losses to the particular buyers." *Fezzani*, 777 F.3d at 573.  Here, plaintiffs do not even allege what securities they traded on LX, let alone that any securities' prices were manipulated.[2]

---

[2]    In a footnote, plaintiffs argue that they are "entitled to an *Affiliated Ute* presumption," because "Barclays did nothing to dispel the known public perception (*which it falsely promoted*) that its dark pool was fair." (Opp. at 72 n.58 (emphasis added).)  Plaintiffs' argument that Barclays "falsely promoted" the
(*footnote continued*)

### 2. The Opposition Confirms Plaintiffs Cannot Establish Loss Causation.

Plaintiffs argue that they established loss causation by alleging that "Barclays . . . caused Plaintiffs—who were relying on the efficiency, integrity, and fairness of the market—to lose money." (Opp. at 77.) But it is well settled that such conclusory allegations are insufficient. (Barclays' Br. at 23.) A plaintiff claiming market manipulation must, at the very least, set forth "facts that would allow a factfinder to ascribe some rough proportion of the whole loss" to Barclays' conduct, *Lattanzio* v. *Deloitte & Touche LLP*, 476 F.3d 147, 158 (2d Cir. 2007), including "facts indicating the economic loss [plaintiffs] claim to have suffered." *Joffee* v. *Lehman Bros.*, 410 F. Supp. 2d 187, 192 (S.D.N.Y. 2006).

Plaintiffs make no attempt to satisfy these requirements. The SAC does not allege the most basic facts concerning plaintiffs' purported losses, such as when plaintiffs traded on LX, what securities they traded, or whether they lost money on those trades, let alone that they traded when prices were "artificial" and adverse to their positions. (*See* SAC ¶¶ 21, 24, 279, 299; *see also Joffee*, 410 F. Supp. 2d at 192.) Plaintiffs have no excuse for failing to allege these facts, as information about their trades "is plainly available to [them]." *Cohen* v. *Stevanovich*, 722 F. Supp. 2d 416, 431-32 (S.D.N.Y. 2010); *see Citigroup*, 700 F. Supp. 2d at 307.

Plaintiffs argue they need not establish a causal link to any Barclays act, because

---

(*footnote continued*)

fairness of its dark pool makes clear—their protestations to the contrary notwithstanding (Opp. at 68-69)—that plaintiffs are asserting a misstatement claim. Where the alleged omissions "merely serve to exacerbate" alleged misrepresentations, *Affiliated Ute* is not available. *In re Moody's Corp. Sec. Litig.*, 274 F.R.D. 480, 494 (S.D.N.Y. 2011).

*Affiliated Ute* also is inapplicable because Barclays had no duty of disclosure. *Stoneridge*, 552 U.S. at 159. Relying on a single district court case, plaintiffs argue that manipulators have a duty to disclose their manipulative acts. (Opp. at 75 (citing *In re UBS Auction Rate Sec. Litig.*, 2010 WL 2541166, at *27 (S.D.N.Y. June 10, 2010)).) But the Second Circuit has never accepted this theory, *see Levitt*, 710 F.3d at 467 & n.9, and *Fezzani* effectively rejected it by holding that private plaintiffs cannot sue for manipulation unless the manipulator communicated artificial prices (or engaged in manipulation that caused artificial prices to be "reported in a [public] market"). 777 F.3d at 571-72; 716 F.3d at 25.

Barclays is liable for "all actors in the scheme," even (apparently) those that did not violate the securities laws. (Opp. at 77.) But "*Stoneridge* made plain that investors must show reliance upon a defendant's *own deceptive conduct* before that defendant, otherwise a secondary actor, may be found primarily liable." *In re Parmalat Sec. Litig.*, 570 F. Supp. 2d 521, 526 (S.D.N.Y. 2008). Plaintiffs have not shown a specific loss caused by their reliance upon any deceptive Barclays act. *Abuhamdan* v. *Blyth, Inc.*, 9 F. Supp. 3d 175, 207-09, 212 (D. Conn. 2014).

Plaintiffs also argue that Barclays should be liable for plaintiffs' losses even though plaintiffs would have incurred the same losses on any other trading venue. (Opp. at 79.) But as Barclays' Opening Brief explained (*see* Barclays' Br. at 25), under Second Circuit precedent, plaintiffs' allegations "do not provide the necessary causal link" between the alleged fraud and plaintiffs' losses, because plaintiffs fail to allege that they "would have been spared all or an ascertainable portion of that loss absent the fraud." *Lentell*, 396 F.3d at 175.

### 3. The Opposition Identifies No Well-Pleaded Allegations that Could Give Rise to a Strong Inference of Scienter.

Plaintiffs suggest that "scheme" claims are not subject to the Reform Act. (Opp. at 69.) Although Reform Act requirements related to alleging *misstatements* with particularity may not apply to "scheme" claims, plaintiffs still must plead "with particularity facts giving rise to a strong inference" of *scienter*. 15 U.S.C. § 78u-4(b)(2)(A); *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007); *Taylor* v. *Westor Capital Grp.*, 943 F. Supp. 2d 397, 401 (S.D.N.Y. 2013). Here, plaintiffs do not dispute that they do not allege motive. (Opp. at 75-76.) They argue only that they allege "conscious misbehavior," *i.e.*, "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Kalnit* v. *Eichler*, 264 F.3d 131, 142-43 (2d Cir. 2001) (where

-7-

motive is not alleged, plaintiff must produce an even "stronger inference of recklessness").

The Opposition identifies no allegations that meet this standard. Plaintiffs point to "differences between Barclays' alleged public statements . . . and the true facts known to Barclays at the time." (Opp. at 76 (citing SAC ¶¶ 269-89).) But *none* of the paragraphs plaintiffs cite actually says anything about "facts *known* to Barclays" at the time of the alleged scheme. (*Id.* (emphasis added).) Rather, those paragraphs simply repeat Barclays' purported statements about LX and allege why they were false or misleading, which is patently insufficient to show scienter. Where, as here, plaintiffs "make no attempt to supply factual allegations regarding what Defendants knew and when they knew it," scienter is not adequately alleged. *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 355 (S.D.N.Y. 2011); *see also Credit Suisse Sec.*, 2014 WL 7179989, at *5 (scienter not alleged where complaint "lacks specific allegations that the Defendants actually received notice" that their representations were inaccurate). Plaintiffs likewise allege no facts suggesting that employees who "courted" HFTs knew or were reckless in not knowing that this conduct could be false or misleading. And any attempt to infer scienter from the alleged misstatements is undermined by the fact that Barclays disclosed the very facts plaintiffs allege it concealed, such as the presence of aggressive HFTs in LX. *See Jones* v. *Perez*, 550 F. App'x 24, 26 (2d Cir. 2013) (no inference of scienter where the defendant had disclosed the relevant information to the public); *supra* Part I.A.³

Plaintiffs also fail to allege corporate scienter. *Teamsters Local 445 Freight Div. Pension Fund* v. *Dynex Capital Inc.*, 531 F.3d 190, 195 (2d Cir. 2008). Plaintiffs' assertion that "Barclays' management is specifically alleged to have known of and directed the fraudulent

---

³   The *Strougo* decision also does not support any finding of scienter here. That case premised an inference of scienter entirely on allegations that are nowhere pleaded in the SAC. *Compare Strougo* v. *Barclays PLC*, 2015 WL 1883201, at *12 (S.D.N.Y. Apr. 24, 2015), *with* SAC ¶¶ 269-79.

scheme" (Opp. at 76-77) is not supported by a single well-pleaded fact. "Generalized allegations of scienter directed at a group . . . and based entirely on conclusory statements are insufficient." *Cohen*, 722 F. Supp. 2d at 429. Plaintiffs' claim that LX was "central to Barclays' business plan" (Opp. at 76) is also insufficient, because allegations that a misstatement relates to the "core" of a business do not constitute "strong circumstantial evidence of scienter." *Glaser* v. *The9, Ltd.*, 772 F. Supp. 2d 573, 595 (S.D.N.Y. 2011).[4]

## II.  PLAINTIFFS OFFER NO JUSTIFICATION FOR PARROTING UNADJUDICATED ALLEGATIONS WITHOUT INVESTIGATION.

The Opposition does not deny the fact (which is obvious from the face of the SAC) that plaintiffs did no independent investigation. Plaintiffs simply argue that their decision to copy and paste wholesale the allegations from the NYAG's unadjudicated complaint was "reasonable." (Opp. at 68.) But not one of plaintiffs' cases (Opp. at 67-68) holds that Rule 11's "reasonable inquiry" requirement is satisfied by such blind copying.[5] Plaintiffs' complaints contained obvious errors they could have avoided, such as the transcription error they reproduced identically from the NYAG complaint. (Barclays' Br. at 12 & n.10.) Plaintiffs' assertion that they investigated "publicly available documents" and conferred with "experts and consultants"

---

[4] The claim that LX was "core" is refuted by the documents on which plaintiffs rely, in any event. The NYAG complaint, on which plaintiffs rely for their allegations, alleged that LX was worth "between $37 and $50 million per year." Complaint ¶ 18, *People ex rel. Schneiderman* v. *Barclays Capital, Inc.*, Index No. 451391/2014, Dkt. # 1 (Sup. Ct., N.Y. Cnty. June 25, 2014). Assuming that is accurate, that is 0.1% of Barclays' annual revenue of £25-£32.3 billion ($42-$55 billion at exchange rates when the NYAG complaint was filed). (Ex. 1 to Supplemental Declaration of Jeffrey T. Scott, dated May 8, 2015 (Barclays PLC, 2013 Annual Report (Form 20-F) (Mar. 9, 2014)), at 215; Federal Reserve, Historical Rates for the UK Pound, available at http://www.federalreserve.gov/releases/h10/hist/dat00_uk.htm.

[5] For example, in *de la Fuente* v. *DCI Telecomms., Inc.*, the plaintiffs were sanctioned for frivolous legal arguments. 259 F. Supp. 2d 250, 273 (S.D.N.Y. 2003). The court decided not to *also* sanction plaintiffs for using SEC allegations—but only after noting that plaintiffs argued they had "conducted a comprehensive factual investigation" and "listed" specific "materials" they reviewed. *Id.* at 260. In *380544 Canada, Inc.* v. *Aspen Tech., Inc.*, the court held that confidential informant allegations based on another case must be taken as true, but there was no contention that the plaintiff had failed to investigate the allegations and the court did not mention Rule 11. 544 F. Supp. 2d 199, 224-25 (S.D.N.Y. 2008).

(Opp. at 67 n.56) is not supported by any factual allegations showing that plaintiffs attempted to verify the factual assertions copied from the NYAG. *Cf. Strougo*, 2015 WL 1883201, at \*6-7. The Court should not consider these "uncorroborated allegations," *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at \*17 n.17 (S.D.N.Y. Sept. 28, 2012), without which plaintiffs cannot even begin to "establish the particularized facts necessary to support [a] securities fraud claim," *Janbay* v. *Canadian Solar, Inc.*, 2012 WL 1080306, at \*5 (S.D.N.Y. Mar. 30, 2012).

Plaintiffs' allegations also should be stricken under Rule 12(f). Plaintiffs argue that the numerous courts in this District that have held that unadjudicated allegations are immaterial simply "err[ed]." (Opp. at 66-67 (citing *Lipsky* v. *Commonwealth United Corp.*, 551 F.2d 887, 893-94 (2d Cir. 1976).) But *Lipsky* recognizes that unadjudicated factual assertions are irrelevant because they are "not true adjudications of the underlying issues," and thus "have no possible bearing" at the pleading stage. 551 F.2d at 893-94. Although plaintiffs argue that some courts have not stricken every reference to other complaints (Opp. at 65-66), none of these cases allowed a plaintiff to copy another complaint whole cloth, as plaintiffs do here.[6]

## CONCLUSION

As this Court has already made clear that "Plaintiffs will not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss" (Order, Dkt. 14-cv-2811, ECF No. 246 (Nov. 4, 2014)), the SAC should be dismissed with prejudice.

---

[6] Plaintiffs' assertion that the NYAG complaint was "sustained in pertinent part" (Opp. at 65 n.52) is inaccurate. The state court held that the Martin Act is applicable to misrepresentations about trading venues like LX, but did not reach Barclays' contentions that the NYAG has failed to allege any material misstatements. *People ex rel. Schneiderman* v. *Barclays Capital Inc.*, 1 N.Y.S.3d 910, 914-17 (Sup. Ct., N.Y. Cnty. 2015). Indeed, the court noted that the NYAG cannot establish liability "on the basis of meaningless words, such as 'aggressive', 'predatory', and 'toxic,'" *id*. at 916 n.8, and indicated that some of the NYAG's alleged misstatements—such as the "liquidity landscape" that plaintiffs rely on here (*e.g.*, SAC ¶ 272)—are inactionable puffery and "not materially misleading." *Id*. at 913 & n.5.

| | |
|---|---|
| Dated: May 8, 2015<br>New York, New York | Respectfully submitted,<br><br>/s/ Jeffrey T. Scott<br>David H. Braff (braffd@sullcrom.com)<br>Jeffrey T. Scott (scottj@sullcrom.com)<br>Matthew A. Schwartz (schwartzmatthew@sullcrom.com)<br>Andrew H. Reynard (reynarda@sullcrom.com)<br>John J. Hughes, III (hughesj@sullcrom.com)<br>SULLIVAN & CROMWELL LLP<br>125 Broad Street<br>New York, New York  10004<br>Telephone:  (212) 558-4000<br>Facsimile:  (212) 558-3588<br><br>Brent J. McIntosh (mcintoshb@sullcrom.com)<br>SULLIVAN & CROMWELL LLP<br>1700 New York Avenue, N.W., Suite 700<br>Washington, D.C.  20006-5215<br>Telephone:  (202) 956-7500<br>Facsimile:  (202) 293-6330<br><br>*Attorneys for Defendants Barclays PLC and Barclays Capital Inc.* |