# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

July 1, 2015

Via ECF

Hon. Jesse M. Furman,
   United States District Court,
      Southern District of New York,
         40 Centre Street, Room 2202,
            New York, NY 10007.

         Re: *In re Barclays Liquidity Cross and High Frequency Trading Litig.*, No. 1:14-md-02589-JMF (This Document Relates to *City of Providence, Rhode Island, et al.* v. *BATS Global Markets, Inc., et al.*, No. 1:14-cv-2811-JMF (Consolidated))

Dear Judge Furman:

        On behalf of defendants Barclays PLC and Barclays Capital Inc. (together, "Barclays") in the above-referenced action, I write in response to plaintiffs' June 29, 2015 letter ("Letter"). Plaintiffs' Letter is procedurally improper, and also underscores that Barclays' motion to dismiss ("Motion") the second amended complaint ("SAC") should be granted.

        *First*, although veiled as a "clarif[ication]" of plaintiffs' counsel's answer to questions during the June 18, 2015 oral argument on Barclays' Motion, plaintiffs' Letter transparently is a substantive sur-reply filed without this Court's permission in violation of the Court's Individual Practices. *See* Rule 3.D ("Sur-reply memoranda will not be accepted without prior permission of the Court."). This Court should therefore decline to consider the Letter and should strike it from the record.

        *Second*, even if this Court considers the Letter, it simply highlights why plaintiffs' Section 10(b) claim against Barclays should be dismissed with prejudice. Conceding that they never directly relied on anything Barclays said or did with respect to any of their alleged trades on the Barclays LX platform, plaintiffs argue they can "rely on the fairness and integrity of the market" in general to invoke the fraud-on-the-market presumption of reliance. (Letter at 1.) But the fraud-on-the-market presumption applies in market manipulation cases only when a plaintiff has pleaded that the price of a particular security it purchased or sold was manipulated by the defendant. *See, e.g.*, *Fezzani* v. *Bear, Stearns & Co.*, 777 F.3d 566, 571-72 (2d Cir. 2015) (citing *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 107 (2d Cir. 2007)). Here, plaintiffs have never pleaded that any of the particular securities they supposedly purchased or sold on LX were manipulated by Barclays. (*See* 6/18/15 Tr. ("Tr.") at 47:16-48:3.) Moreover, plaintiffs' theory of reliance is plainly foreclosed by the Supreme Court's decision in *Stoneridge Inv. Partners, LLC* v. *Scientific-Atlantica, Inc.*, which expressly held that "[r]eliance by the plaintiff

The Honorable Jesse M. Furman                                                                        -2-

upon the *defendant's* deceptive acts is an essential element of [a] § 10(b) cause of action" for market manipulation. 552 U.S. 148, 159 (2008) (emphasis added). Indeed, plaintiffs have not pointed to a single "deceptive act" by *Barclays* upon which they relied (let alone any such act that affected the market price of any securities, as required by *Fezzani*, 777 F.3d at 572-73). (*See* Tr. at 43:12-45:2; 46:12-51:21.) At most, plaintiffs allege manipulation by high frequency traders using LX, but under the Supreme Court's decision in *Central Bank, N.A. v. First Interstate Bank, N.A.*, Barclays cannot be held liable for allegedly facilitating such acts. 511 U.S. 164, 191 (1994).[1] Accordingly, this Court should reject plaintiffs' novel theory for invoking the fraud-on-the-market presumption of reliance here. *Accord Stoneridge*, 552 U.S. at 167 ("This conclusion is consistent with the narrow dimensions we must give to a right of action Congress did not authorize when it first enacted [Section 10(b)] and did not expand when it revisited the law.").[2]

       Plaintiffs are also wrong that they need not identify specific trades that were allegedly manipulated in order to plead loss causation or damages. (Letter at 1-2.) Plaintiffs undoubtedly possess their own trading records, and were required by law to plead that they engaged in specific trades on LX that were manipulated by Barclays. *See Fezzani*, 777 F.3d at 573 (affirming dismissal where plaintiff "fail[ed] to meet the requirement" to plead "(i) particular securities (ii) manipulated by particular defendants (iii) causing the losses to the particular buyers"). But again, plaintiffs failed entirely to do so—they do not identify even one trade that was supposedly manipulated, let alone a trade manipulated by Barclays causing them loss. (*See* Tr. at 51:23-53:25.) And *In re NYSE Specialists Sec. Litig.* is of no help to plaintiffs, as there, the plaintiffs submitted a 148-page list of purchases and sales, including the security traded, the date of each trade, the numbers of shares traded, the price for each trade, and the amounts lost (or gained) on trades during the putative class period. (*See* Attachment to Consolidated Complaint, Docket No. 95 in Case No. 1:03-cv-08264-RWS.) That detailed list stands in stark contrast to the conclusory certifications submitted by plaintiffs in this case. (*See, e.g.*, Docket No. 169-2 in Case No. 1:14-cv-02811-JMF.) The court in *NYSE Specialists* accepted this detailed list because it contained "specific allegations concerning sample transactions" allegedly tainted by fraud. 405 F. Supp. 2d at 315. The SAC contains no such specific allegations. It is also telling that, on appeal in *NYSE Specialist*, the Second Circuit noted that the plaintiffs' "Rule 10b-5 claims do not appear to be of the nature where the fraud-on-the-

---

[1] Plaintiffs' citation of a footnote in *Fezzani* v. *Bear, Stearns & Co.*, 716 F.3d 18, 21 n.2 (2d Cir. 2014) for the proposition that, as stated during oral argument, this Court should create a new, never-before invoked "presumption of reliance on the integrity [that] markets operated fairly" (Tr. at 61:10-21), is inapt. That case held no such thing and, in fact, directly supports Barclays' argument that any alleged acts that purportedly aided or abetted high frequency traders cannot form the basis of a valid fraud claim against Barclays. *See Fezzani*, 716 F.3d at 24 ("[A]n allegation of acts facilitating or even indispensable to a fraud is not sufficient to state a claim if those acts were not the particular misrepresentations that deceived the investor.").

[2] Plaintiffs are wrong that *In re Blech Sec. Litig.*, 961 F. Supp. 569 (S.D.N.Y. 1997) supports their new theory of reliance. There, unlike here, the plaintiffs alleged that the defendant was "*itself* engaged in conduct aimed at artificially inflating or maintaining the price of the . . . securities" at issue. *Id.* at 583 (emphasis in original). Moreover, to the extent that *Blech* could possibly be read to stand for the proposition that the fraud-on-the-market presumption may be invoked simply by alleging reliance on the "integrity of the markets," after *Stoneridge*, it is no longer good law.

The Honorable Jesse M. Furman	-3-

market theory would apply." 503 F.3d 89, 103 (2d Cir. 2007) (Sotomayor, J.). The same is true here.

Finally, although plaintiffs claim that the SAC alleges that "Barclays PLC controlled Barclays Capital Inc. and thus is a proper party" (Letter at 1), in fact, the SAC only makes the uncontroversial allegation that Barclays Capital Inc. is a "subsidiary" of Barclays PLC. (SAC ¶¶ 34-35.) That allegation, without any contention that Barclays PLC had involvement in the conduct at issue, is plainly insufficient under *Iqbal* and *Twombly* (much less Rule 9(b) and the Private Securities Litigation Reform Act) to state a claim for relief against Barclays PLC.

Respectfully submitted,

*Jeffrey T. Scott/AHR*

Jeffrey T. Scott

cc:  All counsel of record
     (via ECF)