UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>BARCLAYS LIQUIDITY CROSS AND HIGH FREQUENCY TRADING LITIGATION<br><br>*This Document Relates To City of Providence, Rhode Island, et al.* v. *BATS Global Markets, Inc., et al.*, 1:14-cv-02811-JMF (S.D.N.Y.) (consolidated) | 14-MD-2589 (JMF) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO CERTIFY MAY 28, 2019 OPINION AND ORDER FOR
INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

**TABLE OF CONTENTS**

<u>**Page**</u>

INTRODUCTION ...................................................................................................................1

ARGUMENT ...........................................................................................................................2

    I.       The Court Should Certify The Order For Interlocutory Review .............................2

            A.      The Order Decides Three Controlling Questions Of Law ...........................2

            B.      There Is Substantial Ground For Difference Of Opinion As To Each Of The Three Controlling Questions Of Law .....................................6

                  1.      Whether Plaintiffs Have Article III Standing .................................6

                  2.      Whether Plaintiffs May Bring A Section 10(b) Claim Without Identifying The Purchase Or Sale Of Any Specific Security ................................................................................................8

                  3.      Whether The *Affiliated Ute* Presumption Applies In Market-Manipulation Cases............................................................10

            C.      An Immediate Appeal Would Materially Advance The Ultimate Termination Of This Litigation..................................................................11

    II.      This Court Should Stay All Proceedings Pending Appeal.....................................12

CONCLUSION......................................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re A2P SMS Antitrust Litig.*,
  2015 WL 876456 (S.D.N.Y. Mar. 2, 2015) ................................................................................10

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
  2006 WL 708303 (S.D.N.Y. Mar. 20, 2006) ..............................................................................3

*Affiliated Ute Citizens of Utah v. United States*,
  406 U.S. 128 (1972) ....................................................................................................................2

*Capitol Records, LLC v. Vimeo, LLC*,
  972 F. Supp. 2d 537 (S.D.N.Y. 2013) ......................................................................................12

*Chan v. City of New York*,
  803 F. Supp. 710 (S.D.N.Y. 1992), *aff'd*, 1 F.3d 96 (2d Cir. 1993) ......................................5, 7

*Chavez v. Occidental Chem. Corp.*,
  300 F. Supp. 3d 517 (S.D.N.Y. 2018) ..............................................................................3, 6, 12

*In re Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*,
  2019 WL 2289903 (N.D. Ill. May 29, 2019) ..............................................................................9

*Dep't of Econ. Dev. v. Arthur Andersen & Co.*,
  683 F. Supp. 1463 (S.D.N.Y. 1988) ............................................................................................6

*Desai v. Deutsche Bank Sec. Ltd.*,
  573 F.3d 931 (9th Cir. 2009) (per curiam) ..............................................................................10

*In re Duplan Corp.*,
  591 F.2d 139 (2d Cir. 1978) .....................................................................................................11

*In re Dynex Capital*,
  2006 WL 1517580 (S.D.N.Y. June 2, 2006) ............................................................................10

*Ferring B.V. v. Allergan, Inc.*,
  343 F. Supp. 3d 284 (S.D.N.Y. 2018) ........................................................................................3

*Flo & Eddie, Inc. v. Sirius XM Radio Inc.*,
  2015 WL 585641 (S.D.N.Y. Feb. 10, 2015) ............................................................................13

*Fraser v. Fiduciary Tr. Co., Int'l*,
  2005 WL 6328596 (S.D.N.Y. June 23, 2005) ............................................................................8

*In re Hawker Beechcraft, Inc.*,
  2013 WL 6673607 (S.D.N.Y. Dec. 18, 2013) .......................................................................3, 5

# TABLE OF AUTHORITIES
## (*continued*)

**Page(s)**

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009)..................................................................................6, 10

*John v. Whole Foods Market Group, Inc.*,
   858 F.3d 732 (2d Cir. 2017).................................................................................................6, 7

*Klinghoffer v. S.N.C. Achille Lauro*,
   921 F.2d 21 (2d Cir. 1990)...............................................................................................2, 3, 4

*In re Lloyd's Am. Tr. Fund Litig.*,
   1997 WL 458739 (S.D.N.Y. Aug. 12, 1997)............................................................................11

*New York City Health & Hosps. Corp. v. Blum*,
   678 F.2d 392 (2d Cir. 1982)......................................................................................................3

*Ontario Pub. Serv. Emps. Union Pension Tr. Fund v. Nortel Networks Corp.*,
   369 F.3d 27 (2d Cir. 2004).........................................................................................................8

*Rosa v. Senkowski*,
   1997 WL 724559 (S.D.N.Y. Nov. 19, 1997)............................................................................4

*In re Scotts EZ Seed Litig.*,
   2017 WL 6398627 (S.D.N.Y. Aug. 31, 2017).....................................................................3, 5

*SEC v. Credit Bancorp. Ltd.*,
   103 F. Supp. 2d 223 (S.D.N.Y. 2000)..................................................................................2, 11

*Stoneridge Investment Partners, LLC v. Sci.-Atlanta, Inc.*,
   552 U.S. 148 (2008)..................................................................................................................4

*Telectronics Proprietary, Ltd. v. Medtronic, Inc.*,
   690 F. Supp. 170 (S.D.N.Y. 1987)...........................................................................................11

*In re UBS Auction Rate Sec. Litig.*,
   2010 WL 2541166 (S.D.N.Y. June 10, 2010) .....................................................................6, 10

*United States ex rel. Wood v. Allergan, Inc.*,
   2017 WL 1843288 (S.D.N.Y. May 4, 2017) ............................................................4, 5, 10, 13

*In re WorldCom, Inc. Sec. Litig.*,
   2003 WL 22953644 (S.D.N.Y. Dec. 16, 2003) ......................................................................12

*Xuedan Wang v. Hearst Corp.*,
   2013 WL 3326650 (S.D.N.Y. June 27, 2013) ........................................................................11

**TABLE OF AUTHORITIES**
(*continued*)

**Page(s)**

**STATUTES**

15 U.S.C. § 78u-4(a) ............................................................................................................8, 10

28 U.S.C. § 1292(b) ...................................................................................................1, 2, 11, 12

## INTRODUCTION

Pursuant to 28 U.S.C. § 1292(b), Defendants BATS Global Markets, Inc., Chicago Stock Exchange, Inc., Direct Edge ECN, LLC, The Nasdaq Stock Market LLC, Nasdaq OMX BX, Inc., New York Stock Exchange, LLC, and NYSE Arca, Inc. ("Exchanges") respectfully request that the Court certify for interlocutory appeal this Court's May 28, 2019, Opinion and Order denying their renewed motion to dismiss the second consolidated amended complaint ("SCAC"). *See* Opinion & Order, D.E. 104 ("Order").

In these consolidated cases, Plaintiffs allege that the Exchanges have engaged in an unlawful manipulative scheme by offering proprietary data feeds, co-location services, and complex order types that are used by, among others, high-frequency trading firms. After this Court dismissed the SCAC on immunity grounds and for failure adequately to plead a market-manipulation claim, Original Decision, 126 F. Supp. 3d 342 (S.D.N.Y. 2015), the U.S. Court of Appeals for the Second Circuit vacated and remanded, *City of Providence v. BATS Global Mkts., Inc.*, 878 F.3d 36 (2d Cir. 2017). In the Order, the Court denied the Exchanges' renewed motion to dismiss.

The Order decided several dispositive legal questions on which there are substantial grounds for difference of opinion. Three questions are particularly suitable for immediate appeal:

(1) Whether Plaintiffs who "do not allege that they transacted in any particular security at any particular price, or how that price was supposedly affected by the alleged manipulation," Order at 9, have Article III standing to assert a manipulation claim under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act");

(2) Whether Plaintiffs may bring a Section 10(b) claim without identifying the purchase or sale of any specific security; and

(3) Whether the presumption of reliance set forth in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), applies to market-manipulation cases.

Because "early appellate review" of these significant questions "'might avoid protracted and expensive litigation'" in this case, *SEC v. Credit Bancorp. Ltd.*, 103 F. Supp. 2d 223, 226 (S.D.N.Y. 2000), the Court should certify the Order for interlocutory review and stay all proceedings pending resolution of that appeal.

## ARGUMENT

### I.     The Court Should Certify The Order For Interlocutory Review.

Section 1292(b) permits a district court to certify an order for immediate appellate review when the order "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion," and when [3] "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  The Court's Order meets these statutory requirements because it involves three controlling questions of law, as to each of which there is substantial room for disagreement—as the Order itself indicates. And if the Second Circuit were to address those questions and resolve them in the Exchanges' favor, it would end the litigation at an early stage, avoiding the need for disputes over class certification, extensive discovery, briefing of many of the same questions at summary judgment, and potentially a lengthy trial.  Certification of the Order for interlocutory appeal is therefore warranted.

#### A.     The Order Decides Three Controlling Questions Of Law.

The Order denying the Exchanges' renewed motion to dismiss implicates at least three "controlling question[s] of law."  28 U.S.C. § 1292(b).  In the Second Circuit, "it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action."  *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990).  "[T]he resolution

of an issue need not necessarily terminate an action," however, to fall within the "'controlling'" question of law prong.  *Id.*  A question is controlling if it could "at least 'materially affect the litigation's outcome,'" *Chavez v. Occidental Chem. Corp.*, 300 F. Supp. 3d 517, 538 (S.D.N.Y. 2018), "could significantly affect the conduct of the action," *In re Scotts EZ Seed Litig.*, 2017 WL 6398627, at *1 (S.D.N.Y. Aug. 31, 2017), or if its resolution "will have precedential value for a significant number of cases," *In re Hawker Beechcraft, Inc.*, 2013 WL 6673607, at *4 (S.D.N.Y. Dec. 18, 2013).  Each of the three questions listed above meets these criteria.

      1.  The "controlling question" standard is easily met when "the order involve[s] issues of . . . subject matter jurisdiction."  *Klinghoffer*, 921 F.2d at 24.  There can be no doubt that the Court's Order denying the Exchanges' motion to dismiss for lack of Article III standing involves a controlling question of law:  "Since a litigant cannot maintain his cause of action without demonstrating his standing, disposition of that issue often presents the type of controlling question suitable for interlocutory review."  *New York City Health & Hosps. Corp. v. Blum*, 678 F.2d 392, 396 (2d Cir. 1982); *see also Ferring B.V. v. Allergan, Inc.*, 343 F. Supp. 3d 284, 288-89 (S.D.N.Y. 2018) (certifying order involving question of standing); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2006 WL 708303, at *3 (S.D.N.Y. Mar. 20, 2006) (same).  Because reversal on Article III standing "would terminate the action," *Klinghoffer*, 921 F.2d at 24, this is a controlling question of law.

      2.  It is equally clear that Plaintiffs' ability to bring a Section 10(b) claim without identifying any particular securities that they purchased or sold is a controlling question of law.  The Exchanges argued that Plaintiffs' failure to point to any particular security precludes them from establishing statutory standing, meeting the basic requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and showing loss causation.  *See* Mem. of Law in

Supp. of Defs.' Renewed Mot. to Dismiss SCAC, D.E. 83, at 7-8, 11-12. Because an inadequate pleading with respect to any of those elements requires dismissal of the SCAC, reversal of the Order would terminate the action. *See Klinghoffer*, 921 F.2d at 24.

      3. Whether Plaintiffs may rely on the *Affiliated Ute* presumption to show reliance is also a controlling question of law because it is "likely" to "be dispositive." *Rosa v. Senkowski*, 1997 WL 724559, at *4 (S.D.N.Y. Nov. 19, 1997). As this Court recognized, reliance is an "'essential element'" of Plaintiffs' Section 10(b) claim. Order at 15 (quoting *Stoneridge Investment Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 159 (2008)). Absent an adequate allegation of reliance, Plaintiffs could not "survive a motion to dismiss." *Id.* at 16. And this Court's conclusion that Plaintiffs adequately alleged reliance depended on its holding that they were entitled to rely on the *Affiliated Ute* presumption. *Id.* If the Second Circuit disagrees and holds that the *Affiliated Ute* presumption does not apply in market-manipulation cases, reversal would almost certainly "result in [the] termination" of this action. *United States ex rel. Wood v. Allergan, Inc.*, 2017 WL 1843288, at *1 (S.D.N.Y. May 4, 2017) (Furman, J.).

      This question is controlling notwithstanding Plaintiffs' alternative argument that this Court should adopt "a novel 'integrity-of-the-market' presumption" of reliance. Order at 16. The Court previously rejected that invitation in dismissing Plaintiffs' claims against Barclays. *See* Original Decision, 126 F. Supp. 3d 342, 365-66 (S.D.N.Y. 2015). And there is no reason to suppose the Court would decide in the future to endorse a theory that "would entitle *all* Plaintiffs in market-manipulation cases to a presumption that they relied on a market free from manipulation," Order at 16, "a result that would be inconsistent with the Second Circuit's repeated reiteration of the reliance requirement in market-manipulation cases," Original Decision, 126 F. Supp. 3d at 366. Thus, if the Second Circuit holds that *Affiliated Ute* is not

4

available in market-manipulation cases, Plaintiffs' alternative reliance argument would not save their complaint. *See Chan v. City of New York*, 803 F. Supp. 710, 733 (S.D.N.Y. 1992) (certifying question whether plaintiffs had a cause of action under 42 U.S.C. § 1983 because the court "*may* be compelled to dismiss" plaintiffs' other claims in the event of a reversal and thus a "ruling by the Court of Appeals in favor of defendants *could* result in dismissal of this lawsuit"), *aff'd*, 1 F.3d 96 (2d Cir. 1993).

Moreover, a decision from the Second Circuit that Plaintiffs are not entitled to rely on the *Affiliated Ute* presumption "would, at a minimum, materially affect the scope of the action." *Allergan*, 2017 WL 1843288, at *1. Even if this Court were to adopt the "integrity-of-the-market" presumption on remand from an interlocutory appeal (despite having rejected it previously), the Exchanges would potentially need to pursue different evidence in discovery, and present different evidence at any trial, to rebut that theory than to rebut the *Affiliated Ute* presumption. Because reversal on the applicability of *Affiliated Ute* "could significantly affect the conduct of the action," it is a controlling question of law. *In re Scotts*, 2017 WL 6398627, at *1.[1]

Finally, whether *Affiliated Ute* applies in market-manipulation cases would "have precedential value for a significant number of cases." *In re Hawker Beechcraft*, 2013 WL 6673607, at *4. This question has arisen in other cases in this District multiple times within the

---

[1] Although the Order states (at 16) that "Plaintiffs argue that they plausibly allege[d] actual reliance," Plaintiffs did not include that argument in their opposition to the Exchanges' renewed motion to dismiss, *see* D.E. 86, at 11-14. Indeed, the only reliance that Plaintiffs pleaded as to the Exchanges was on "the integrity of the market in the securities listed and traded on the public exchanges." SCAC ¶ 301; *see also id.* ¶¶ 7, 78-83. In any event, the scope and conduct of this action will be dramatically different if Plaintiffs must prove actual reliance than if the Exchanges must rebut a presumption of reliance.

last few years. *See In re UBS Auction Rate Sec. Litig.*, 2010 WL 2541166 (S.D.N.Y. June 10, 2010); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 495-96 (S.D.N.Y. 2009). Yet, in the absence of a Second Circuit decision on the issue, district courts can "only . . . predict[ ]" how the Second Circuit would resolve it. *Chavez*, 300 F. Supp. 3d at 539. Because the resolution of that question now "may contribute to the determination, at an early stage, of a wide spectrum of cases," the applicability of *Affiliated Ute* presents a controlling question of law. *Dep't of Econ. Dev. v. Arthur Andersen & Co.*, 683 F. Supp. 1463, 1486 (S.D.N.Y. 1988).

> **B.   There Is Substantial Ground For Difference Of Opinion As To Each Of The Three Controlling Questions Of Law.**

"A substantial ground for difference of opinion exists when (1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Chavez*, 300 F. Supp. 3d at 538 (internal quotation marks omitted). Each of the three controlling questions of law identified above satisfies these standards.

### 1.   Whether Plaintiffs Have Article III Standing.

As this Court acknowledged, whether Plaintiffs adequately alleged injury in fact sufficient to establish constitutional standing to bring this suit presents a "close question." Order at 11. Plaintiffs did "not allege that they transacted in any particular security at any particular price, or how that price was supposedly affected by the alleged manipulation." *Id.* at 9. Having simply alleged that they bought and sold unidentified stock on unidentified markets at unidentified times and unidentified prices without alleging that they suffered losses attributable to specific transactions, it is equally plausible that Plaintiffs were not injured at all or perhaps even benefitted from the alleged manipulation.

In holding that Plaintiffs had plausibly alleged standing, this Court relied on *John v. Whole Foods Market Group, Inc.*, 858 F.3d 732 (2d Cir. 2017). But the factual allegations in

6

that case were much more specific than those of the SCAC here.  The plaintiff in *John* "routinely shopped" at Whole Foods and regularly purchased specific products (cheese and cupcakes) on a monthly basis.  *Id.* at 734.  And he relied on a press release issued by a government agency that had conducted an investigation and concluded that Whole Foods systematically overcharged for "89 percent" of its pre-packaged products during the period in which the plaintiff shopped at Whole Foods.  *Id.*  Moreover, Whole Foods "confirmed that cheese and cupcakes were among the pre-packaged products that the [press release] alleged were mislabeled with overstated weights."  *Id.* at 735.  Although the plaintiff did not identify a particular purchase of a mislabeled package, he adequately and plausibly alleged specific facts supporting his claim that the specific *types* of products he "regularly purchased . . . throughout the relevant period" were "systematically and routinely mislabeled and overpriced."  *Id.* at 737.  Plaintiffs here have not alleged any facts similar to those alleged (and in some instances conceded by the defendant) in *John*.  Thus, even if the sort of probability-based allegations of Article III standing *John* permitted could apply here, Plaintiffs have not alleged any facts sufficient to establish standing under *John*.

Although this Court concluded that the Second Circuit's holding in *John* extends to this suit, "the conclusion[ ] reached by the Court [was] by no means the only reasonable conclusion[ ] an impartial arbiter could reach."  *Chan*, 803 F. Supp. at 733.  Having acknowledged that the Exchanges' contrary argument is "not unreasonabl[e]," Order at 10, and that the question of Article III standing is "close," *see id.* at 9, 11, this Court should also conclude that there is substantial room for disagreement about whether the Court's conclusion was correct.

7

## 2. Whether Plaintiffs May Bring A Section 10(b) Claim Without Identifying The Purchase Or Sale Of Any Specific Security.

Plaintiffs failed to allege that they purchased or sold any particular security that was the subject of any alleged manipulation, which, the Exchanges have argued, precludes Plaintiffs from establishing statutory standing, *see* Mem. at 7-8, plausibly alleging loss causation, *id.* at 11-12, and demonstrating compliance with the PSLRA's clear requirement that a certification filed with the complaint "set[ ] forth *all* of the transactions of the plaintiff in the security that is the subject of the complaint." 15 U.S.C. § 78u-4(a)(2)(A)(iv) (emphasis added). Although the Court concluded that it was sufficient for Plaintiffs to allege that they purchased or sold *unspecified* securities, *see* Order at 15, there is substantial ground for disagreement on this question.

*First*, in addressing statutory standing, the Court stated that "[s]ubsequent case law in the Second Circuit has led to some uncertainty about the precise limits of Section 10(b)'s cause of action." Order at 15. The Exchanges respectfully submit that, in fact, this Court's conclusion with respect to statutory standing contravenes binding Second Circuit precedent, which "limits the class of plaintiffs to those who have at least dealt in the security *to which the . . . representation, or omission relates*." *Ontario Pub. Serv. Emps. Union Pension Tr. Fund v. Nortel Networks Corp.*, 369 F.3d 27, 32 (2d Cir. 2004) (emphasis added). At a minimum, uncertainty in the Second Circuit's case law would demonstrate that there is room for substantial disagreement about the question. *See Fraser v. Fiduciary Tr. Co., Int'l*, 2005 WL 6328596, at *4 (S.D.N.Y. June 23, 2005) (purchaser-seller requirement was not met where the plaintiff "fail[ed] to allege the date(s) on which he acquired stock, the number of shares acquired, or the consideration given (if any)" as well as whether "he ever sold this stock").

8

*Second*, the Exchanges' argument that Plaintiffs could not show loss causation when they failed to "identif[y] *any* price they paid for *any* particular security traded on *any* exchange at *any* particular time," Mem. 11, was endorsed by the United States District Court for the Northern District of Illinois the day after this Court issued its Order. *See In re Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*, 2019 WL 2289903, at *7 (N.D. Ill. May 29, 2019) (the "VIX litigation"). There, the plaintiffs brought a manipulation claim against a securities exchange under Section 10(b) of the Exchange Act. *Id.* at *4. The court concluded that the complaint failed to allege loss causation because the plaintiffs "d[id] not identify *specific transactions* that resulted in a loss from the [alleged] manipulation." *Id.* at *7 (emphasis added). The court acknowledged that "[g]iven the nature of a manipulation claim, plaintiffs are less likely to have access to certain facts necessary to plausibly state a claim, leading some courts to relax pleadings standards." *Id.* But it refused to depart from the requirement that the plaintiffs "must identify both sides of a transaction to show that they suffered a loss." *Id.* As the court emphasized, the "plaintiffs have access to information about their own trades. They should be able to identify transactions where they lost money, and so in this context, relaxing the pleading standard is not necessary." *Id.*

Unlike Plaintiffs in the current case, the plaintiffs' certifications in the VIX litigation at least identified specific transactions in which they engaged by listing, for each transaction, "the security, whether they bought or sold, the date, the quantity, and the price." *In re Chicago Bd. Options Exch.*, 2019 WL 2289903, at *7. If the certifications in the VIX litigation were not sufficient because the plaintiffs failed to identify which of those transactions resulted in a loss, there is certainly room for disagreement about whether a complete failure to identify *any* transactions is sufficient to plead loss causation.

9

*Finally*, the plain text of the PSLRA requires a securities class action plaintiff to include a "sworn certification" listing "*all* of the transactions of the plaintiff in the security that is the subject of the complaint." 15 U.S.C. § 78u-4(a)(2)(A)(iv) (emphasis added). This Court did not address how that requirement could be satisfied by a certificate that fails to list *any* particular stock, the exchange on which that particular stock was purchased or sold, the date of the purchase or sale, the amount purchased or sold, or the price. *See* D.E. 169-2 in 1:14-cv-02811-JMF, at 2, 4, 7, 10, 13, 16.

### 3. Whether The *Affiliated Ute* Presumption Applies In Market-Manipulation Cases.

There is conflicting authority on the question whether the *Affiliated Ute* presumption is applicable to a market-manipulation claim. As this Court acknowledged, "the Ninth Circuit has held that *Affiliated Ute* does not apply to market-manipulation cases." Order at 16 (citing *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 940-41 (9th Cir. 2009) (per curiam)). While this Court and other judges in this District have disagreed, *see id.* (citing *In re UBS Auction Rate*, 2010 WL 2541166; *In re Initial Pub. Offering*, 671 F. Supp. 2d at 495-96), the Ninth Circuit's contrary conclusion shows that a "substantial ground" for differing opinions exists, *see Allergan*, 2017 WL 1843288, at *1 ("[I]n light of the divide among federal courts . . . there is plainly a 'substantial ground for difference of opinion' on the issue"); *In re A2P SMS Antitrust Litig.*, 2015 WL 876456, at *3 (S.D.N.Y. Mar. 2, 2015) (even though the court "remain[ed] convinced" its decision was correct, decisions from federal courts of appeals that had "reach[ed] a conclusion contrary to this Court's . . . create[d] a substantial ground for dispute"); *In re Dynex Capital*, 2006 WL 1517580, at *2 (S.D.N.Y. June 2, 2006) (substantial ground for difference of opinion existed where "other courts have reached an opposite conclusion"). The question of *Affiliated Ute*'s application to market-manipulation cases not only "clearly provide[s] fodder for

10

different opinions"—it has in fact "spawned them." *Xuedan Wang v. Hearst Corp.*, 2013 WL 3326650, at *2 (S.D.N.Y. June 27, 2013).

The Second Circuit has not addressed whether the *Affiliated Ute* presumption is available in a market-manipulation case. Because courts in this Circuit would benefit from a settled answer to that important question, interlocutory review is warranted. Indeed, given Plaintiffs' allegations that the actual manipulative acts here were carried out by nonparties using products provided by the Exchanges, understanding whether, how, and when the *Affiliated Ute* presumption applies to market-manipulation claims is especially important in this case.

### C.  An Immediate Appeal Would Materially Advance The Ultimate Termination Of This Litigation.

Certification is warranted where "early appellate review 'might avoid protracted and expensive litigation.'" *SEC v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 226 (S.D.N.Y. 2000) (quoting *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 690 F. Supp. 170, 172 (S.D.N.Y. 1987)). "[I]n practice," "the question of whether there is a controlling issue of law" and "the question of whether certification would materially advance the ultimate termination of the litigation" "are closely connected." *Id.* "[T]he critical requirement is that it (an interlocutory appeal) have the potential for substantially accelerating the disposition of the litigation." *In re Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir. 1978). That standard is satisfied here.

An interlocutory appeal on the issues discussed above would "materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), because "reversal could result in dismissal of the action." *In re Lloyd's Am. Tr. Fund Litig.*, 1997 WL 458739, at *7 (S.D.N.Y. Aug. 12, 1997). If the Second Circuit concludes that Plaintiffs lack Article III standing or cannot bring a Section 10(b) claim without identifying any particular securities purchased or sold, then this case would be "dismissed immediately and entirely." *Id.* The case is also very likely to be

11

dismissed if the Second Circuit rules that Plaintiffs are not entitled to rely on the *Affiliated Ute* presumption. A "definitive answer" on these contested questions of law thus "may save the Court and parties vast amounts of expense and time." *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 554 (S.D.N.Y. 2013).

"[O]ne of the chief concerns of Section 1292 is the efficiency of the federal court system, and efficiency is of particular concern in large complex cases." *In re WorldCom, Inc. Sec. Litig.*, 2003 WL 22953644, at *4 (S.D.N.Y. Dec. 16, 2003). This case is extraordinarily complex, involving four actions filed against seven securities exchanges, alleging conduct involving unidentified nonparty high-frequency trading firms and governed by an intricate and detailed federal regulatory regime. The SCAC covers conduct stretching back to April 18, 2009, and purports to assert claims "on behalf of all public investors who purchased and/or sold shares of stock listed on a U.S.-based equity exchange . . . during the Class Period." Compl. ¶¶ 1, 36. "If [this action] proceeds forward," through class certification, discovery, summary-judgment briefing, and trial, "it will assuredly call heavily upon the resources, money, time, and commitment of all parties" and the Court. *Chavez*, 300 F. Supp. 3d at 539. "Before the Court sets these processes in motion, it is sensible for the Second Circuit" to have the opportunity to resolve the controlling questions of law presented by the Order, "as a resolution in defendants' favor of th[ese] question[s] would moot the need for further litigation." *Id.*

## II. This Court Should Stay All Proceedings Pending Appeal.

If this Court certifies the Order for interlocutory review, it should stay all proceedings in this case pending appeal. Section 1292(b) provides that "application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C. § 1292(b). "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its

12

docket with economy of time and effort for itself, for counsel, and for litigants." *Flo & Eddie, Inc. v. Sirius XM Radio Inc.*, 2015 WL 585641, at *4 (S.D.N.Y. Feb. 10, 2015) (certifying order for review under 28 U.S.C. § 1292(b) and granting a stay of further proceedings "pending interlocutory appeal").

Here, a stay of proceedings pending Section 1292(b) certification and any subsequent appeal would be appropriate because a resolution of the interlocutory appeal in the Exchanges' favor would, as noted, likely end the litigation. As this Court has previously explained, when an order is certified under Section 1292(b), there is "little reason to proceed until the Second Circuit resolves whether to accept the case for interlocutory review (and, if it does, until the Circuit rules on appeal)." *Allergan*, 2017 WL 1843288, at *2. Moving forward with class certification, discovery, additional rounds of dispositive briefing, and potentially trying this case on the merits while the Second Circuit decides what could be case-ending questions of law risks wasting the resources of the Court, the parties, and third parties. *See Flo & Eddie*, 2015 WL 585641, at *4 ("Whether or not the Court's judgment on appeal is affirmed," granting a stay "rather than proceeding with" discovery and motions "is very likely to save time and money for the litigants."). In contrast, a stay "would not impose substantial hardship" on Plaintiffs, and any incidental delays are more than justified by allowing significant threshold questions of law to be decided before moving forward. *Id.* Accordingly, this Court should stay proceedings pending resolution of an interlocutory appeal.

## CONCLUSION

This Court should certify its May 28, 2019 Opinion and Order for interlocutory appeal under 28 U.S.C. § 1292(b) and stay all proceedings pending that appeal.

June 17, 2019

By: /s/ Douglas W. Henkin (by permission)
Douglas W. Henkin
Justine N. Margolis
Kiran Patel
DENTONS US LLP
1221 Avenue of the Americas
New York, NY  10020
Telephone: (212) 768-6832
Facsimile: (212) 768-6800

*Counsel for New York Stock Exchange LLC, NYSE Arca Inc., and Chicago Stock Exchange, Inc.*


By: /s/ Paul E. Greenwalt III (by permission)
Paul E. Greenwalt III
SCHIFF HARDIN LLP
233 South Wacker Drive, Suite 6600
Chicago, IL  60606
Telephone: (312) 258-5702
Facsimile: (312) 258-5600

*Counsel for BATS Global Markets, Inc. (n/k/a Cboe Bats, LLC) and Direct Edge ECN, LLC*

Respectfully submitted,

By: /s/ Robert F. Serio
Robert F. Serio
Justine Goeke
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166
Telephone: (212) 351-3917
Facsimile: (212) 351-5246

Douglas R. Cox
Amir C. Tayrani
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone: (202) 955-8500
Facsimile: (202) 530-9539

*Counsel for The Nasdaq Stock Market LLC and Nasdaq OMX BX, Inc.*