UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
IN RE                                                                   :
                                                                        :    14-MD-2589 (JMF)
BARCLAYS LIQUIDITY CROSS AND HIGH                                       :
FREQUENCY TRADING LITIGATION                                            :    MEMORANDUM OPINION
                                                                        :           AND ORDER
*This Document Relates to All Remaining Open Actions*                   :
                                                                        :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

In these consolidated cases, familiarity with which is presumed, Plaintiffs — a collection of investment funds — bring claims against seven stock exchanges (the "Exchanges") under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). In brief, Plaintiffs allege that the Exchanges sold certain services to high-frequency trading firms, which then used those services to engage in allegedly manipulative trading schemes at Plaintiffs' expense. The Court dismissed Plaintiffs' claims in 2015, holding that the Exchanges were protected by absolute immunity and that, in any event, Plaintiffs had failed to plead any manipulative acts or "primary" violations of Section 10(b) by the Exchanges. *See In re Barclays Liquidity Cross & High Frequency Trading Litig.* ("*In re Barclays LX I*"), 126 F. Supp. 3d 342, 355-62 (S.D.N.Y. 2015). The Court of Appeals disagreed on both counts and remanded Plaintiffs' Section 10(b) claims for further proceedings. *See City of Providence, R.I. v. Bats Glob. Markets, Inc.*, 878 F.3d 36 (2d Cir. 2017). The Exchanges then renewed their motion to dismiss, pressing arguments that the Court of Appeals had left open. In an Opinion and Order entered May 28, 2019, the Court denied that motion. *See In re Barclays Liquidity Cross & High Frequency Trading Litig.* ("*In re Barclays LX II*"), No. 14-MD-2589 (JMF), 2019 WL 2269929 (S.D.N.Y. May 28, 2019). The Exchanges now move, pursuant to 28 U.S.C. § 1292(b), for certification of an interlocutory

appeal, focusing on three of the Court's holdings, to wit: that (1) Plaintiffs adequately allege Article III standing; (2) Plaintiffs are entitled to the *Affiliated Ute* presumption of reliance; and (3) Plaintiffs' claims are not precluded on various grounds by their failure to allege the purchase or sale of specific securities. *See* Docket No. 114 ("Exchanges Mem.").[1] For the reasons that follow, Defendants' motion is denied.

It is well established that Section 1292(b) gives the district courts "first line discretion to allow interlocutory appeals." *Swint v. Chambers County Comm'n*, 514 U.S. 35, 47 (1995). A district court may certify an order for such an appeal if the moving party shows that the order (1) "involves a controlling question of law" about which (2) "there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, No. 12-CV-8852 (JMF), 2014 WL 1881075 (S.D.N.Y. May 9, 2014). The party seeking certification "bears the burden of demonstrating that all three prongs of [Section] 1292(b) are met." *In re Motors Liquidation Co.*, No. 17-CV-8712 (AJN), 2018 WL 4284286, at *3 (S.D.N.Y. Sept. 7, 2018). "When a ruling satisfies these criteria and involves a new legal question or is of special consequence, then the district court should not hesitate to certify an interlocutory appeal." *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) (internal quotation marks omitted). As the Second Circuit has "repeatedly cautioned, however, use of this certification procedure should be strictly limited because only exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) (per curiam) (alterations and internal quotation marks omitted).

---

[1] Unless otherwise indicated, all docket citations refer to 14-MD-2589.

2

Applying those standards here, the Court concludes that certification is not warranted on any of the three grounds urged by the Exchanges. The Exchanges' first proposed ground for certification — namely, the Court's conclusion that Plaintiffs adequately allege Article III standing — may well present a controlling question of law. *See, e.g.*, *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) ("Although the resolution of an issue need not necessarily terminate an action in order to be 'controlling,' . . . a question of law is 'controlling' if reversal of the district court's order would terminate the action." (citations omitted)). In light of the Second Circuit's decision in *John v. Whole Foods Market Group, Inc.*, 858 F.3d 732 (2d Cir. 2017), however, there is not "substantial ground for difference of opinion" about the question. As the Court explained in its May 28, 2019 Opinion, under *John* "it is possible for a plaintiff to satisfy [Article III's] injury-in-fact requirement with plausible allegations of a likelihood of past injury" — in that case, "by pleading both the frequency of the plaintiff's purchases and the systematic overcharging" alleged to have occurred during the period when those purchases were made. *In re Barclays LX II*, 2019 WL 2269929, at *6 (alterations, citations, and internal quotation marks omitted). The Court held that Plaintiffs satisfied that standard here by plausibly alleging "both (1) that they were sufficiently frequent purchasers on the Exchanges and (2) that they were systematically victimized by distorted prices." *Id.* The Exchanges correctly point out that the Court described the issue as a "close question." Exchanges Mem. 6-7; *see In re Barclays LX II*, 2019 WL 2269929, at *6. But in light of *John*, it is — at least in this Circuit — a close question with a clear answer. *See, e.g.*, *In re Flor*, 79 F.3d at 284 (noting that "the mere presence of a disputed issue," even "a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion. Rather, it is the duty of the district judge to analyze the strength of the arguments in opposition to

3

the challenged ruling when deciding whether the issue for appeal is truly one on which there is a *substantial* ground for dispute." (citations, alterations, and internal quotation marks omitted)).

The Exchanges maintain that the plaintiff in *John* had better reasons for believing himself to have been overcharged. Exchanges Mem. 7. But Plaintiffs do not need to have the *same* basis for their allegations as the plaintiff had in *John*; they need only have, as they do, an adequate basis to "generally allege facts that, accepted as true," constitute "plausible allegations of a likelihood of past injury." *In re Barclays LX II*, 2019 WL 2269929, at *6 (quoting *John*, 858 F.3d at 737). The Exchanges' reliance on *In re Apple Processor Litigation*, 366 F. Supp. 3d 1103 (N.D. Cal. 2019), is similarly unpersuasive. *See* Docket No. 124 ("Reply") at 6-7. There, the court distinguished *John* because the plaintiffs could allege facts only to support an inference that "some users, not most and certainly not all," would experience harm attributable to the defendant's conduct, 366 F. Supp. 3d at 1109. Here, by contrast, the Court concluded that Plaintiffs' allegations, taken as true, establish that they were "sufficiently frequent purchasers" to have been "systematically victimized by distorted prices," thus satisfying the *John* standard. *In re Barclays LX II*, 2019 WL 2269929, at *6. And in any event, "[d]isagreement among courts outside the circuit does not alone support the certification of an interlocutory appeal." *United States ex rel. Colucci v. Beth Israel Med. Ctr.*, No. 06-CV-5033, 2010 WL 11586688, at *1 (S.D.N.Y. June 25, 2010) (Chin, J.); *accord Adkins v. Stanley*, No. 12-CV-7667 (HB), 2013 WL 6585389, at *2 (S.D.N.Y. Dec. 13, 2013); *Colon ex rel. Molina v. BIC USA, Inc.*, No. 00-CV-3666 (SAS), 2001 WL 88230, at *2 (S.D.N.Y. Feb. 1, 2001). Accordingly, the Court concludes that Defendants fail to show that there is "substantial ground for dispute" with respect to the Court's holding that Plaintiffs adequately allege Article III standing at this stage.

Next, the Exchanges argue that Plaintiffs' failure to allege "that they purchased or sold any particular security" gives rise to a "substantial ground for difference of opinion" as to

4

whether they adequately allege statutory "standing" and loss causation and whether they have complied with the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 78u-4 *et seq.* Exchanges Mem. 8-10. With respect to statutory "standing," the Exchanges invoke the Court's reference to "uncertainty about the precise limits of Section 10(b)'s cause of action," Exchanges Mem. 8, ignoring the Court's conclusion that, "[d]espite those ripples in the case law, . . . the scope of the Section 10(b) private action has not substantially changed" since 1952, *In re Barclays LX II*, 2019 WL 2269929, at *7. Aside from that, the Exchanges rely on a single case from this District holding that a plaintiff who had failed to allege the specifics the Exchanges demand had "not sufficiently pled a purchase or sale of securities with the particularity required by [Rule] 9(b)" of the Federal Rules of Civil Procedure. *Fraser v. Fiduciary Tr. Co., Int'l*, No. 04-CV-6958 (RMB), 2005 WL 6328596, at *4 (S.D.N.Y. June 23, 2005); *see* Exchanges Mem. 8. But *Fraser* involved misrepresentations, *see* 2005 WL 6328596, at *1, whereas this case primarily involves omissions, *see In re Barclays LX II*, 2019 WL 2269929, at *8. Under binding — and more recent — Second Circuit precedent, because an omission claim "can involve facts solely within the defendant's knowledge, at the early stages of litigation, the plaintiff need not plead manipulation to the same degree of specificity as a plain misrepresentation claim." *Id.* at *10 (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 101-02 (2d Cir. 2007)) (alterations and internal quotation marks omitted). The Court therefore held that Plaintiffs had pleaded their claims with sufficient particularity. The Exchanges offer no reason, let alone a strong one, to conclude there is substantial ground for difference of opinion on that issue.

Along similar lines, the Exchanges also invoke a recent case from the Northern District of Illinois holding that the plaintiffs' lack of specificity regarding what specific transactions caused them to lose money constituted a failure to allege loss causation. Exchanges Mem. 9; *see In re Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*, No. 18-CV-4171,

5

2019 WL 2289903, at *7 (N.D. Ill. May 29, 2019).  But that court *explicitly* parted ways with the Second Circuit precedent that "relax[ed] pleadings standards" for manipulation claims like this one.  *Id.* at *7.  If anything, therefore, that case confirms that there is no "substantial ground for difference of opinion" in *this* Circuit on the issue.  Finally, the Exchanges argue that Plaintiffs' failure to allege specific purchases and sales of securities fails to satisfy the PSLRA's requirement that a plaintiff's sworn certification "set[] forth all of the transactions of the plaintiff in the security that is the subject of the complaint."  15 U.S.C. § 78u-4(a)(2)(A)(iv); Exchanges Mem. 10.  To the extent that the Exchanges mean to argue that Section 78u-4(a)(2)(A)(iv) is an independent basis for dismissal of Plaintiffs' claims, they did not raise that argument in their renewed motion to dismiss.  Instead, as here, they cited the statute in support of their general argument that Plaintiffs lack statutory "standing."  *See* Docket No. 83, at 7.  Nor did the Court address that provision of the PSLRA in its Opinion, having concluded that Second Circuit precedent clearly answered the statutory "standing" question in Plaintiffs' favor.  *See In re Barclays LX II*, 2019 WL 2269929, at *7; *see also* 14-CV-2811, Docket No. 169-2.  The Court will not exercise its discretion to certify its Order for interlocutory appeal on grounds that Defendants failed to properly raise in their earlier motion.  And, for the reasons discussed above, Section 78u-4(a)(2)(A)(iv) does not establish a "substantial ground for difference of opinion" with respect to the Court's earlier conclusions about statutory "standing" and loss causation.

That leaves the final issue that the Exchanges proffer as a basis for certification under Section 1292(b): the availability of the *Affiliated Ute* presumption of reliance in market-manipulation cases.  Exchanges Mem. 10-11.  In arguing that there is a substantial ground for difference of opinion on that question, the Exchanges hang their hat on *Desai v. Deutsche Bank Securities Ltd.*, 573 F.3d 931 (9th Cir. 2009) (per curiam).  Of course, as an out-of-circuit case, *Desai* alone does not establish that there is a "substantial ground for difference of opinion."  *See,*

6

*e.g.*, *United States ex rel. Colucci*, 2010 WL 11586688, at *1. And *Desai* holds even less persuasive weight here than it might otherwise: In reaching a contrary conclusion, this Court drew on Second Circuit case law that has "eschew[ed] a rigid distinction between 'manipulation' claims, on the one hand, and 'misrepresentation' and 'nondisclosure' claims, on the other," attending instead to the practical rationale for deploying the *Affiliated Ute* presumption in the first place. *See In re Barclays LX II*, 2019 WL 2269929, at *8. Following similar principles, courts in this District have coalesced around a rule: The *Affiliated Ute* presumption applies in market manipulation cases that primarily involve omissions, *see id.* (citing *In re UBS Auction Rate Secs. Litig.*, No. 08-CV-2967 (LMM), 2010 WL 2541166 (S.D.N.Y. June 10, 2010) and *In re Initial Pub. Offering Secs. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009)), but not in those that don't, *see In re Merrill Lynch Auction Rate Secs. Litig.*, 704 F. Supp. 2d 378, 398 (S.D.N.Y. 2010), *aff'd sub nom. Wilson v. Merrill Lynch & Co.*, 671 F.3d 120 (2d Cir. 2011). That is not to say that the rule is obviously right (and *Desai* obviously wrong), or that the issue is easy — only that the Exchanges fail to demonstrate that sufficient ground for difference of opinion exists to warrant an exceptional interlocutory appeal. And in any event, "[t]he mere fact that an issue is difficult and contested is not sufficient to show a substantial ground for difference of opinion"; Section 1292(b) "was not intended as a vehicle to provide early review of difficult rulings in hard cases." *Transp. Workers Union of Am., Local 100, AFL-CIO v. N.Y.C. Transit Auth.*, 358 F. Supp. 2d 347, 354 (S.D.N.Y. 2005) (internal quotation marks omitted).

In short, the Exchanges do not satisfy their burden to show a substantial ground for difference of opinion on the issues they raise — at least not one substantial enough to warrant the "strictly limited" Section 1292(b) certification procedure. *In re Flor*, 79 F.3d at 284. Accordingly, their motion to certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is DENIED (as is their related motion to stay proceedings pending such an appeal). The Court

recognizes that this decision will not have come without cost in the event that the Second Circuit, following entry of a final judgment, disagrees with any of this Court's rulings. But that is the price that must be paid in light of the final judgment rule, which serves a variety of other salutary purposes — and which, in light of those purposes, is standard operating procedure in the federal courts. *See New York v. U.S. Dep't of Commerce*, 345 F. Supp. 3d 444, 448 (S.D.N.Y. 2018). In any event, although one purpose of certification under Section 1292(b) is to "avoid protracted litigation," *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 866 (2d Cir. 1996), a court's assessment that that purpose calls for certification "must be carefully made, to avoid too many appeals by too many disappointed litigants who could argue that a different ruling by the district judge would end a litigation and save much expense," *In re World Trade Ctr. Disaster Site Litig.*, 469 F. Supp. 2d 134, 144 (S.D.N.Y. 2007). Here, a careful assessment leads the Court to conclude that Defendants' motion should be denied.

The Clerk of Court is directed to terminate Docket No. 113 in 14-MD-2589 and Docket No. 320 in 14-CV-2811. All dates and deadlines — including the Exchanges' July 25, 2019 deadline to file their answers, the August 15, 2019 initial pretrial conference, and the parties' August 8, 2019 deadline to file a joint letter and proposed case management plan in advance of that conference — remain in effect. *See* Docket Nos. 117, 123.

SO ORDERED.

Dated: July 16, 2019
New York, New York

JESSE M. FURMAN
United States District Judge