UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
   :
CITY OF PROVIDENCE, RHODE ISLAND,   :
   :
                      Plaintiff,   :
   :      14-CV-2811 (JMF)
v.   :
   :       ORDER
BATS GLOBAL MARKETS et al.,   :
   :
                      Defendants.   :
   :
---------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        The Court received the attached letter from Brett W. Redfearn, Director of the SEC's Division of Trading and Markets, in response to its letter of January 29, 2020. *See* ECF No. 396. In light of Mr. Redfearn's letter, the Court concludes that the language proposed by Defendants for the ESI stipulation is unnecessary and inadvisable. Accordingly, the Court will sign a copy of the stipulation with Plaintiffs' preferred language at pages 17-18. *See* ECF Nos. 384-7, 386-1. No later than **February 7, 2020**, one or both sides shall submit a clean copy of the stipulation consistent with the foregoing, in PDF format (on ECF) and in Microsoft Word format by e-mail to the Chambers e-mail address, to be signed and docketed by the Court.

        There are two other discovery disputes pending in this matter. First, by letter dated January 23, 2020, Plaintiffs sought to compel production from NASDAQ Stock Market LLC and NASDAQ BX, Inc. of certain documents and information (collectively, the "Brogaard Data"). *See* ECF No. 390. The Court expresses no view on whether Plaintiffs' request would have been timely absent their September 6, 2019 document requests. But in light of the earlier requests, and substantially for the other reasons set forth in Plaintiffs' letter, Plaintiffs' motion to compel

production of the Brogaard Data is GRANTED.

Second, by letter dated January 21, 2020, Plaintiffs sought a conference regarding the timing and scope of certain Rule 30(b)(6) depositions. *See* ECF No. 388. To the extent that Defendants take the categorical position that 30(b)(6) depositions cannot be conducted until Defendants produce all requested documents and data to Plaintiffs, the Court disagrees. *See, e.g.*, Fed. R. Civ. P. 26(d)(3)(A) ("Unless the parties stipulate or the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice . . . methods of discovery may be used in any sequence . . . ."). That said, the Court agrees with Defendants that depositions on some of the noticed topics — namely, those that depend on particular documents and data — should be deferred until after the relevant documents and data are produced. In the Court's view, however, some of the noticed topics are more general in nature and could proceed even before document and data production. In light of the foregoing guidance and the fact that the Court has now resolved the parties' ESI protocol dispute, the parties should confer further in an effort to reach agreement on which depositions can proceed now (and when) — mindful that, absent good cause, Plaintiffs would not be allowed to re-depose any 30(b)(6) witness later in the litigation. In the event that the parties cannot reach agreement, either side may seek appropriate relief by letter motion in accordance with the Court's Individual Rules and Practices.

Finally, Defendants are reminded that, pursuant to the Court's Individual Rules and Practices, all letters (indeed, all filings) should be filed in a text-searchable format.

The Clerk of Court is directed to terminate ECF Nos. 388 and 390.

SO ORDERED.

Dated: February 6, 2020
New York, New York

JESSE M. FURMAN
United States District Judge



UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, DC 20549

DIVISION OF
TRADING AND MARKETS

February 5, 2020

Via Email

The Honorable Jesse M. Furman
United States District Court
 for the Southern District of New York
500 Pearl Street
New York, New York  10007
Furman_NYSDChambers@nysd.uscourts.gov

Dear Judge Furman:

I write in response to your letter dated January 29, 2020, in which you request the views of the staff of the U.S. Securities and Exchange Commission ("Commission") on certain matters that are the subject of dispute between the parties in *City of Providence, Rhode Island v. BATS Global Markets, Inc.*, 14-CV-2811 (JMF).  Specifically, you ask about the applicability of Regulation Systems Compliance and Integrity ("Regulation SCI")[1] and certain related security standards to the production and storage of order audit trail information generated by individual national securities exchanges.

For the reasons discussed below, it is the view of the Commission's Division of Trading and Markets ("Division") that Regulation SCI does not apply to information that is extracted in an authorized manner from an exchange's order audit trail or other market regulation system and produced to plaintiffs in litigation.[2]  I note, however, that individual exchange order audit trail data includes sensitive, non-public information, such as the identity of the exchange member placing the order.  While Commission regulations do not restrict the production of such information, I believe it would be appropriate for the Court and the parties to subject this information to the same security and other protocols that are typically used for other kinds of sensitive, non-public information produced in litigation.

The Commission adopted Regulation SCI in November 2014 to strengthen the technology infrastructure of the U.S. securities markets.[3]  Regulation SCI applies to "SCI entities,"[4] which

---

[1]   17 CFR 242.1000-1007.

[2]   The views expressed in this letter are the views of the staff of the Division of Trading and Markets.  These views do not necessarily reflect those of the Commission, any individual commissioner, or any other members of the staff.

[3]   See Securities Exchange Act Release No. 73639 (November 19, 2014), 79 FR 72251 (December 5, 2014) ("SCI Adopting Release").

[4]   See 17 CFR 242.1000, defining the term "SCI entity," as "an SCI self-regulatory organization, SCI alternative trading system, plan processor, or exempt clearing agency subject to ARP."

include all of the national securities exchanges, as well as the Financial Industry Regulatory Authority (FINRA), the Municipal Securities Rulemaking Board (MSRB), registered clearing agencies, significant alternative trading systems, and the processors of consolidated market data. Regulation SCI imposes obligations on SCI entities with respect to their "SCI systems," which are defined as "all computer, network, electronic, technical, automated, or similar systems of, or operated by or on behalf of, an SCI entity that, with respect to securities, directly support trading, clearance and settlement, order routing, market data, *market regulation,* or market surveillance."[5]

Among other things, Regulation SCI requires SCI entities to implement policies and procedures reasonably designed to ensure that their SCI systems have "levels of capacity, integrity, resiliency, availability, and security, adequate to maintain the SCI entity's operational capability and promote the maintenance of fair and orderly markets."[6] SCI entities also must provide certain notifications to the Commission and market participants about an "SCI event," which is defined as a systems disruption, a systems compliance event, or a systems intrusion (*i.e.*, any unauthorized entry into SCI systems).[7]

As a national securities exchange, each of the defendant exchanges is an SCI entity, and its systems that directly support market regulation, including those relating to the exchange's order audit trail, are SCI systems. The exchanges therefore have obligations under Regulation SCI with respect to those systems, including implementing policies and procedures reasonably designed to ensure the security of their order audit trail systems and providing the appropriate notifications regarding any unauthorized intrusions into such systems.

But while Regulation SCI aims to safeguard the operation of SCI systems, it does not restrict the information generated by those systems in an authorized manner. I understand that the parties dispute whether Regulation SCI applies to the handling and storage of exchange order audit trail data generated by SCI systems and produced by an exchange to plaintiffs in litigation. I assume that such data would be produced by authorized exchange personnel without impairing the integrity or security of the exchange's order audit trail systems. In the Division's view, Regulation SCI does not apply to the handling of information that has been extracted in an authorized manner from an individual exchange's order audit trail or other market regulation system. Such information produced and stored for purposes of document discovery in litigation would not be an SCI system and thus would not be subject to the requirements of Regulation SCI.

Nonetheless, while properly extracted individual exchange order audit data is not subject to the provisions of Regulation SCI, such data typically does include sensitive, non-public information, such as the identity of the exchange member placing the order, the type of account, the clearing broker, and other details.[8] Accordingly, I believe it would be appropriate for the Court and the

---

[5]   17 CFR 242.1000 (emphasis added). In addition, certain requirements of Regulation SCI apply to "indirect SCI systems," which are systems that, if breached, would be reasonably likely to pose a security threat to SCI systems. 17 CFR 242.1000.

[6]   17 CFR 242.1001(a).

[7]   17 CFR 242.1002(b) and (c). SCI entities must also operate their systems in compliance with the federal securities laws; take appropriate corrective action when systems issues occur; provide certain notifications and reports to the Commission regarding systems changes; conduct business continuity and disaster recovery testing; and conduct annual reviews of their automated systems. See 17 CFR 242.1000-1004.

[8]   It is my understanding that the exchanges are being asked to produce information from their individual exchange order audit trails and not from the more comprehensive Consolidated Audit Trail database that currently is under development. While individual exchange order audit trail information is to be submitted

2

parties to subject this information to the same security and other protocols that are typically used for other kinds of sensitive, non-public information produced in litigation.

If you have any questions regarding the matters discussed in this letter, please do not hesitate to contact me at 202-551-3485 or Redfearnb@sec.gov.

Respectfully submitted,

Brett W. Redfearn
Director
Division of Trading and Markets
U.S. Securities and Exchange Commission

---

by the exchanges to the Consolidated Audit Trail, the data maintained by the Consolidated Audit Trail will be much more detailed and sensitive, and will include comprehensive information about the handling of each order in the U.S. national market system that is linked with unique customer identifying information. For this reason, the Consolidated Audit Trail, in addition to being subject to Regulation SCI, is subject to strict information handling protocols and procedures and can be accessed and used only for regulatory purposes. See, e.g., Sections 6.5(f) and (g) of the Limited Liability Company Agreement of Consolidated Audit Trail, LLC, available at: https://www.catnmsplan.com/wp-content/uploads/2019/09/CAT-2.0-Consolidated-Audit-Trail-LLC%20Plan-Executed_(175745081)_(1).pdf.

3