April 23, 2020

<u>VIA ECF</u>

The Honorable Jesse M. Furman
United States District Court
  for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY  10007

      Re:    *City of Providence, Rhode Island v. BATS Global Markets, Inc.*, 14-cv-2811-JMF
            **Parties' Joint Letter Required by Civil Case Management Plan**

Dear Judge Furman:

      Pursuant to the Court's August 16, 2019 Civil Case Management Plan and Scheduling Order ("CMP") (ECF No. 329), as amended by its March 4, 2020 Order ("Amd. CMP") (ECF No. 408), Plaintiffs' Counsel and Counsel for Defendants have conferred concerning the above-referenced matter, and this letter is submitted with the consent of all named parties.

**a)      Statement of Upcoming Deadlines, Due Dates, and/or Cut-off Dates**

      The next pretrial conference is scheduled for **April 28, 2020**.  ECF No. 403.  Consistent with the Court's April 20, 2020 Order (ECF No. 410), the Parties request that the Court proceed with a telephonic conference and ask that the matter be set for May 1.  The Parties will follow the Court's guidelines as set forth in its Emergency Individual Rules in Light of COVID-19, dated April 22, 2020.

      The Parties are mindful that when the Court last extended the schedule, Your Honor advised the Parties that the Court was not inclined make a further adjustment.  In light of the COVID-19 crisis, the Parties respectfully wish to revisit this issue.  To that end, the Parties propose that the Court vacate current deadlines, with the parties pledging to advise the Court every three weeks of the status of discovery and the possibility of returning to a more typical case management plan.  In the interim, the Parties will continue with documentary discovery and other litigation components that are manageable while counsel and their clients are largely sheltered at home.

      The schedule presently in place follows.  Production of documents that may be used by the parties in connection with Plaintiffs' motion for class certification and Defendants' motion for summary judgment on grounds of preclusion is to be substantially completed by **May 28, 2020**.  Amd. CMP, App'x A.  All discovery necessary for class certification and preclusion is to be completed by **August 12, 2020**.  *Id*.  Plaintiffs are to file any motion for class certification, and Defendants are to file any motions for summary judgment on grounds of preclusion, by **October 13, 2020**.  *Id*.  All other existing deadlines, due dates, and/or cut-off dates are as set forth in the Court's August 16, 2019 Civil Case Management Plan and Scheduling Order, as amended on March 4, 2020.

The Honorable Jesse M. Furman
April 23, 2020
Page 2

b)      Description of Any Outstanding or Anticipated Motions

**Custodians and Search Terms**

*Plaintiffs' Position.* Plaintiffs anticipate filing a motion to compel regarding Defendants' custodian lists seeking to add certain proposed custodians, most of whom even Defendants have conceded are likely to have relevant documents. The parties have held several meet and confers over the last couple of weeks, and are currently at impasse on several issues, and likely will be soon on several others. Three aspects of these meet and confers in particular warrant discussion here.

First, the parties have reached impasse on the inclusion of certain regulatory or compliance counsel as custodians for the collection of Defendants' ESI. These counsel were directly involved with those aspects of Defendants' exchanges at issue in the case – namely, co-location, proprietary data feeds, and complex order types. Moreover, these counsel were often identified as the relevant contacts at the respective exchanges prepared to respond to questions and comments from the SEC in connection with co-location, proprietary data feeds, and complex order types.

Second, while counsel for Plaintiffs and Defendants BATS and Direct Edge continue to meet and confer in an attempt to reach agreement regarding a reasonable cross-section of custodians from those Defendant Exchanges, the parties appear to be far apart notwithstanding these efforts and therefore may seek Court intervention (possibly as early as next week) consistent with the Court's Individual Rules and Practices In Civil Cases.

Third, the process of negotiating custodians with NYSE has been frustrated by the fact that NYSE has not provided organizational charts or working group lists that identify individuals at its exchanges (with the exception of a small number of lists for CHX). Plaintiffs' Request for Production #45, propounded approximately 8 months ago, clearly encompasses the information regarding relevant individuals which exist in the NYSE's files – or systems, and NYSE committed to "produce a list of individuals involved in the relevant business lines identified in Request No. 45." Seven months later, NYSE has still failed to provide documents which include such a list of individuals.

Finally, Defendants have still not provided a search term proposal for Defendants' ESI, despite the fact that Plaintiffs first sent Defendants proposed search terms on February 7, 2020. Instead, Defendants have continually frustrated the process by, inter alia, insisting that negotiations on custodians must be completed before they will even begin to propose search terms. Plaintiffs have tried to move the process forward by providing proposed terms for Plaintiffs' own collection (despite not receiving one from Defendants), and have now received Defendants' counterproposal. Meanwhile, the parties are in no different a position as it relates to search terms for Defendants' ESI than they were on February 7.

Absent a quick resolution of these issues, Plaintiffs expect to file motions to compel.

*All Defendants' Response.* Plaintiffs omit significant context: Defendants initially offered a total of 52 custodians, whereas Plaintiffs offered eight human custodians and, in the case of City of

The Honorable Jesse M. Furman
April 23, 2020
Page 3

Providence, no human custodians but rather an "Open Meetings Portal" (http://providenceri.iqm2.com/Citizens/Default.aspx). Plaintiffs then demanded that Defendants add more than 100 additional custodians.

Plaintiffs demand that Defendants include in-house counsel as custodians—and thus sift through and log potentially tens of thousands of sensitive and privileged communications—in search of what Plaintiffs claim must be non-privileged "business advice." To the extent non-privileged communications between lawyers and business personnel exist on relevant subjects, such communications will be captured by appropriately tailored lists of business personnel custodians. Requiring Defendants to search the files of in-house counsel and generate enormous privilege logs is not proportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b).

Separately, Plaintiffs have demanded the premature exchange of search terms, prior to concluding the meet-and-confer process on custodians. It is necessary to discuss—and reach resolution on—custodians before Defendants propose search terms, so Defendants have the chance to reasonably evaluate search terms by running hit counts. Plaintiffs' position to the contrary contravenes an orderly discovery process and the provisions of the ESI protocol. (Dkt. 401 at 6–8).

Defendants also anticipate needing to seek the Court's intervention regarding Plaintiffs' custodian designations, particularly with respect to City of Providence, which initially designated no human custodians at all, and instead designated a web portal.[1] Despite documentary evidence that City of Providence Board of Investment members communicated with each other in ways not maintained in that portal, Plaintiffs have refused to designate any member of that Board.

*NYSE's Further Response.* NYSE does not maintain organizational charts containing personnel lists in the ordinary course, and Plaintiffs cite no authority requiring that it do so or create them for Plaintiffs. Plaintiffs have now demanded that NYSE produce a list of every employee for more than 10½ years, with job titles and reporting lines, but NYSE's systems are not set up to produce that either. NYSE nonetheless offered to consider a more limited request for personnel information, but Plaintiffs never made one. In any event, NYSE provided a list of the 25 custodians it believed would adequately address Plaintiffs' document requests, a list that on its own will generate more than 32 million documents to be searched. NYSE has met its obligations.

**Plaintiffs' Communications with Third Parties**

*Defendants' Position.* Defendants intend to move to compel Plaintiffs to produce their (and their lawyers') communications with third parties (custodians, investment advisors, and broker-dealers) relating to this Action, as required by Defendants' RFP No. 22.[2] It is now clear that Plaintiffs

---

[1] Since that time, Counsel for the City of Providence has stated that it might include Sr. Asst. City Solicitor Megan DiSanto as a custodian subject to agreement on terms for the search of her materials. Counsel has not explained what that means, and the proposal is a reversal of what the ESI Protocol contemplates.

[2] Defendants' September 6, 2019 Request for Production No. 22 requests, in relevant part: "All communications between you and each of your investment advisors, broker-dealers, and other investment

The Honorable Jesse M. Furman
April 23, 2020
Page 4

began this case with *no* data showing that any Plaintiff bought or sold a single stock on a Defendant Exchange. Only in September (after the last Court conference) did Plaintiffs begin asking for data —without issuing subpoenas—from third-parties: three custodians and an unknown number of investment advisors. Only in February did Plaintiffs begin to produce this data to Defendants. But Plaintiffs have refused to produce their communications with these third parties that led up to (and that likely explain) what the third parties chose to include in this data and what they left out.[3]

The critical importance of these trading intermediaries, the data they have provided or may be required to provide under subpoena, and the associated communications is made evident by the tortured history of this Action. In the six years since filing this Action, Plaintiffs sat idle, failing to assemble information about orders placed and trades executed on their behalves,[4] information they assured the Court on August 15, 2019 should be "readily available." Aug. 15, 2019 Tr. 12:23–13:10, 14:12–18, 20:9–15. Without such data, neither Plaintiffs nor Defendants can identify any orders and trades associated with Plaintiffs within the massive amount of order and trade data that the Exchanges will produce.[5]

*Plaintiffs' Position.* Defendants overstate the import of communications between counsel and various third parties, which have no relevance to the claims and defenses in this litigation. And *counsel's* communications are decidedly *not* requested by RFP No. 22. Defendants' hyperbole aside, Plaintiffs have produced their trading data, as well as the data obtained from their investment managers. Communications between Plaintiffs and their investment managers will be collected and produced as agreed upon by the parties. There is nothing further for Plaintiffs do to in response to this manufactured dispute.

**Defendants' Data Productions**

*Plaintiffs' Position.* The NYSE and BATS have recently expressed a refusal to produce the transactional data absent Plaintiffs' commitment to either pay for the entirety of the hard drives that

---

intermediaries from April 18, 2009 to the present, relating to your investments. . . ." Plaintiffs note "You," "your," and "yours," is defined narrowly and does not include "Lead Counsel," a defined term in the Requests.

[3]   Defendants have already subpoenaed 45 of Plaintiffs' investment advisors. It is a courtesy to these third parties to require Plaintiffs to produce their communications; these third-parties should not be forced to explain again to Defendants what they have already told Plaintiffs.

[4]   As the Court is aware from previous submissions, all of Plaintiffs' orders and trades were made through Plaintiffs' intermediaries – *i.e.*, were initiated by instructions from Plaintiffs' investment advisors to broker-dealers, who then attempted to implement such instructions.

[5]   Plaintiffs' lack of their own order and execution data has necessitated extensive third-party discovery that remains in its early stages. On November 26, 2019, Plaintiffs subpoenaed 12 of their broker-dealers. In January and February 2020, Defendants subpoenaed 45 of Plaintiffs' identified investment advisors and 29 of their identified broker-dealers. However, this process has been delayed, and Plaintiffs' investment intermediaries' data is only now starting to trickle in. In addition, many of Plaintiffs' investment intermediaries are resisting the production of Plaintiffs' trading data.

will be used to transmit the data production or immediately return the storage media on which the data is being produced. Absent an expeditious resolution of this most-recent delay, Plaintiffs anticipate bringing a motion on this issue. If NYSE and BATS want to shift the cost of production to Plaintiffs they should have first raised such concerns with Plaintiffs before incurring such costs. Having failed to do so, they cannot now withhold production and demand that Plaintiffs pay for the entirety of the transmission. In addition, Defendants' demand is not supported by the Protective Order which contemplates the return or destruction of materials "within sixty (60) calendar days after the final termination of this Action." *See* ECF No. 402, ¶XI(11.2).

*NYSE's and BATS' Response.* For more than a month, Defendants have been ready to begin producing hundreds of terabytes of data. Two things have delayed that: (1) Plaintiffs failed to timely respond to Defendants' proposals concerning production logistics (some features raised nearly six weeks ago), including a proposal that Plaintiffs return Defendants' hard drives after downloading the data to eliminate the security concern arising from having that data on mobile storage devices outside of Defendants' control; and (2) Plaintiffs have insisted that their consultant retain those hard drives, without explanation. The bottom line is, after claiming that the Defendants' order level data was a critical priority, and after Defendants told Plaintiffs that they were prepared to begin producing the data, Plaintiffs went silent and then refused to agree to the reasonable production process proposed by Defendants. For example, NYSE and BATS were prepared to deliver more than 120 terabytes of data last week, but could not because Plaintiffs had not responded to Defendants' proposals.

**Defendants' Production of Regulatory Materials**

*Plaintiffs' Position.* Plaintiffs' Requests for Production #1 and 2, propounded approximately 8 months ago, encompass materials "provided to any regulator or governmental authority . . . concerning any possible or alleged violations of state or federal securities laws, including the Securities Act of 1933 or Securities Exchange Act of 1934 . . . relating to Your or any other Defendant's practices of selling co-location and direct data feeds or providing complex Order Types to any HFT Firm."

Just today, NYSE committed to begin producing these materials by May 22, but because NYSE's counsel was unable to obtain all of the regulatory materials relating to one of the regulatory matters before the COVID shelter-in-place requirements went into effect, NYSE will be unable to obtain the rest of such documents until NYSE's outside counsel in that matter is able to return their offices. Also today, BATS committed to begin producing the requested materials by mid-May.

The parties continue to discuss and hope to resolve issues surrounding Defendants' production of regulatory materials, but may need the Court's intervention if they are not able to do so.

*NYSE and BATS' Response.* There is no dispute here: Defendants are working to produce the documents they agreed to produce. Plaintiffs' complaints appear to be part of a campaign to divert attention from the serious deficiencies in Plaintiffs' pre-filing investigations and their productions.

The Honorable Jesse M. Furman
April 23, 2020
Page 6

**c)  Description of the Status of Discovery and Any Additional Discovery that Needs to Be Completed**

The parties continue to confer on party-related discovery, as referenced above. In addition, the parties continue to seek discovery from various third-party broker-dealers and investment advisors focusing on Plaintiffs' orders and trades during the putative class period. Significant data and documentary discovery remains to be completed. For example, the discovery produced by Plaintiffs to date cannot be reconciled with Plaintiffs' PSLRA certifications.

\*   \*   \*

The remaining portions are unchanged since the last submission.

Respectfully submitted,

| By: s/ David W. Mitchell | By: s/ Douglas W. Henkin (w/ permission) |
|---|---|
| David W. Mitchell<br>Brian O. O'Mara<br>Lonnie A. Browne<br>ROBBINS GELLER RUDMAN<br>  & DOWD LLP<br>600 West Broadway<br>San Diego, CA 92101<br>Telephone:  619/231-1058<br>619/231-7423 (fax)<br><br>Patrick J. Coughlin<br>Randi D. Bandman<br>ROBBINS GELLER RUDMAN<br>  & DOWD LLP<br>30 Vesey Street, Suite 200<br>New York, NY 10007<br><br>Co-Lead Counsel for Plaintiffs in *City of Providence, Rhode Island, et al. v. BATS Global Markets, Inc., et al.,* No. 1:14-cv-02811-JMF | Douglas W. Henkin<br>Justine N. Margolis<br>Kiran Patel<br>DENTONS US LLP<br>1221 Avenue of the Americas<br>New York, NY  10020<br>Telephone: 212/768-6832<br>212/768-6800 (fax)<br><br><br><br><br><br><br><br>Counsel for *New York Stock Exchange LLC, NYSE Arca Inc., and Chicago Stock Exchange, Inc.* |

The Honorable Jesse M. Furman
April 23, 2020
Page 7

| | |
|---|---|
| By:  s/ Paul E. Greenwalt III (w/ permission) | By:  s/ Robert F. Serio (w/ permission) |
| Paul E. Greenwalt III<br>SCHIFF HARDIN LLP<br>233 South Wacker Drive, Suite 6600<br>Chicago, IL  60606<br>Telephone:  312/258-5702<br>312/258-5600 (fax) | Robert F. Serio<br>Justine Goeke<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, NY  10166<br>Telephone: 212/351-3917<br>212/351-5246 (fax) |
| Kayvan B. Sadeghi<br>SCHIFF HARDIN LLP<br>1185 Avenue of the Americas, Suite 3000<br>New York, NY  10036<br>Telephone: 212-753-5000<br>212/753-5044 (fax) | Douglas R. Cox<br>Amir C. Tayrani<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, D.C.  20036<br>Telephone:  202/955-8500<br>202/530-9539 (fax) |
| | Steven M. Shepard<br>Arun Subramanian<br>SUSMAN GODFREY LLP<br>1301 Avenue of the Americas<br>New York, NY 10019<br>Telephone: 212/336-8330<br>212/336-8340 (fax) |
| Counsel for *BATS Global Markets, Inc. (n/k/a Cboe Bats, LLC) and Direct Edge ECN, LLC* | Counsel for *The Nasdaq Stock Market LLC and Nasdaq OMX BX, Inc.* |

cc:     All Counsel of Record via ECF