UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITY OF PROVIDENCE, RHODE ISLAND, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>　vs.<br><br>BATS GLOBAL MARKETS, INC., et al.,<br><br>　　　　　　　　　　Defendants. | Civil Action No. 1:14-cv-02811-JMF-OTW<br>**(Consolidated)**<br><br>CLASS ACTION<br><br>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE THE REPORT OF NASDAQ'S EXPERT JAMES R. BURNS |

**TABLE OF CONTENTS**

**INTRODUCTION** ............................................................................................................................ 1

**ARGUMENT** .................................................................................................................................. 1

I.     BURNS' TESTIMONY AND OPINIONS SHOULD BE EXCLUDED BECAUSE HE IS A PAID FACT WITNESS, NOT AN EXPERT WITNESS ................................... 1

II.    BURNS' TESTIMONY AND OPINIONS SHOULD BE EXCLUDED AS IMPROPER LEGAL CONCLUSIONS .............................................................................. 3

III.   BURNS' TESTIMONY AND OPINIONS SHOULD BE EXCLUDED AS UNRELIABLE ....................................................................................................................... 4

    A.     Burns' Testimony and Opinions Are Unreliable to the Extent They Are Mere Ipse Dixit .................................................................................................................. 4

    B.     Burns' Testimony and Opinions Are Unreliable to the Extent They Are Contradicted by His Own His Prior Statements ...................................................... 5

**CONCLUSION** ............................................................................................................................... 7

i

## INTRODUCTION

The opinions and testimony of Nasdaq's proffered expert, James R. Burns, should be excluded for three separate and independent reasons.

First, Burns was an SEC lawyer who participated in the review and approval of the Defendant Exchanges' proposed rule filings relating to the products and services at issue in this case. Thus, he is not a proper expert witness, but a fact witness. Problematically, he is a highly paid fact witness. Nasdaq's retention of Burns was therefore improper, and all Burns' opinions are inherently unreliable. *See* Section I, *infra*.

Second, nearly all Burns' opinions amount to nothing more than improper legal conclusions. By his own admission, the only methodology he applies is a legal analysis of the relevant statute and regulations. In his deposition, Burns conceded that the Court can perform the same analysis. Significantly, Burns' opinions have been excluded on those exact grounds before. *See* Section II, *infra*.

Third, Burns' self-serving opinion that he participated in a "thorough" process at the SEC is unreliable because it is belied by his testimony that he could not remember a single detail of any of the rule filings at issue. Moreover, it is also unreliable because it is directly contradicted by statements that he personally made while at the SEC. *See* Section III, *infra*.

## ARGUMENT

**I.    BURNS' TESTIMONY AND OPINIONS SHOULD BE EXCLUDED BECAUSE HE IS A PAID FACT WITNESS, NOT AN EXPERT WITNESS**

In his deposition, Burns testified that, while working as a lawyer at the SEC, he participated in the review and approval of rule filings relating to the products and services at issue in this case:

> Q: "You were a firsthand participant in the review and approval of the proposed rule changes that are at issue in this case?"

   A: "The rules that we're talking – the rules -- a number of the rules in the appendix came, out under my watch while I was there."

Ex. 1 (Burns Deposition Tr.) at 190:3-9 (objection omitted).

  Burns concedes that he could be called as a fact witness to testify regarding that process. *Id.* at 191:2 -7 (testifying that ". . . I would assume I can be called [as a fact witness] and asked the very same questions you're asking me today").

  Importantly, Plaintiffs repeatedly told Defendants that regulators such as Burns "may or are likely to have discoverable information that Lead Plaintiffs may use to support their claims . . . ." Ex. 2 (Lead Plaintiffs' Initial Disclosures Pursuant to Rule 26(a)(1) dated October 11, 2019) at 31 ("Lead Plaintiffs believe that there may be discoverable information in the possession, custody or control of federal agencies and regulators that interact with or conduct oversight of Defendants and Defendants' activities, including, but not limited to, the U.S. Securities and Exchange Commission."); Ex. 3 (Lead Plaintiffs' Partial Initial Disclosure Statement Pursuant to Rule 26(a)(1)(A)(i) dated September 6, 2019) at 11("Lead Plaintiffs believe that there may be discoverable information in the possession, custody or control of federal regulators that conduct oversight of Defendants and Defendants' activities, including but not limited to the U.S. Securities and Exchange Commission.").[1]

  Nonetheless, Nasdaq paid Burns more than a hundred thousand dollars in connection with this case:

   Q: "How much have you been paid by Nasdaq so far in this case?"

   A: "… probably low six figures, I think."

---

[1] Notably, although Plaintiffs do not agree with their reasoning, Nasdaq's co-defendants argue that Burns' expert testimony is unnecessary. *See* ECF No. 600 at n.1 ("Defendants move separately from [Nasdaq] because they believe that expert testimony is not necessary for the Court to find the claims here precluded . . . .").

2

*Id.* at 24:7-12.[2]

Nasdaq's retention of Burns was therefore improper, and his testimony and opinions are inherently unreliable. They should be excluded on these grounds alone.

## II. BURNS' TESTIMONY AND OPINIONS SHOULD BE EXCLUDED AS IMPROPER LEGAL CONCLUSIONS

It is well settled that it is "impermissible for experts 'to offer opinions embodying legal conclusions.'" *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, No. 16-CV-885 (JPO), 2020 WL 1673687, at *3 (S.D.N.Y. Apr. 6, 2020), *aff'd,* 839 F. App'x 545 (Fed. Cir. 2021) (quoting *Floyd v. City of New York*, 861 F. Supp. 2d 274, 287 (S.D.N.Y. 2012)). Thus, for example an expert may not testify "as to the meaning and proper interpretation of the legal obligations imposed" by an SEC Regulation "as they apply to the facts of this case." *Schlltzki v. Weiser Capital Mgmt., LLC,* No. 10 Civ. 4685, 2013 WL 6284417, at *2 (S.D.N.Y. Dec. 4, 2013), *aff'd sub nom.*, *BPP Wealth, Inc. v. Weiser Cap. Mgmt., LLC,* 623 F. App'x 7 (2d Cir. 2015).

Burns' own prior testimony was excluded in an administrative proceeding before the SEC where (as here) he offered opinions on whether his client was adhering to the requirements of the Exchange Act. *See* Ex. 4 (*In the Matter of Ironridge Global Partners,* LLC, Admin. Proc. File No. 3-16649). In *Ironridge*, Burns' opinion was stricken as not helpful to the trier of fact and because Burns' expert report was essentially legal brief. *Id.* ("Except for one detail, ***Burns' expert report is in substance a legal opinion***).

Similarly, here, Burns merely applies a legal analysis to interpret SEC Rule 19b-4 and conclude that Nasdaq did not violate the Exchange Act. *See* Ex. 5 ("Burns Report") at 37 ("Nasdaq and Nasdaq BX have filed with the SEC all of the rule filings necessary to allow the SEC to

---

[2] Burns has also been engaged by, and is currently being paid by, Nasdaq's co-Defendants. Specifically, Burns serves as counsel to subsidiaries and/or affiliates of NYSE and BATS. *See* Tr. at 47:10-55:24. Burns is also counsel to numerous HFT firms. *See* Tr. at 39:21-40:7, 229:20-233:7.

3

consider, and in many cases approve, the specific market practices cited by the Plaintiffs").[3] In his deposition, Burns confirmed that the only methodology he employed was a legal analysis of whether documents publicly filed with the SEC by Nasdaq comported with the relevant statutes and rules:

> Q: "[H]ow do you determine what is required by Form 19b-4 . . . for purposes of your expert opinion in this case?"
>
> A: "Reference to the statutory provision and the rule provisions form itself."

Ex. 1 at 166:21 – 167:7.

Burns conceded that the Court can perform the same analysis:

> Q: "[W]hy would the judge not be able to reference those provisions for himself?"
>
> A: "A judge could certainly do that."

*Id.* at 167:9-12.

Burns' opinion and testimony should be excluded on these grounds alone.

### III. BURNS' TESTIMONY AND OPINIONS SHOULD BE EXCLUDED AS UNRELIABLE

To the extent Burn's testimony and opinions are not improper legal conclusions, they should be excluded as unreliable.

#### A. Burns' Testimony and Opinions Are Unreliable to the Extent They Are Mere Ipse Dixit

"The law is clear that mere ipse dixit is not appropriate expert testimony because it is not based on reliable methodology." *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 678 (S.D.N.Y. 2013).

Section II of the Burns Report opines that the SEC's process for reviewing and approving Nasdaq's rule filings was "thorough." However, Burns cites no authority to support this opinion

---

[3] Specifically, the opinions expressed in Sections I, III and IV of the Burns Report are improper legal conclusions. Indeed, those Sections read like a legal brief that Nasdaq's counsel could have drafted without the aid of an "expert."

4

and, in his deposition, he repeatedly testified that he does not recall any details about that process. *See, e.g.*, Ex. 1 at 103:6-19 (Q: "Do you recall any discussions, at any time, or any meetings that you had regarding rule filings by Nasdaq concerning third-party market data services?" . . . A: "***None specific to Nasdaq, no***."); *id.* at 178:15-22 ("Q: sitting here today, and even having gone through all the rule filings that are attached as appendices to your report in Nasdaq, none of that jogs your memory as to any specific instance of having reviewed one of those rule filings with your staff; is that correct?" A: "Of my having reviewed it, no. ***I simply don't recall***."); *id.* at 190:2-12 (Q: "You were a firsthand participant in the review and approval of the proposed rule changes that are at issue in this case?" A: ". . . A number of the rules in the appendix came, out under my watch while I was there. I don't recall specifically discussing or the deliberations in respect of any of them in particular."). Nor did he review the record in this case. *See id.* at 113:15 – 114:5 (testifying that he did not review any documents produced by Nasdaq or any other party).

Burns' unsupported *ipse dixit* is therefore the exact the type of unreliable testimony that *Daubert* and its progeny intended to exclude. *See generally Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

### B. Burns' Testimony and Opinions Are Unreliable to the Extent They Are Contradicted by His Own His Prior Statements

Burns' testimony and opinions are also unreliable because they are inconsistent with statements that he personally made while at the SEC, thus demonstrating that Burns does not employ the "same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Specifically, while Burns was the Deputy Director of Trading and Markets for the SEC, he sent a letter to Jeffrey Sprecher, President of Intercontinental Exchange, explaining the standard by which the Exchanges should describe the order types in their respective rules:

> As an SRO, each exchange should clearly, accurately and comprehensively describe the order types it offers various market participants in its rules. For example, ***each exchange should assure that its rulebook fully describes the characteristics of the order type . . . , the relative priority of the order type . . . , in the full range of potential order book and execution scenarios . . . and the way in which an execution of the order type will be priced***.

Ex. 6 at 2 (emphasis added).

The Burns Report goes one step further, stating that "order types must be sufficiently explained in the rule filings submitted to the SEC so that they can be evaluated for their consistency with the Exchange Act." Ex. 5 at 36.

However, Burns testified that standard need NOT be followed. *See* Ex. 1 at 146:6-11 (Q: "[B]y what standard do you believe the Nasdaq rule filing should be held to?" A: "The statutory and rule-based standard, not the standard articulated in a letter").

Shockingly, Burns testified that Nasdaq's rule filings do not comprehensively describe Nasdaq's order types; nonetheless he still opines that Nasdaq's rule filings were adequate.

> Q: [D]o [Nasdaq's rule filings] describe, for example, the relative priority of the order type vis a-vis other order types in the full range of potential order book and execution scenarios?
>
> A: Not to my recollection.
>
> Q: So, [Nasdaq's rule filings] would not meet the standard of detail that you have set out in this letter; is that correct?
>
> A: They … would not meet every detail outlined in this paragraph of the letter.

Ex. 1 at 146:3-147:20.

This alone undermines the reliability of Burns' opinion that Nasdaq filed all of the rule filings necessary to allow the SEC to consider and approve the order types used on Nasdaq's exchanges. *See* Ex. 5 at 42-43; *see also United States E.E.O.C. v. Rockwell Int'l Corp.*, 60 F. Supp. 2d 791, 797 (N.D. Ill. 1999), *aff'd sub nom. E.E.O.C. v. Rockwell Int'l Corp.*, 243 F.3d 1012 (7th Cir. 2001) (excluding testimony as unreliable where the expert failed to follow standard

6

methodology that he himself normally applied, and in fact "employ[ed] principles that contradicted his normal methodology in various respects").

Crucially, nowhere does Burns opine that the Exchanges described to the SEC that HFTs were exploiting the order types and other products and services at issue in this case (*i.e.*, co-location and proprietary data feeds) to engage in the alleged scheme—specifically, "in order to pick off resting limit orders placed by institutional investors by slower broker-dealers before the slower liquidity provider can react and adjust to new information." ECF No. 619-1 (Lauer Report) at 1.

## CONCLUSION

For the foregoing reasons, Burns' opinions and testimony should be excluded.

Dated: July 26, 2021                    Respectfully submitted,


*/s/ Thomas G. Hoffman, Jr.*
Thomas G. Hoffman, Jr.

**LABATON SUCHAROW LLP**
MICHAEL P. CANTY
THOMAS G. HOFFMAN, JR.
CORBAN S. RHODES
140 Broadway
New York, NY 10005
Telephone: 212/907-0700
Facsimile: 212/818-0477
mcanty@labaton.com
thoffman@labaton.com
crhodes@labaton.com

**MOTLEY RICE LLC**
JOSEPH F. RICE
JOSHUA C. LITTLEJOHN
MEREDITH B. WEATHERBY
KELLY A. QUILLIN

28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Telephone: 843/216-9000
Facsimile: 843/216-9450
jrice@motleyrice.com
jlittlejohn@motleyrice.com
mweatherby@motleyrice.com
kquillin@motleyrice.com

**MOTLEY RICE LLC**
WILLIAM H. NARWOLD
MICHAEL J. PENDELL
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone: 860/882-1681
Facsimile: 860/882-1682
bnarwold@motleyrice.com
mpendell@motleyrice.com

**MOTLEY RICE LLC**
DAVID D. BURNETT
401 9th Street NW, Suite 1001
Washington, DC 20004
Telephone: 202/232-5504
Facsimile: 202/232-5513
dburnett@motleyrice.com

**ROBBINS GELLER RUDMAN & DOWD LLP**
DAVID W. MITCHELL
BRIAN O'MARA
STEVEN M. JODLOWSKI
LONNIE A. BROWNE
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
Facsimile: 619/231-7423
davidm@rgrdlaw.com
bomara@rgrdlaw.com
sjodlowski@rgrdlaw.com
lbrowne@rgrdlaw.com

**ROBBINS GELLER RUDMAN & DOWD LLP**
SAMUEL H. RUDMAN
VINCENT M. SERRA
58 South Service Road, Suite 200
Melville, NY 11747

8

Telephone: 631/367-7100
Facsimile: 631/367-1173
srudman@rgrdlaw.com
vserra@rgrdlaw.com

**ROBBINS GELLER RUDMAN & DOWD LLP**
PATRICK J. COUGHLIN
RANDI BANDMAN
420 Lexington Avenue
New York, NY 10170
Telephone: 212/693-1058
patc@rgrdlaw.com
randib@rgrdlaw.com

*Co-Lead Counsel for Plaintiffs*