> The motion to seal is GRANTED temporarily. The Court will assess whether to keep the materials at issue sealed or redacted when deciding the underlying motion. The Clerk of Court is directed to terminate ECF No. 697.
>
> SO ORDERED.
>
> *[signature]*
>
> August 9, 2021

# Katten

575 Madison Avenue
New York, NY 10022-2585
+1.212.940.8800 tel
katten.com

**BRIAN L. MULDREW**
brian.muldrew@katten.com
212.940.6581 direct
212.894.5796 fax

August 6, 2021

<u>Via ECF</u>

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Re:   *City of Providence, et al. v. BATS Global Markets, et al.*, No. 14-cv-2811 (JMF)

Dear Judge Furman:

    I write on behalf of non-party UBS Securities LLC ("UBS") regarding recent filings in the above-captioned action that included information produced by UBS in response to a subpoena dated January 10, 2020 (the "Subpoena") that was issued by defendants The Nasdaq Stock Market LLC and Nasdaq OMX BX, Inc. (together, "Nasdaq"). On July 27, 2021, counsel for Nasdaq informed UBS that as part of Nasdaq's Opposition to Plaintiffs' Motion for Class Certification (Dkt. No. 650), Nasdaq filed documents under seal containing information that UBS had produced and designated as "Confidential" under the Stipulated Protective Order (Dkt. No. 402). Pursuant to Rule 7(C)(i) of Your Honor's Individual Rules and Practices in Civil Cases, UBS, along with certain other non-parties, requested an extension of time to respond to Nasdaq's notification, which the Court granted. (Dkt. No. 674). UBS now requests, under Rule 7(C), that certain portions of Exhibit 1 and Exhibit 13 to the Declaration of Elisha Barron (Dkt. No. 644), described below, remain sealed and any references to the sealed information in any other publicly filed submissions be redacted.

    Exhibit 1 is an expert report, including exhibits, by Professor Terrence Hendershott that contains the following proprietary[1] and confidential information produced by UBS: (i) identifying information about UBS's clients; (ii) information regarding UBS's handling, routing, and execution of an order on behalf of a client; and (iii) references to, and quotations from, UBS's confidential data declaration, Exhibit 13, discussed below. As such, UBS requests that to the extent they reference "Confidential" information produced by UBS, Paragraphs 56-68, 152-154,

---

[1] Although much of UBS's information contained in Exhibits 1 and 13 may be considered "proprietary" under Rule 7.A. of the Court's Individual Rules and Practices in Civil Cases and therefore, may be redacted from filings without Court approval, UBS is submitting this request to avoid any lack of clarity with respect to its position.

# Katten

The Honorable Jesse M. Furman
August 6, 2021
Page 2


155, 156, 179, and 320, Footnotes 283, 287, 295, and 305, and Figures 4 to 8 of Exhibit 1 remain under seal.[2]

Exhibit 13 is a declaration by an employee of UBS that contains the following proprietary and confidential information: (i) identifying information relating to UBS's clients (¶ 10) and (ii) information regarding UBS's internal order and execution database and related systems, including how UBS maintains and queries those systems (¶ 6-7, 14). Enclosed with this letter is a redacted version of Exhibit 13 to the Declaration of Elisha Barron (Dkt. No. 644) reflecting the portions of the declaration that UBS requests to remain sealed.

The confidential information that UBS proposes to keep sealed includes proprietary and confidential information relating to how UBS handles, routes, and executes orders *and* how UBS's internal databases intake, store, organize, and analyze the resulting trade data. UBS operates in a highly competitive industry and the disclosure of this non-public information could expose UBS to competitive harm. UBS is not seeking to broadly seal all of the information it has produced. Rather, UBS has proposed narrowly tailored redactions that serve the compelling interest of non-party UBS in protecting its proprietary and confidential information.

This Court has previously found that confidential technical information regarding internal systems merits protection from disclosure. *See T-Jat Sys. 2006 Ltd. v. Amdocs Software Sys. Ltd.*, No. 13-CV-5356 JMF, 2015 WL 394075, at *6 (S.D.N.Y. Jan. 29, 2015) (Furman, J.). Likewise, redactions of third parties' customers and information concerning their trading strategies, objectives, and transactions are warranted. *See Dodona I, LLC v. Goldman, Sachs & Co.,* 119 F. Supp. 3d 152, 156 (S.D.N.Y. 2015).

In addition, as an innocent non-party to this case, UBS's privacy interests deserve heightened protection. *U.S. v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("[t]he privacy interests of innocent third parties . . . weigh heavily in a court's balancing equation.") (citations omitted); *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-4394 (AJN), 2018 WL 1750595, at *21 (S.D.N.Y. Apr. 11, 2018) (holding "confidential information . . . involving non-parties is sufficiently sensitive to merit protection" at the class certification stage). Finally, the public interest in having access to the confidential information at issue, including a non-party's internal order routing and execution systems, is minimal and, to the best of UBS' knowledge, has no bearing to the claims or defenses in this action. These countervailing factors thus outweigh the public interest in disclosure. *See generally Lugosch v. Pyramid Co. of Onondaga*, 453 F.3d 110,

---

[2] Nasdaq indicated that it intends to file redacted versions of Exhibit 1. UBS respectfully requests that the Court permit Nasdaq to apply any appropriate redactions on UBS's behalf.

# Katten

The Honorable Jesse M. Furman
August 6, 2021
Page 3

119–20 (2d Cir. 2006) (the right of public access to judicial documents is not absolute and "the court must balance competing considerations against it").

|  |  |
|---|---|
| Dated: New York, New York<br>August 6, 2021 | Respectfully submitted,<br><br>**KATTEN MUCHIN ROSENMAN LLP**<br><br>By: */s/ Brian L. Muldrew*<br>       Brian L. Muldrew<br><br>575 Madison Ave.<br>New York, NY 10022<br>Tel.: (212) 940-8568<br>Fax: (212) 940-8776<br>Email: brian.muldrew@katten.com<br><br>*Attorneys for non-party UBS Securities LLC* |

CC:   All Counsel (via ECF)

DocuSign Envelope ID: AF589329-803A-4567-BC38-1DD78F767FE1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- X
                                           :

CITY OF PROVIDENCE, RHODE ISLAND,
*et al.*,
                                           :    Civ. Action No.  1:14-CV-2811-JMF

        Plaintiffs,
                                           :    **UBS DECLARATION REGARDING**
    -v-                                      :    **DATA**

BATS GLOBAL MARKETS, INC., *et al.*,
                                           :

        Defendants.

---------------------------------------- X

    I, Robert Haight, declare:

    1.    I currently serve as Executive Director, Regulatory Risk Management Officer at UBS Securities LLC ("UBS"). I am above eighteen years of age. I reside in the United States of America.

    2.    I am familiar with the efforts that UBS made to attempt to identify, collect, and produce data in response to the subpoena issued to UBS by Employees' Retirement System of the Government of the Virgin Islands on behalf of Lead Plaintiffs, dated November 26, 2019 ("Plaintiffs' Subpoena"), requesting data reflecting orders routed, and executions obtained, on behalf of Lead Plaintiffs.[1]

    3.    I am familiar with the systems used by UBS to maintain order and execution data.

    4.    I am familiar with the data produced by UBS in response to Plaintiffs' Subpoena, in files bearing BATES numbers UBS00261 and UBS00262 (together, the "UBS Data Export").

---

[1] I understand the Lead Plaintiffs in this case are City of Providence, Rhode Island; Plumbers and Pipefitters National Pension Fund; Employees' Retirement System of the Government of the Virgin Islands; and Boston Retirement System.

I am also familiar with the steps that UBS took in order to identify the data contained in the UBS Data Export.

5. UBS, in the ordinary course of its business, maintained the data shown in the UBS Data Export.

I. **UBS Is Unable to Distinguish Order and Execution Data Related to Lead Plaintiffs, from Order and Execution Data <u>Unrelated</u> to Lead Plaintiffs**

6. Lead Plaintiffs' Subpoena requested order and execution data pertaining to trades carried out, by UBS, on behalf of Lead Plaintiffs. 

7. ████████████████████████████████████████ Lead Plaintiffs are not clients of UBS, as such the ECA database does not have any fields showing the Lead Plaintiffs.

II. **The UBS Data Export**

8. On December 8, 2020, a lawyer representing Lead Plaintiffs emailed UBS's lawyer an Excel spreadsheet that purported to show allocations to Lead Plaintiffs' custodian banks (the "Lead Plaintiff Data Excerpt"). The tab in the spreadsheet named "Combined" appeared to contain data for approximately 500 allocations (across all four Lead Plaintiffs) including the following information for each allocation: (i) "Name of Investment Manager" (ii) "Trade Date"; (iii) "Stock Name and Symbol," and (iv) "Purchase or Sale."

2

9.  UBS was able to identify order and execution data associated with 491 of the 500 rows in the "Combined" tab of the Lead Plaintiff Data Excerpt. For 8 of the 500 rows in the Lead Plaintiff Data Excerpt's "Combined" tab, UBS was unable to query order and execution data because UBS was (a) unable to determine the correct Short Name for the order, (b) unable to determine the correct stock symbol, or (c) UBS determined that the record was a duplicate or for a cancelled order allocation.

10.  ██████████████████████████████████████████████████████████████████ UBS requested more complete names of the Investment Managers from the Lead Plaintiffs, which was provided in the "Combined" tab.

11.  It is possible that the UBS Data Excerpt contains order and execution data relating to orders and executions that were <u>not</u> carried out on behalf of Lead Plaintiffs. That could happen if these Investment Managers were acting on behalf of other investors, besides Lead Plaintiffs, when placing orders with UBS. UBS has no way to determine the identity of the Investment Managers' ultimate clients.

12.  UBS did not represent which data, if any, are relevant to trades placed on behalf of Lead Plaintiffs.

### III. Limitations of UBS's Data

13.  Providing the data involved a complex, multi-faceted query including multiple investment managers that submitted orders in different stocks on different trade dates.

14.  ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

3

I declare under penalty of perjury that the foregoing is true and correct.

Signature: *Robert haight*
—DocuSigned by—
856525AA4C5C44C...

Executed on (date):
3/15/2021

4