UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
CITY OF PROVIDENCE, RHODE ISLAND, : Civil Action No. 1:14-cv-02811-JMF-OTW
Individually and on Behalf of All Others : **(Consolidated)**
Similarly Situated, :
: <u>CLASS ACTION</u>
:
          Plaintiff, :
: MEMORANDUM OF LAW IN SUPPORT
     vs. : OF LEAD PLAINTIFFS' MOTION TO
: UNSEAL
BATS GLOBAL MARKETS, INC., et al., :
:
          Defendants. :
:
---------------------------------------------------------------x

**FILED UNDER SEAL PURSUANT TO FEB. 10, 2020 PROTECTIVE ORDER
(ECF NO. 402)**

4857-4058-8801.v1

**TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT ..................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND......................................................2

III. ARGUMENT..................................................................................................................5

    A.    The Papers Are "Judicial Documents" Accorded a Strong Presumption of Immediate Public Access................................................................................5

    B.    Defendants Have Not Offered Any Justification – Let Alone a Compelling Reason – to Keep the Papers Sealed ...............................................................7

IV. CONCLUSION..............................................................................................................11

4857-4058-8801.v1

## TABLE OF AUTHORITIES

Page

**CASES**

*Ashmore v. CGI Grp. Inc.*,
   138 F. Supp. 3d 329 (S.D.N.Y. 2015),
   *aff'd*, 923 F.3d 260 (2d Cir. 2019) ..................................................................................... 9

*City of Providence, R.I. v. Bats Glob. Mkts., Inc.*,
   878 F.3d 36 (2d Cir. 2017) ................................................................................................. 7

*Condit v. Dunne*,
   225 F.R.D. 113 (S.D.N.Y. 2004) ....................................................................................... 6

*Dorsett v. Cnty. of Nassau*,
   762 F. Supp. 2d 500 (E.D.N.Y. 2011),
   *aff'd*, 800 F. Supp. 2d 453 (E.D.N.Y. 2011) .................................................................... 8

*Gambale v. Deutsche Bank AG*,
   377 F.3d 133 (2d Cir. 2004) ..................................................................................... 1, 6, 8, 9

*Gen. Media, Inc. v. Shooker*,
   1998 WL 401530 (S.D.N.Y. July 16, 1998) .................................................................... 10

*In re "Agent Orange" Prod. Liab. Litig.*,
   821 F.2d 139 (2d Cir. 1987) .......................................................................................... 7, 8

*In re Parmalat Sec. Litig.*,
   258 F.R.D. 236 (S.D.N.Y. 2009) ............................................................................. 7, 9, 10

*Joy v. North*,
   692 F.2d 880 (2d Cir. 1982) ..................................................................................... passim

*Koch v. Greenberg*,
   2012 WL 1449186 (S.D.N.Y. Apr. 13, 2012) ............................................................. 6, 10

*Lugosch v. Pyramid Co. of Onondaga*,
   435 F.3d 110 (2d Cir. 2006) .................................................................................... passim

*Nycomed US, Inc. v. Glenmark Generics, Inc.*,
   2010 WL 889799 (E.D.N.Y. Mar. 8, 2010) ..................................................................... 10

*Prescient Acquisition Grp., Inc. v. MJ Publ'g Tr.*,
   487 F. Supp. 2d 374 (S.D.N.Y. 2007) ............................................................................. 10

4857-4058-8801.v1

**Page**

*Saint-Jean v. Emigrant Mortg. Co.*,
  2015 WL 8490989 (E.D.N.Y. Dec. 10, 2015) ...........................................................................10

*Salomon Smith Barney, Inc. v. HBO & Co.*,
  2001 WL 225040 (S.D.N.Y. Mar. 7, 2001) ...........................................................................9, 11

*Schoolcraft v. City of N.Y.*,
  2013 WL 4534913 (S.D.N.Y. Aug. 27, 2013) .............................................................................9

*SEC v. TheStreet.com*,
  273 F.3d 222 (2d Cir. 2001) .................................................................................................. 7, 8

*Siedle v. Putnam Invs., Inc.*,
  147 F.3d 7 (5th Cir. 1998) .........................................................................................................10

*United States v. Erie Cnty., N.Y.*,
  763 F.3d 235 (2d Cir. 2014) .......................................................................................................6

*United States v. Martoma*,
  2014 WL 164181 (S.D.N.Y. Jan. 9, 2014) .................................................................................8

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
  Rule 26(c) ....................................................................................................................................7
  Rule 26(c)(1) ...............................................................................................................................7
  Rule 56.1 .....................................................................................................................................3

4857-4058-8801.v1

Lead Plaintiffs City of Providence, Rhode Island, Employees' Retirement System of the Government of the Virgin Islands, United Association National Pension Fund (f/k/a The Plumbers and Pipefitters National Pension Fund) and Boston Retirement System (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their motion to unseal certain information used in moving for or opposing defendants' Article III and preclusion summary judgment motions. The materials Plaintiffs seek to unseal are identified in Appendix A attached to Ex. 1 to the Declaration of Steven M. Jodlowski in Support of Plaintiffs' Motion to Unseal ("Jodlowski Decl."), filed concurrently herewith.

## I.   PRELIMINARY STATEMENT

The Second Circuit has held that "documents submitted to a court for its consideration in a summary judgment motion are – as a matter of law – judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006). "'[D]ocuments used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons.'" *Id*. (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)). Thus, absent "'the most compelling reasons,'" summary judgment motion papers should be unsealed regardless of which side filed them, whether the motion has been decided yet, and whether the motion is ultimately granted or denied. *See id*. at 121-22.[1] And "the weight of the presumption given to such documents . . . is of the highest." *Id*. at 123. In other words, "the presumptive right to 'public observation' is at its apogee" with respect to documents "relating to the decision of a motion for summary judgment. *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140 (2d Cir. 2004).

---

[1]   Internal citations are omitted unless otherwise indicated.

Given the central role of exchanges in this nation's securities markets, the strong presumption of public access carries special weight here. As recognized in the Congressional reports that formed the foundation of the Securities Exchange Act of 1934, the operation of the United States stock exchanges are matters of great public interest, and that interest has only grown more significant since then. S. Rep. No. 73-1455, at 5 (1934) ("Transactions in securities on organized exchanges and over-the-counter markets are affected with the national public interest."); Regulation NMS, Exchange Act Release No. 34,51808, 85 SEC Docket 1642 (June 9, 2005) ("In the years since 1934, the priority placed by Congress on the interests of long-term investors has grown more and more significant."). Defendants' exchanges, which sit at the heart of the United States financial markets, receive intense media coverage every day as some of the most prominent, newsworthy organizations in the world. Not surprisingly, then, this action has been covered extensively by the press.

Nothing overcomes the strong presumption of public access here and, indeed, even though they have been provided the opportunity, defendants have not even attempted to overcome it. Under Second Circuit law, the burden falls squarely on defendants to establish that "'the most compelling reasons'" exist to keep the papers sealed. *Lugosch*, 435 F.3d at 121; *Joy*, 692 F.2d at 894 ("[O]nly the most compelling reasons can justify the total foreclosure of public and professional scrutiny."). Plaintiffs' motion should therefore be granted, and "immediate public access" to the materials in Appendix A should be granted. *Lugosch*, 435 F.3d at 126.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On May 28, 2021, defendants New York Stock Exchange, LLC ("NYSE"), NYSE Arca, Inc. ("Arca"), Chicago Stock Exchange, Inc. ("CHX"), BATS Global Markets, Inc. ("BATS"), Direct Edge ECN, LLC ("Direct Edge"), The Nasdaq Stock Market LLC ("Nasdaq"), and Nasdaq BX, Inc.,

filed summary judgment motions on the grounds of "preclusion." ECF Nos. 599, 603. The same day, another summary judgment motion, challenging Plaintiffs' Article III standing, was filed by defendants NYSE, Arca, CHX, BATS, and Direct Edge. ECF No. 607. (Defendants Nasdaq and Nasdaq BX, Inc. did not join the Article III motion.) Defendants' Article III brief, Rule 56.1 statement, declaration, and exhibits were all filed with the Court under seal.

On July 26, 2021, Plaintiffs filed responses to defendants' summary judgment motions, which were filed under seal because many of the exhibits – quoted extensively throughout the oppositions – constitute or incorporate materials designated by defendants as Confidential or Highly Confidential under the Stipulated Protective Order (ECF No. 402) ("Protective Order").

Examples of the materials designated as Confidential by defendants include internal emails, business records, deposition testimony, sales materials, U.S. Securities and Exchange Commission ("SEC") rule filings and expert reports, such as the following:

- Publicly available SEC rule filings and other submissions, including comment letters. BATS0272412 (ECF Nos. 660-16 & -17); BATS1080763 (ECF Nos. 660-55 & -56); BATS0840864 (ECF No. 660-59); Nasdaq-00774056 (ECF No. 660-82).

- Marketing and sales materials and other presentations for external distribution. BATS0224778 (ECF No. 660-11); BATS0230070 (ECF No. 660-12); BATS0242579 (ECF No. 660-14); BATS0689407 (ECF No. 660-32); BATS0074417 (ECF No. 660-57); Nasdaq-01907372 (ECF No. 660-85); NYSE_01139504 (ECF No. 660-118); Nasdaq-00180383 (ECF No. 660-162).

- Publicly available co-location/connectivity and market data guides. BATS0005812 (ECF No. 660-8); BATS0305516 (ECF No. 660-19); NYSE_01013286 (ECF Nos. 660-113 & -114).

- Descriptions of exchange order type logic/functionalities. BATS0005812 (ECF No. 660-8).

- Collection of publicly available news articles and other media coverage. BATS0519269 (ECF Nos. 660-26 & -27).

- Internal correspondence concerning third party meetings discussing operations of other defendants' (BATS, Arca, and Nasdaq) matching engines and use of direct data

- 3 -

- feeds and further discussion of need to consult with HFTs on best path forward. BATS0528343 (ECF No. 660-29).

- Exchange outreach to HFT to discuss new matching engine functionality as requested by the HFT.  BATS0864729 (ECF No. 660-47).

- Similar communications with HFTs regarding:

    - The use of the post-only in combination with ISO order type (Nasdaq-02031062 (ECF No. 660-89); Nasdaq-02182852 (ECF No. 660-90));

    - The functionality of the ALO order type on NYSE's exchange (NYSE_01087286 (ECF No. 660-116));

    - The matching engine/order book logic for MPL and ALO order types (NYSE_01625786 (ECF No. 660-129)); and

    - The functionality of the hide not slide order type on Direct Edge's exchange (BATS0978236 (ECF No. 660-52)).

- Emails reflecting the aggregate volume of HFT trading on defendants' exchanges. Nasdaq-00434463 (ECF No. 660-78).

- Documents reflecting defendants' classification of firms as HFT and non-HFT. BATS0894849 (ECF No. 660-49); Nasdaq-01282404 (ECF No. 660-83) (concerning the creation of the Nasdaq HFT dataset it made available to various academics to assist their work in studying the impact of HFTs on the market).

Defendants filed reply papers in support of their summary judgment motions on September 17, 2021.  ECF Nos. 724, 736.

On October 6, 2021, following the completion of briefing on defendants' summary judgment motions, Plaintiffs wrote to defendants to advise them that they intend to ask the Court to unseal certain documents used in moving for or opposing defendants' Article III and preclusion summary judgment motions.  Jodlowski Decl., Ex. 1; *id.*, Appendix A (listing the documents Plaintiffs believe should be unsealed).  Nearly all of those documents are materials defendants had designated as Confidential under the Protective Order.  Plaintiffs asked defendants to identify any documents they believed should not be made public and advise as to their availability to meet and confer.  *Id.*; *see*

*also* Protective Order, §15.5 ("The Designating Party shall bear the burdens and the expenses of seeking protection in that matter or proceeding of its Protected Material.").

One week later, defendants sent Plaintiffs a letter in which they declined to confer until the summary judgment motions are decided, calling Plaintiffs' request "premature," and offered no justification for the confidentiality designations for any of the documents at issue. Jodlowski Decl., Ex. 2 at 1.

### III. ARGUMENT

#### A. The Papers Are "Judicial Documents" Accorded a Strong Presumption of Immediate Public Access

The Second Circuit has defined the three steps a district court should take when deciding whether to unseal court-filed documents. *See Lugosch*, 435 F.3d at 119-20. The court first must determine whether the documents at issue are "judicial documents." *Id*. at 119. If they are, the court must then determine the weight of the presumption of public access by referring to a "'continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.'" *Id*. Finally, the court must "'balance competing considerations'" identified by the party resisting disclosure against the weight of the presumption of access. *Id*. at 120.

The first two steps are straightforward here. First, the Second Circuit held in *Lugosch* that "documents submitted to a court in support of or in opposition to a motion for summary judgment are judicial documents to which a presumption of immediate public access attaches under both the common law and the First Amendment." *Id*. at 126. As the court explained, "summary judgment is an adjudication, and '[a]n adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny.'" *Id*. at 121 (quoting *Joy*, 692 F.2d at 893). Thus, "'documents used by parties moving for, or opposing, summary judgment should not

- 5 -

remain under seal absent the most compelling reasons.'" *Id*. (quoting *Joy*, 692 F.2d at 893). Indisputably, the summary judgment papers are judicial documents under *Lugosch*.[2]

Second, the court held in *Lugosch* that the presumption of public access to summary judgment documents is "strong," and that "the weight of the presumption given to such documents . . . is of the highest."  435 F.3d at 121, 123.  In other words, "the presumptive right to 'public observation' is at its apogee" with respect to documents "relating to the decision of a motion for summary judgment."  *Gambale*, 377 F.3d at 140.

The presumption of public access to the judicial documents identified in Appendix A is especially strong because of the substantial public interest in the subject matter of this case. As discussed above, many articles have been written about the case, which has been covered by the financial press at nearly every step.  *See*, *e.g.*, Jodlowski Decl., Ex. 3 (samples of articles published in *Law360*, *USA Today*, *Reuters* and *The Wall Street Journal*).  Thus, the financial press's interest – and the public's interest in general – in this action supports unsealing the papers.  *See Condit v. Dunne*, 225 F.R.D. 113, 118-19 (S.D.N.Y. 2004) (denying motion to seal based in part on the fact that the "the substantive issues in this litigation are also of public concern," even where the in-question "videotaped deposition is not a judicial record giving rise to the common law presumption of a public right to free access"); *United States v. Erie Cnty., N.Y.*, 763 F.3d 235, 242 (2d Cir. 2014) (applying *Lugosch* and ordering the unsealing of compliance reports submitted to the court as

---

[2]    Some of the exhibits are SEC filings, marketing and sales presentations, public testimony before the SEC and other publicly available documents and materials. *See e.g.*, Article III Opposition Exs. 11-12, 14, 48, 171, 145, 118; Preclusion Opposition Exs. 12-13, 120-122, 168, 256.  These exhibits were filed under seal only for administrative convenience and to avoid needless duplication of work.  Defendants cannot object to unsealing exhibits that are publicly available. *See Koch v. Greenberg*, 2012 WL 1449186, at *3 (S.D.N.Y. Apr. 13, 2012) ("Confidentiality agreements . . . should not be used to shield otherwise public information.").

required by terms of settlement agreement, reasoning that "[t]he issues involved are manifestly ones of public concern and therefore ones which the public has an interest in overseeing").

The presumption of public access to judicial documents is also especially strong in class actions and stockholder derivative suits because the stockholders or other class members have a right to know the information that courts use in deciding dispositive motions affecting their claims. *Joy*, 692 F.2d at 894 (summary judgment papers should be unsealed where, among other reasons, the defendant company "[wa]s a publicly owned company"). For example, in *In re "Agent Orange" Prod. Liab. Litig.*, 821 F.2d 139 (2d Cir. 1987), the Second Circuit held that "access [by class members and the general public] is particularly appropriate when the subject matter of the litigation is of especial public interest." *Id*. at 145-46.[3] Likewise here, putative class members have a right to see the evidence that will determine whether their claims will proceed to trial.[4]

**B. Defendants Have Not Offered Any Justification – Let Alone a Compelling Reason – to Keep the Papers Sealed**

The third step of the *Lugosch* analysis considers any factors allegedly weighing against the presumption of public access. A court may keep documents sealed under a Federal Rule of Civil Procedure 26(c) protective order only upon a showing of "good cause." *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 242-43 (S.D.N.Y. 2009) (granting plaintiffs' motion to unseal summary judgment motion exhibits); Fed. R. Civ. P. 26(c)(1). The burden of establishing good cause lies with

---

[3] *Agent Orange* was superseded in part on other grounds by amendments to the Federal Rules of Civil Procedure, as noted in *SEC v. TheStreet.com*, 273 F.3d 222, 233 n.11 (2d Cir. 2001).

[4] Unsealing the summary judgment record here would also facilitate the SEC's review of the record, should the Court be inclined to solicit the SEC's input on defendants' argument that the SEC approved the cumulative effects of co-location, proprietary data feeds, and complex order types. ECF No. 649 at 31 n.14; *City of Providence, R.I. v. Bats Glob. Mkts., Inc.*, 878 F.3d 36, 40 (2d Cir. 2017) (Plaintiffs successfully stated a claim that defendants "g[a]ve HFT firms trading advantages over non-HFT firms and the investing public . . . and failed to publicly disclose the full or cumulative effects that the products and services have on the market.").

defendants, as the parties seeking to prevent public access to the documents. *See Gambale*, 377 F.3d at 139; *Agent Orange*, 821 F.2d at 145.  And because the judicial documents at issue relate to dispositive motions, good cause to keep them under seal must consist of "'the most compelling reasons'" to rebut the strong presumption of public access. *Lugosch*, 435 F.3d at 121.[5]

Despite it being defendants' burden to demonstrate good cause, defendants have not made any effort to establish that the materials should remain under seal.  In the application to seal accompanying their summary judgment motion, defendants did not: (i) explain the nature of the information being placed under seal or why it necessitated confidential treatment; (ii) explain how closure is essential to preserve values higher than the public's right to access civil proceedings; (iii) offer any evidence of the harm that would manifest if the documents were unsealed; nor (iv) explain why the documents were designated as "Confidential" or "Highly Confidential" in the first instance. ECF Nos. 606, 723.

The closest defendants have come to offering any justification for keeping the papers under seal is their assertion that, because defendants had designated the documents as Confidential or Highly Confidential under the Protective Order when they were produced in discovery, they should be taken under seal.  ECF Nos. 606, 723.  But, under controlling authority, simply pointing to a confidentiality designation during discovery is clearly not a sufficient justification. *SEC v. TheStreet.com*, 273 F.3d at 230-31 ("[P]rotective orders that are on their face temporary or limited

---

[5] Some courts describe the showing necessary under *Lugosch* to seal judicial documents as requiring more than "good cause." *See United States v. Martoma*, 2014 WL 164181, at *5 (S.D.N.Y. Jan. 9, 2014) (Defendant "contends that the 'good cause' standard that applies to motions for a protective order during discovery is the standard that applies here.  As discussed above, however, the standard for sealing 'judicial documents' – to which the presumption of access attaches – is much higher than 'good cause.'"); *cf. Dorsett v. Cnty. of Nassau*, 762 F. Supp. 2d 500, 517 (E.D.N.Y. 2011) ("If the document is not 'judicial,' then there is 'no presumption of public access and the movant need only make a baseline showing of good cause in order to justify the imposition of a protective order.'"), *aff'd*, 800 F. Supp. 2d 453 (E.D.N.Y. 2011).

may not justify reliance by the parties. Indeed, in such circumstances reliance may be unreasonable."); *accord Lugosch*, 435 F.3d at 126; *Gambale*, 377 F.3d at 142 n.7.[6]

Instead, a party opposing disclosure "must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection; broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test." *Parmalat*, 258 F.R.D. at 244; *Salomon Smith Barney, Inc. v. HBO & Co.*, 2001 WL 225040, at *3 (S.D.N.Y. Mar. 7, 2001) ("What is required is some showing that the disclosure of the information in question would cause some harm, either to the disclosing party or to someone else."); *see Schoolcraft v. City of N.Y.*, 2013 WL 4534913, at *3 & n.3 (S.D.N.Y. Aug. 27, 2013) (where a party seeks to seal judicial documents based on garden-variety business confidentiality, for example, specific competitive harm must be shown). "[T]he presumption of access can be overcome only by specific, on-the-record findings that higher values necessitate a narrowly tailored sealing." *Lugosch*, 435 F.3d at 126.

Defendants cannot meet that burden by vaguely invoking business confidentiality because denial of public access to judicial documents based on competitive disadvantage requires a particularized showing of harm. The documents Plaintiffs seek to unseal are at least six years old, and many of them are more than a decade old. Some date back to as far as 2009. *See* Jodlowski Decl., Ex. 1, Appendix A. Thus, the materials subject to this motion are stale and cannot plausibly be said to have current competitive value. *See Ashmore v. CGI Grp. Inc.*, 138 F. Supp. 3d 329, 351

---

[6] The Protective Order in this case expressly permits Plaintiffs to challenge Defendants' confidentiality designations and provides, consistent with Second Circuit law, that the burden of proving the propriety of confidentiality designations is on the party opposing disclosure. Protective Order, §VI ("Challenging Confidentiality Designations"). And the Protective Order's challenge mechanism may be invoked "at any time." *Id.*, §6.1; *see also Lugosch*, 435 F.3d at 113 (an "immediate right" to access under the common law and the First Amendment attaches once documents are used in a summary judgment filing).

(S.D.N.Y. 2015) (denying motion to seal construction contractor's past bids where contractor did not assert that subsequent bids would use the same "figures, projections, and budgets"), *aff'd*, 923 F.3d 260 (2d Cir. 2019); *Saint-Jean v. Emigrant Mortg. Co.*, 2015 WL 8490989, at *4-*5 (E.D.N.Y. Dec. 10, 2015) (denying company's motion to seal seven-year old internal presentations and board materials); *Koch*, 2012 WL 1449186, at *4 ("Generally, . . . a court will not protect several-year-old information without a specific explanation of the harm that would be caused by disclosure."); *Parmalat*, 258 F.R.D. at 250 (unsealing summary judgment exhibits where the defendant failed to explain "why the seven-year-old information concerning its marketing strategy ha[d] any continued value to the firm today or why the information might otherwise cause [defendant] harm if it was disclosed" and similarly rejecting, in absence of supporting evidence, the defendant's argument that information about a competitor's current financial condition or business could be determined from stale financial information).

Nor would avoiding embarrassing publicity for defendants be a valid reason for sealing judicial documents, because "[t]he mere fact that judicial records may reveal potentially embarrassing information is not in itself sufficient reason to block public access." *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 10 (5th Cir. 1998). Unflattering publicity "is not . . . a sufficiently compelling reason to outweigh the presumption of access." *Nycomed US, Inc. v. Glenmark Generics, Inc.*, 2010 WL 889799, at *8 (E.D.N.Y. Mar. 8, 2010) (quoting *Prescient Acquisition Grp., Inc. v. MJ Publ'g Tr.*, 487 F. Supp. 2d 374, 376 (S.D.N.Y. 2007)); *see also Gen. Media, Inc. v. Shooker*, 1998 WL 401530, at *12 (S.D.N.Y. July 16, 1998) (finding that defendant's "concerns . . . based on protecting his business reputation from any publicity that may result from the RICO and trademark violation claims against him" did not outweigh the "public interest in access to the courts, and the court's own interest in allowing such access").

In sum, defendants designated substantially all of the documents that they produced in this action as Confidential or Highly Confidential under the Protective Order, which is "a consensual protective order of the usual kind in order to expedite discovery without unnecessary squabbling about whether materials sought were properly subject to confidential treatment." *Salomon Smith Barney*, 2001 WL 225040, at *1. Their designations were overbroad and served only to preserve the confidentiality of discovery materials before the parties had occasion to present evidence before the Court, at which point defendants would be obligated to justify any Confidentiality designations challenged by Plaintiffs.

We have now reached that point, and because defendants cannot establish that competing factors outweigh the strong presumption of public access to the summary judgment materials, the papers should be unsealed.

### IV.   CONCLUSION

Plaintiffs respectfully request that the Court issue an order unsealing the information identified in Appendix A and authorizing Plaintiffs to file these materials on the public docket.

DATED: November 19, 2021                    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DAVID W. MITCHELL
BRIAN O'MARA
STEVEN M. JODLOWSKI
LONNIE A. BROWNE


                             s/ Steve M. Jodlowski
                          STEVEN M. JODLOWSKI

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone:  619/231-1058
619/231-7423 (fax)
davidm@rgrdlaw.com
bomara@rgrdlaw.com
sjodlowski@rgrdlaw.com
lbrowne@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
VINCENT M. SERRA
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
vserra@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
PATRICK J. COUGHLIN
RANDI BANDMAN
420 Lexington Avenue
New York, NY  10170
Telephone:  212/693-1058
patc@rgrdlaw.com
randib@rgrdlaw.com

MOTLEY RICE LLC
WILLIAM H. NARWOLD
MICHAEL J. PENDELL
20 Church Street, 17th Floor
Hartford, CT  06103
Telephone:  860/882-1681
860/882-1682 (fax)
bnarwold@motleyrice.com
mpendell@motleyrice.com

- 12 -

MOTLEY RICE LLC
JOSEPH F. RICE
JOSHUA C. LITTLEJOHN
MEREDITH B. WEATHERBY
ANNIE E. KOUBA
28 Bridgeside Blvd.
Mount Pleasant, SC  29464
Telephone:  843/216-9000
843/216-9450 (fax)
jrice@motleyrice.com
jlittlejohn@motleyrice.com
mweatherby@motleyrice.com
akouba@motleyrice.com

MOTLEY RICE LLC
DAVID D. BURNETT
401 9th Street NW, Suite 1001
Washington, DC  20004
Telephone: 202/232-5504
202/232-5513 (fax)
dburnett@motleyrice.com

LABATON SUCHAROW LLP
MICHAEL P. CANTY
THOMAS G. HOFFMAN, JR.
CORBAN S. RHODES
140 Broadway
New York, NY  10005
Telephone:  212/907-0700
212/818-0477 (fax)
mcanty@labaton.com
thoffman@labaton.com
crhodes@labaton.com

Co-Lead Counsel for Plaintiffs