UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
:
CITY OF PROVIDENCE, RHODE ISLAND, et al., :
:
                       Plaintiffs, :
:          14-CV-2811 (JMF)
      -v- :
:          MEMORANDUM OPINION
BATS GLOBAL MARKETS, INC., et al., :          AND ORDER
:
                       Defendants. :
:
---------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       On January 18, 2022, the Court granted in part Plaintiffs' motion to unseal 372 documents filed by the parties in connection with their briefing of the pending motions for summary judgment (ECF Nos. 599, 607), and class certification (ECF No. 610). *See* ECF No. 799. The Court reserved judgment on Defendants' request that a small subset of the documents remain under seal and that another subset of the documents be redacted in part. *See* ECF No. 799, at 2; ECF No. 788 ("Defs.' Opp'n"), at 1; ECF No. 802-1 ("Defs.' List"). For the reasons stated below, Defendants' requests are granted in part and denied in part.

## APPLICABLE LEGAL STANDARDS

       "The common law right of public access to judicial documents is firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006); *see also Brown v. Maxwell*, 929 F.3d 41, 47-52 (2d Cir. 2019). This right arises from "the need for federal courts, although independent — indeed, particularly because they are independent — to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*"). In light of the presumption in favor of public access, the Second Circuit has established a three-part test for

determining whether documents may be placed under seal. First, "a court must . . . conclude that the documents at issue are indeed 'judicial documents' . . . and that therefore a common law presumption of access attaches." *Lugosch*, 435 F.3d at 119. Second, the court "must determine the weight of that presumption," which is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* (internal quotation marks omitted). "Finally, . . . the court must balance competing considerations against" the presumption of access, including "the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." *Id.* at 120 (internal quotation marks omitted). The party seeking to maintain information filed under seal bears "the burden . . . to demonstrate that the interests favoring non-access outweigh those favoring access." *United States v. Amodeo*, 44 F.3d 141, 148 (2d Cir. 1995) ("*Amodeo I*").

"Notwithstanding the presumption of public access to judicial records, courts may deny access to records that are 'sources of business information that might harm a litigant's competitive standing.'" *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)); *see also In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-MC-2542 (VSB), 2014 WL 12772236, at *2 (S.D.N.Y. Nov. 5, 2014) (noting that "[t]he need to protect sensitive commercial information from disclosure to competitors seeking an advantage may constitute" an interest outweighing the presumption of public access); *Coscarelli v. ESquared Hosp. LLC*, No. 18-CV-5943 (JMF), 2021 WL 5507034, at *21 (S.D.N.Y. Nov. 24, 2021) (same). To deny public access on that ground, the party seeking nondisclosure "must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to

warrant protection; broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test." *Ashmore v. CGI Grp. Inc.*, 138 F. Supp. 3d 329, 351 (S.D.N.Y. 2015), *aff'd*, 923 F.3d 260 (2d Cir. 2019); *accord In re Parmalat Sec. Litig.*, 258 F.R.D. at 244.[1]

## DISCUSSION

Defendants request that the Court (1) maintain a set of fourteen filings (the "First Set") under seal in their entirety[2] and (2) partially redact a set of approximately seventy-five other filings (the "Second Set").[3] *See* Defs.' Opp'n, at 1; Defs.' List. There is no dispute that all of these filings — which were submitted in connection with Defendants' motions for summary judgment — are "judicial documents." *See Lugosch*, 435 F.3d at 121 ("[D]ocuments submitted to a court for its consideration in a summary judgment motion are — as a matter of law —

---

[1] The First Amendment to the United States Constitution also "protect[s] the public's right to have access to judicial documents." *United States v. Erie Cnty., N.Y.*, 763 F.3d 235, 239 (2d Cir. 2014). To determine whether this right attaches, courts in the Second Circuit look to whether "experience and logic" support public access to the documents. *Id.* (quoting *Lugosch*, 435 F.3d at 120). In doing so, courts must "consider (a) whether the documents 'have historically been open to the press and general public' (experience) and (b) whether 'public access plays a significant positive role in the functioning of the particular process in question' (logic)." *Id.* (quoting *Lugosch*, 435 F.3d at 120). If a court finds that a First Amendment right of access attaches, the documents "may be sealed [only] if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* (quoting *Lugosch*, 435 F.3d at 120) (alteration in original).

[2] In their opposition, Defendants originally requested that the Court maintain fourteen documents under seal. *See* Defs.' Opp'n 7. But one of these documents (ECF No. 660-74) was not named on Plaintiffs' original list of filings that they sought to unseal. *See* ECF No. 798-1. Thereafter, Defendants omitted the document from their chart of "filings in dispute." ECF No. 802, at 1 n.1. Nevertheless, because Defendants discuss this filing in their opposition, *see* Defs.' Opp'n 6-7, and Plaintiffs do the same in their reply, *see* ECF No. 792, ("Pls.' Reply"), at 7, the Court will address it here.

[3] Defendants originally requested that the Court partially redact another seventy-four documents, *see* Defs.' Opp'n 1; however, there appear to be seventy-five documents in Defendants' chart of "filings in dispute" for which Defendants request partial redactions, *see* Defs.' List.

3

judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment."). Accordingly, the Court will proceed to the second and third steps of the common-law inquiry for each set of filings.

## A. The First Set of Documents

Beginning with the First Set, the Court concludes that ten of the fourteen documents at issue should remain under seal in their entirety unless and until the Court orders otherwise:

- **NYSE Revenue Spreadsheets:** Three of the filings in the First Set, ECF Nos. 660-128, 660-219, 671-17, are identical copies of a spreadsheet that shows revenues earned by Defendants New York Stock Exchange, LLC, NYSE Arca, Inc., and NYSE Chicago, Inc., (the "NYSE Defendants") from proprietary data feeds and co-location services between 2010 and 2019, *see* ECF No. 788-2 ("Blaugrund Decl."). The spreadsheet identifies the NYSE Defendants' customers and shows annual revenue by product for each customer. *See* ECF Nos. 660-128, 660-219, 671-17. Two additional filings in the First Set, ECF Nos. 660-220, 671-18, are identical copies of a similar spreadsheet with revenues earned by the NYSE Defendants from these products between 2009 and 2019 separated out by customer. The Court finds that the "privacy interests of innocent third parties," *Amodeo II*, 71 F.3d at 1050, namely the NYSE Defendants' customers, and the potential harm to the NYSE Defendants' "competitive standing," *In re Parmalat Sec. Litig.*, 258 F.R.D. at 244, outweigh the presumption of access afforded to these filings. The filings contain confidential customer information of a type that is "commonly sealed." *Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*, 335 F. Supp. 3d 566, 600 (S.D.N.Y. 2018). Additionally, disclosure of these filings could cause "investor[] . . . confusion," and thereby harm the NYSE Defendants, as the revenue details contained in the spreadsheet are not disclosed in public financial reporting and are "incomplete." Blaugrund Decl. 2. Defendants have therefore met their burden to justify maintaining these filings under seal in their entirety. *See Lugosch*, 435 F.3d at 120; *Amodeo II*, 71 F.3d at 1050 ("[T]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation.") (alterations in original); *see also, e.g.*, *Tyson Foods, Inc. v. Keystone Foods Holdings, Ltd.*, No. 19-CV-010125 (ALC), 2020 WL 5819864, at *2 (S.D.N.Y. Sept. 30, 2020) (granting a motion to maintain under seal exhibits that contained, among other things, "revenue information" and "customer information, including their identities and purchases").

- **2015 BATS Market Data Strategy Presentation:** This filing, ECF No. 671-232, is a BATS Global Markets, Inc., ("BATS") internal presentation on market data strategy from July 2015. The presentation contains assessments of industry trends and dynamics, *id.* at 4-5, as well as analyses of BATS's revenue streams and products, *id.*

at 6-7.  It also contains peer comparison analyses and information on BATS's market data strategy, initiatives, and revenue potential going forward.  *Id.* at 9-15.  This filing is subject to a comparatively weak presumption of access given that it post-dates the proposed class period (2009 to 2014) and, while it may ultimately play some role in the Court's consideration of the motions for summary judgment, that role is unlikely to be significant.  *See, e.g.*, *Coscarelli v. ESquared Hosp. LLC*, No. 18-CV-5943 (JMF), 2021 WL 5507034, at *21 (S.D.N.Y. Nov. 24, 2021) (concluding document was "subject only to a weak presumption of public access" for similar reasons).  At the same time, the potential harm to BATS's competitive standing from disclosure of this filing is significant.  *See* ECF No. 788-1 ("Carrai Decl."), at 3-4; *see also, e.g.*, *GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*, 769 F. Supp. 2d 630, 649-50 (S.D.N.Y. 2011) (concluding that the defendants' "privacy interests . . . outweigh[ed] the presumption of public access" where the documents "contain[ed] highly proprietary material concerning the defendants' marketing strategies, product development, costs and budgeting" and granting request to maintain the documents under seal); *Tyson Foods, Inc.*, 2020 WL 5819864, at *2 (same on similar grounds).  Sealing is therefore warranted.

- **2014 Nasdaq Account Management Presentation:**  This filing, ECF No. 660-86, dated October 21, 2014, is a Nasdaq Stock Market LLC ("Nasdaq") internal "Strategic Account Management Plan" presentation, regarding a specific, nonparty Nasdaq customer and its usage of Nasdaq's products and services, *see, e.g.*, *id.* at 12, 20, 23-25, 27-29, as well as its responses to Nasdaq's proposals, *see, e.g.*, *id.* at 10-11, 18.  It also contains a summary of Nasdaq's view of the customer's business strategy based on confidential information.  *See id.* at 6.  Although the document is several years old, the third-party privacy interest of Nasdaq's customer in preventing disclosure of this sensitive information regarding its trading and business strategies is significant, *see* ECF No. 788-3 ("Yetter Decl."), at 7-8.  And while portions of this filing may play a role in the Court's "exercise of Article III judicial power" in resolving the pending motions for summary, *Lugosch*, 435 F.3d at 119, that role is likely to be limited and the third-party privacy interests at stake are sufficient to rebut the presumption of public access, *see Amodeo II*, 71 F.3d at 1050 ("[T]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation."); *see also, e.g.*, *Tyson Foods, Inc.*, 2020 WL 5819864, at *2 (Documents "containing trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like . . . [are] commonly sealed.").

- **2015 Nasdaq Business Development Presentation:**  This filing, ECF No. 660-74, dated May 5, 2015, is an internal business development presentation.  Like the 2014 Nasdaq Account Management Presentation, it contains confidential information about a specific, nonparty Nasdaq customer, including its usage of Nasdaq products and services, its responses to Nasdaq proposals, and Nasdaq's view of its business strategy.  *See id.*; Yetter Decl. 6-7.  Accordingly, the Court finds that Defendants have met their burden to justify sealing for substantially the same reasons.

- **2009 Presentation on Nasdaq Data Center:** Two filings, ECF Nos. 660-158, 671-264, dated June 1, 2009, contain identical copies of an internal Nasdaq presentation regarding the economics and technical operations of one of Nasdaq's data centers and Nasdaq's arrangement with a nonparty company to provide co-location services. The presentation contains, among other things, strategic analyses of ways to expand Nasdaq's data center capacity and financial projections (with forecasts out to 2016) for various proposals regarding a new data center. *See, e.g.*, ECF No. 660-158, at 9-14. Although the document itself is over a decade old, Defendants' declarant avers that "th[e] document reflects nonpublic technical and financial strategies of Nasdaq still in use today," disclosure of which "would cause competitive injury to Nasdaq." Yetter Decl. 6. The weight of the presumption of access for this filing is also relatively weak given that the technical specifications and financial projections for the data center contained in it appear unlikely to play a meaningful role in the Court's resolution of the pending motions for summary judgment. *See Coscarelli*, 2021 WL 5507034, at *21. The Court therefore concludes Defendants have met their burden to justify sealing; *see, e.g.*, *Encyclopedia Brown Prods., Ltd. v. Home Box Off., Inc.*, 26 F. Supp. 2d 606, 614 (S.D.N.Y. 1998) ("Confidential business information dating back even a decade or more may provide valuable insights into a company's current business practices that a competitor would seek to exploit.").

The Court concludes that the other four documents in the First Set can and should be partially redacted, again unless and until the Court orders otherwise:

- **2013 Nasdaq Revenue Chart and Price Change Analysis:** This filing, ECF No. 660-75, from May 30, 2013, *see* Defs.' List 1, contains a chart with revenues from Nasdaq's co-location services on a service-by-service basis. It also includes an internal analysis of a potential pricing change for Nasdaq's co-location services and the revenue impact of such a change. *See* ECF No. 660-75. While the internal sales and revenue figures and price change analysis in this filing "fall into categories commonly sealed," *Tyson Foods, Inc*, 2020 WL 5819864, at *2, Defendants offer no justification for sealing information about the range of products offered and their "current price" as of May 2013, *see* ECF No. 660-75, at 1 (cells A9-B35 and D9-35), which presumably would have been publicly available and is now "stale" in any event, *Koch v. Greenberg*, No. 07-CV-9600 (BSJ) (DF), 2012 WL 1449186, at *4 (S.D.N.Y. Apr. 13, 2012). As such, Defendants' request to maintain this filing under seal in its entirety is denied. *See Lugosch*, 435 F.3d at 120 (requiring narrow tailoring). Redacting the figures in the document, except for those in cells A9-B35 and D9-35, would appear sufficient to safeguard Nasdaq's interests. *See, e.g.*, *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2014 WL 12772236, at *2 (permitting redaction of "only the specific percentages" of the company's internal market share projections).

- **2011-2013 Email Chain with Nasdaq Customer:** This filing, ECF No. 660-155, contains an email chain from October 2011 through June 2013 among members of Nasdaq's Service Bureau and Connectivity and Transaction Services department and

employees at a nonparty Nasdaq customer. The emails discuss technical aspects of products and services purchased by the customer, including the customer's IP addresses and data circuit identifications and specifications. *See id.*; Yetter Decl. 5. Another exhibit contains the same email chain, divided into three filings. ECF Nos. 671-62, 671-63, 671-64. The strong third-party privacy interests in keeping these communications under seal outweigh the presumption of access for nearly all of the emails contained in this filing, particularly since the customer-specific technical specifications contained in the emails are unlikely to play any role in the Court's adjudication of the pending motions for summary judgment. *See Amodeo II*, 71 F.3d at 1050; *Coscarelli*, 2021 WL 5507034, at *21. That said, Defendants offer no justification for sealing the final page of the exhibit — a promotional email from over a decade ago without any customer-specific information. ECF No. 660-155, at 35; ECF No. 671-64, at 13; *see* Yetter Decl. 5 (discussing potential harm from disclosure of "customer information," not Nasdaq's marketing materials); *see also Koch*, 2012 WL 1449186, at *4 ("[W]here commercially sensitive information is stale, this can undermine [a] party's . . . claim that disclosure will create a competitive disadvantage."). Redacting the rest of the email chain and the personal contact information from that page is sufficient to protect the privacy and competitive standing interests implicated by this exhibit.

- **2010 Nasdaq Draft White Paper:** This document, divided into two filings, ECF Nos. 671-68, 671-69, dated December 17, 2010, is a draft of an internal Nasdaq white paper. It contains an analysis of Nasdaq's systems, including nonpublic diagrams of those systems, ECF No. 671-68, at 206; an analysis of "material risks to [Nasdaq's] operations from customers and other third parties," ranked from medium to high risk, *id.* at 7-21; and an analysis of "legal risk," ECF No. 671-69, at 55-61. This type of sensitive commercial information undoubtedly "fall[s] into categories commonly sealed." *Tyson Foods, Inc.*, 2020 WL 5819864, at *2. Additionally, Defendants also note, correctly, that the document "contains a detailed discussion of the PHLX Options Market, the Nasdaq Options Market, and the PSX Equities market, none of which are Defendants or at issue in this action." Yetter Decl. 6. That said, the document is over a decade old, and Defendants state only that "*much* of the paper reflects nonpublic business or financial strategies and confidential competitive information that are still applicable today." *Id.* (emphasis added). As such, Defendants have not met their burden to justify sealing the document in its entirety. *Koch*, 2012 WL 1449186, at *4 ("Generally, . . . a court will not protect several-year-old information without a specific explanation of the harm that would be caused by disclosure."). Instead, the Court finds that redacting information that in fact remains "applicable today" and information relating to "the PHLX Options Market, the Nasdaq Options Market, and the PSX Equities market," Yetter Decl. 6, will adequately protect Defendants' interests.

Once the Court has ruled on the underlying motions associated with these filings — and is in a better position to evaluate whether, and to what extent, the filings are relevant to the Court's

"exercise of Article III judicial power," *Lugosch*, 435 F.3d at 119 — the Court may revisit whether these documents should remain under seal or in redacted form.

**B.   The Second Set of Documents**

Defendants request four types of redactions with respect to the documents in the Second Set.  First, they request that the Court permit them to redact identifying information of nonparty market participants in certain documents in order to protect those entities' business investment or trading strategies from public disclosure.  Defs.' Opp'n 11-12; *see* Defs.' List.  Plaintiffs do not oppose this request.  *See* Pls.' Reply 1.  The Court concludes that the significant interest in protecting "sensitive financial . . . information related to third parties" is sufficient to rebut the weak presumption of access for that information given the limited role that nonparty identifying information will play in the Court's adjudication of the pending motions.  *City of Almaty, Kazakhstan v. Ablyazov*, No. 15-CV-5345 (AJN), 2021 WL 1177737, at *1 (S.D.N.Y. Mar. 29, 2021).  The Court therefore grants Defendants' request to redact identifying information of nonparty market participants in these filings.  *See* Defs.' List.

Second, Defendants request that, for deposition transcripts of witnesses previously employed or retained by Defendants, the Court only require "the pages actually cited in Plaintiffs' papers [to] be filed publicly."  Defs.' Opp'n 12.  Once again, Plaintiffs do not oppose this request.  *See* Pls.' Reply 1.  While large portions of the deposition transcripts may ultimately prove irrelevant, it remains to be seen whether portions of the transcripts beyond the pages cited by Plaintiffs will play a role in the Court's adjudication of the pending motions.  Thus, the Court will temporarily grant Defendants' request until it rules on the underlying motions and can more fully evaluate the balance between any applicable right of public access and "competing considerations."  *Lugosch*, 435 F.3d at 120.

Third, Defendants request that two Nasdaq documents be filed with redactions to protect privileged information. Defs.' Opp'n 13-14; Yetter Decl. 16-17. According to Defendants, the scope of these redactions has been "discussed and agreed between Plaintiffs and Nasdaq." Yetter Decl. 17. Importantly, however, "the parties' agreement to seal or limit disclosure of documents on file is not a sufficient basis for granting such an order." *Landmark Am. Ins. Co. v. Magoo's II, Inc.*, No. 07-CV-327 (MRK), 2007 WL 3023265, at *1 (D. Conn. Oct. 12, 2007) (citing *Amodeo II*, 71 F.3d at 1050-51). Defendants shall therefore file these documents with proposed redactions for the Court's review, per Paragraph 7 of the Court's Individual Rules and Practices in Civil Cases.

Finally, Defendants request that the Court permit them to redact "what is believed to be the personal email address of a relative of a former BATS employee" in ECF No. 660-210. Defs.' Opp'n 12 n.5; Carrai Decl. 3. This information will almost certainly play no role in the Court's resolution of the pending motions and there is a strong third-party privacy interest in redacting it. *See Amodeo II*, 71 F.3d at 1050. The Court therefore grants Defendants' request to redact the email address.

      *     *     *     *

Two housekeeping matters remain. First, Plaintiffs moved to file under seal their briefing related to their motion to unseal. *See* ECF Nos. 775, 791. The Court granted these motions temporarily pending resolution of Plaintiffs' motion to unseal. *See* ECF Nos. 782, 795. The Court denies these motions without prejudice to renewal consistent with this Opinion and Order. The Court is skeptical that the general descriptions of the documents at issue in Plaintiffs' filings should remain under seal; however, the Court will give the parties an opportunity to propose limited redactions, if appropriate, no later than **March 7, 2022**. Second, in light of the foregoing,

the Court denies as moot the "petition[]" to "remove the temporary *Confidential Treatment*" for certain documents filed by Francine McKenna, an independent journalist.  See ECF No. 796.

## CONCLUSION

The Clerk of Court is directed to terminate ECF No. 791.  No later than **March 7, 2022**, Defendants shall, in accordance with Paragraph 7 the Court's Individual Rules and Practices in Civil Cases, publicly file copies of the following filings with proposed redactions consistent with this Opinion and Order:

- ECF No. 660-75 (2013 Nasdaq Revenue Chart and Price Change Analysis)

- ECF Nos. 660-155, 671-62, 671-63, 671-64 (2011-2013 Email Chain with Nasdaq Customer);

- ECF Nos. 671-68, 671-69 (2010 Nasdaq Draft White Paper);

- The filings for which Defendants request permission to redact identifying information of nonparty market participants, as identified in Defendants' chart of disputed filings, *see* Defs.' List;

- The deposition transcript filings for which Defendants request permission to redact all pages not cited in Plaintiffs' papers, as identified in Defendants' chart of disputed filings, *see* Defs.' List;

- The two filings for which Defendants request permission to redact information the parties have agreed are subject to legal privilege, *see* Defs.' Opp'n 13; Yetter Decl. 16-17;

- ECF No. 660-210 (filing with personal email address of a relative of a former BATS employee).

SO ORDERED.

Dated: February 23, 2022
New York, New York

_____
JESSE M. FURMAN
United States District Judge